**EXHIBIT F**

THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

5-07-CV-00275-D

| | |
|---|---|
| SILICON KNIGHTS, INC., an Ontario (Canada) Corporation,<br><br>　　　　　　　　Plaintiff,<br><br>vs.<br><br>EPIC GAMES, a North Carolina company,<br><br>　　　　　　　　Defendant. | **PLAINTIFF SILICON KNIGHTS, INC.'S MOTION TO COMPEL FURTHER RESPONSES TO SECOND SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND SECOND SET OF INTERROGATORIES** |

　　　　Plaintiff and Counter-defendant Silicon Knights Inc. ("Silicon Knights"), by and through undersigned counsel and pursuant to Federal Rule of Civil Procedure 37 and Local Rule 7.1(c), submit this motion to compel Defendant Epic Games Inc. ("Epic") to provide further responses to Silicon Knights' Second Ret of Requests for Production of Documents (mistakenly titled the "Third" set) and Second Set of Interrogatories.  The grounds for this motion are set forth in the accompanying Memorandum of Law, the Declaration of Garth Rosengren filed herewith (and the exhibits thereto), the pleadings and papers previously filed with this Court, and any other matters that may be presented to the Court at the hearing (if any).  In support of this Motion, Silicon Knights provides the following:

　　　　1.　　Silicon Knights specifically requests an order compelling Epic to identify all documents responsive to Silicon Knights' Request for Production Nos. 11 – 109, 111, 118, 127 – 129, and 131 – 137; to produce all documents responsive to those requests; and to provide a detailed certification as to Epic's efforts to comply with those requests.  Silicon Knights further seeks an order compelling Epic to respond to Interrogatories Nos. 9 – 13.  No responses sufficient to satisfy Epic's obligations under Rule 33 of the Federal Rules of Civil Procedure have been produced or identified and all efforts by Silicon Knights to meet and confer and obtain this discovery from Epic have been unsuccessful.

1

2. For the convenience of this Court and in compliance with Local Rule 7.1, attached hereto as Exhibit A is a comprehensive list of each of the discovery requests at issue, Epic's objections, and a brief statement of Silicon Knights' response to those objections. As more fully discussed in Silicon Knights' memorandum in support of this motion, the discovery requests at issue fall into four categories:

    A.    information regarding Epic's Unreal Engine licensees, including Epic's communication with those licensees and Epic's support of them (or lack thereof) (Interrogatories 9 and 10 and Requests for Production 11-109, 133, 134, 136, and 137);

    B.    documents related to complaints and communications about the Unreal Engines or Epic's performance under its license agreements (Interrogatory 13 and Requests for Production 111 and 131);

    C.    documents related to Epic's Integrated Partners Program and middleware used by Epic with its Unreal Engines (Interrogatories 11 and 12 and Requests for Production 118 and 135); and,

    D.    documents regarding the design and development of Unreal Engine 3 and Epic's projects using that engine (Requests for Production 127-129 and 132).

3. Epic has not provided any document or information regarding the forgoing discovery requests, and has instead responded to each of the discovery requests at issue by objecting that the material or information requested is beyond the scope of discovery and is ambiguous, unduly burdensome, overly broad, or some combination thereof. Those objections are without merit.

4. The first category – information surrounding other licensees – is relevant to this action (A) because Epic's Answer and Counterclaim directly and indirectly rely on Epic's history as a developer and licensor of game engines and the alleged success of its licensees as justification of its conduct in the matter at bar and (B) because they directly impact numerous express claims and defenses in Silicon Knights' Complaint. Among other things, Epic refers Silicon Knights and this Court to its history in the

2

game engine design field and the prior successes of its licensees in defense of its conduct in developing Unreal Engine 3 and allegedly supporting its licensees. Silicon Knights should thus be able to explore Epic's history with those licensees in an effort to refute that argument.

5. Silicon Knights' Complaint similarly alleges disparate treatment by Epic of its licensees and a purposeful intent by Epic to gain an unfair advantage over Silicon Knights and other licensees. Epic's relationship, communications, agreements and problems with those licensees are thus relevant to those claims.

6. In addition, Silicon Knights Complaint makes reference to terms of its license agreement with Epic that are undefined on the face of that document yet are material to it and the matters at bar. In an effort to discern the meaning of those terms, Silicon Knights should be allowed to examine how Epic has used them in the past and how Epic and other licensees have understood them.

7. Complaints and communications about Unreal Engine 3 and Epic's performance of its obligations under the license agreement (the second category of discovery) are relevant because it is the performance of both UE3 as a game engine and Epic as a licensor that are at issue in Silicon Knights' Complaint. Likewise, Epic lauds is prior relationship with its licensees and the performance of its Unreal Engines to suggest that Silicon Knights' claimed difficulties are a result of its own conduct and not Epic's. Silicon Knights should be allowed to determine if Epic's past relationship with its licensees is as portrayed in the Counterclaim and to learn what Epic was told by its licensee was problematic about its licensing scheme. What Epic knew or should have known by virtue of its past conduct must then be compared to what Epic represented to Silicon Knights about its own license agreement.

8. With respect to the third category – information regarding Epic's use of middleware and likewise its Integrated Partners Program – that information will tend to show what Epic knew Unreal Engine 3 could (or could not) do, as well as what pieces of middleware Epic did (or did not) provide Silicon Knights (and/or that Epic may have kept for itself to further maintain and extend its competitive advantage). What Epic knew in that regard and when Epic knew can again be contrasted with what Epic

3

told Silicon Knights. Thus, that information pertains specifically to Silicon Knights' claims that Epic misrepresented the abilities of the Engine and Epic's capacity to support its licensees.

9.  Finally, documents regarding the design and development of Unreal Engine 3 and Epic's projects that purportedly use that engine go, again, to some of the seminal questions of this case: what did Epic know about Unreal Engine 3's performance (or lack thereof) and when did it know it? In addition, documents regarding the design and development of its own games will demonstrate whether or not Epic was reasonable in its representations that it could support a licensing program while at the same time developing Unreal Engine 3 and two of its own games.

10. Epic's objections about the overly broad or unduly burdensome nature of Silicon Knights' discovery requests are likewise unfounded. Where Silicon Knights has requested information regarding all prior versions of Epic's Unreal Engines it is because Epic has raised its history in its Counterclaim, because that history is relevant both to what is meant by certain terms of the license agreement, and because what Epic knows about the process of developing a game engine and licensing it goes to the reasonableness and truthfulness of its representations to Silicon Knights regarding those same subjects. Consequently, Silicon Knights' requests are as broad as necessary to discover that information. And the burden on Epic of producing the requested information is not undue given the fact that this industry communicates largely by e-mail, which can be readily searched and sorted electronically based on a variety of fields. Those e-mails and related documents should then serve as a ready means of targeting their further investigative efforts into materials stored elsewhere. In sum, Epic's task will be similar to what Silicon Knights did when preparing the 230,000 pages of documents it has already produced to Epic.

11. Pursuant to Local Rule 7(c), counsel certifies that good faith efforts to resolve this discovery dispute were made before filing this motion. The Declaration of Garth Rosengren filed in support of this motion details those good faith efforts.

WHEREFORE, Silicon Knights respectfully requests the Court to do the following:

1. Grant this motion, and enter an Order requiring Epic

    A. to identify all documents responsive to Silicon Knights' Request for Production Nos. 11 – 109, 111, 118, 127 – 129, and 131 – 137;

    B. to produce all documents responsive to those requests;

    C. to provide a detailed certification as to Epic's efforts to comply with those requests; and

    D. to respond completely to Interrogatories Nos. 9 – 13.

2. Award Silicon Knights its expenses, including costs and attorneys' fees, incurred in connection with bringing this motion pursuant to Federal Rule of Civil Procedure 37(a)(4); and

3. For such just and other relief the Court deems appropriate.

Respectfully submitted this the 19th day of February, 2008.

/s/ Hayden J. Silver, III

Hayden J. Silver, III (NC State Bar No. 10037)
jaysilver@kilpatrickstockton.com
Betsy Cooke (NC State Bar 25353)
bcooke@kilpatrickstockton.com
KILPATRICK STOCKTON LLP
3737 Glenwood Avenue, Suite 400
Raleigh, NC 27612
Telephone: (919) 420-1711
Facsimile: (919) 510-6136

Christopher T. Holland
CA State Bar No. 164053
Garth A. Rosengren
CA State Bar No. 215732
KRIEG, KELLER, SLOAN, REILLEY & ROMAN LLP
114 Sansome Street, 4th Floor
San Francisco, CA 94104
Telephone: (415) 249-8330
Facsimile: (415) 249-8333

*Attorneys for Plaintiff*
*SILICON KNIGHTS, INC.*

## CERTIFICATE OF SERVICE

This is to certify that on this date the foregoing was electronically filed with the Clerk of the Court using the CM/ECF System which will automatically send notification of filing to the following CM/ECF participant:

>Robert C. Van Arnam
>rvanarnam@hunton.com

This the 19th day of February, 2008.

>_____/s/ Betsy Cooke_____

KILPATRICK STOCKTON LLP
3737 Glenwood Avenue, Suite 400
Raleigh, North Carolina 27612
Telephone: (919) 420-1700

6

US2000 10631363.2