**EXHIBIT H**

**Sweeney, Gerald**

| | |
|---|---|
| **From:** | Anjali Kurani [akurani@kksrr.com] |
| **Sent:** | Thursday, February 07, 2008 10:44 AM |
| **To:** | Sweeney, Gerald |
| **Cc:** | SK-Epic Team |
| **Subject:** | Silicon Knights Subpoena to Midway - Documents Requested |
| **Attachments:** | Final Protective Order.pdf |

Dear Gerry,

Per your request from our conversation yesterday, below is a detailed explanation of SK's offer to narrow the categories of documents requested in its subpoena and a discussion as to why those documents are relevant, protected and appropriate for Midway to produce.

1. SK requests communications regarding the interpretation of the term "Enhancements" as it is used in the Epic License Agreement.

[Relevance]: The term "Enhancements" is at issue in Epic's Breach of Contract counterclaim, as well as SK's Fraud in the Inducement and Misrepresentation causes of action. Epic is making the claim that the course of dealing with its licensees and the industry-wide understanding of the term is different than the understanding which SK claims it has. SK has sought from Epic all information concerning Epic's communications and dealings with its licensees. SK is also seeking the licensee's understanding of this term, as evidence of the "course of dealing" and "industry-wide" understanding. Furthermore, your concern that Midway's dealings with Epic have no bearing on SK's separate and distinct dealings with SK is mooted by Epic's reliance on the industry standard; there are certain terms that are standard across the Epic licensing agreements and per Rule 26 and 45 of the FRCP, SK is allowed to seek evidence supporting that claim.

[Admissible]: To your point regarding the admissibility of that information, the standard for discovery is merely that the documents sought are reasonably calculated to lead to discoverable information. Here, this request is narrowly tailored to lead to information regarding Epic's representations about terms of the contract that Epic is claiming is standard across all licensees. Whether or not the information Midway produces is admissible is not a standard by which Midway can appropriately withhold documents.

[Protection of Confidential Business Information]: As we discussed on the phone, SK is not seeking any confidential, trade secret or proprietary information regarding what Midway's enhancements were, rather SK is seeking communications at Midway regarding the understanding of that term. To be clear, SK is not seeking technical documents or any form of development documents, instead SK is seeking communications reflecting Midway's understanding of the term "Enhancement" based on Epic's representations. Further, Midway's fear of disclosure of confidential business information to a competitor is allayed by the protective order in place in this case (attached here for your convenience). All documents produced by Midway will be marked "Highly Confidential: Attorneys' Eyes Only" meaning that SK will never see any of Midway's documents. Thus, Midway's fear that disclosure of proprietary information to a competitor would somehow competitively disadvantage Midway is unfounded because no competitor will ever see, access or analyze any of Midway's information. The Protective Order has been entered by the Court for the protection of parties like Midway and Midway can rely on that order as it would any court order.

2. SK requests any documents regarding complaints about the performance of the Unreal Engine 3.

[Relevance]: The performance and capabilities of the Unreal Engine 3, as that engine performed across the industry, is the core of SK's Fraud in the Inducement and Misrepresentation claims. One of Epic's defenses has been to cite licensees who have successfully used the SAME Unreal Engine which was licensed to SK and claim that the problem must lie with SK and not with the Engine itself. In an effort to find evidence to support or deny those claims, SK is seeking information from those licensees regarding their experiences with the Unreal Engine and complaints that they might have had, if any.

[Protection of Confidential Business Information]: As I mentioned on the phone, SK is not seeking the technical or trade secret documents discussing what Midway did to fix the problems it found with the engine, or the way that Midway developed around the problems with the Unreal Engine for its particular game; instead, SK is seeking documents describing what problems Midway had with the Engine itself. The complaints that programmers had about the capabilities of the Engine, the venting that may have occurred among developers about their frustrations with the Engine that may have not made it up to the Unreal Developer's Network but still exists in the possession, custody or control of Midway and can be found without an unreasonably burdensome search is what SK is requesting.

In our conversation you alluded to the fact that the problems Midway had (if any) with the Unreal Engine may be due to Midway's own processes for its own game - making the information highly sensitive business information. As I mentioned on the phone, the evidence that SK seeks is specifically the problems Midway may have had with the Unreal Engine - its capabilities and performances - meaning the "problems" or the information that Midway would be releasing would be about the Unreal Engine, not any other application. If there are documents in which Midway employees complained to one another regarding what they thought the Unreal Engine (not any other proprietary or in-house applications) was or was not capable of, SK requests that Midway search for and produce those documents. Thus, no proprietary or sensitive business information would be produced, only germane evidence regarding the performance and capabilities of the Unreal Engine.

Once again, all information produced by Midway would be marked Highly Confidential: Attorneys' Eyes Only such that no competitive disadvantage would come from Midway's production of documents in response to the subpoena per the protective order in place in this case.

3. SK requests the final signed license agreement and any final signed amendments, revisions, terminations and/or contracts.

[Relevance]: To your point that Midway has a separate and distinct contract with Epic from any agreement SK has with Epic, SK is requesting copies of the Midway-Epic agreement to determine what similarities (if any) existed in the contractual relationship between Epic and its licensees. SK is also requesting copies of those documents from Epic itself but Midway may have different document retention policies than Epic, a different set of amendments or revisions in its possession, custody and control, and/or a different version of the agreement, all of which is reasonably calculated to lead to discoverable information.

Hopefully this narrowing of categories helps to convince you that the motion to quash is unnecessary and a waste of judicial resources. SK is legitimately seeking a narrow subset of highly relevant information covered by the protective order in place in this case and it is our hope that Midway will comply. To be clear, SK reserves any rights it has with regard to the subpoena, but we provide these narrowly tailored categories in response to your requests for assistance in facilitating your production.

In addition, we have retained local counsel and are working on getting available dates from them for the hearing. Please do not hesitate to contact me if you have any questions or concerns or would like to discuss the subpoena further.

Thanks,

Anjali



KRIEG KELLER SLOAN REILLEY & ROMAN LLP · ATTORNEYS
Anjali Kumar Kurani
114 Sansome Street, 4th Floor
San Francisco, CA 94104
(415) 273-2786 Direct
(415) 249-8333
akurani@kksrr.com
www.kksrr.com

2/7/2008

* * * * * Confidential Notice * * * * *

This e-mail message is for the sole use of the intended recipient(s) and may contain confidential and/or privileged information. Any unauthorized review, use, disclosure, or distribution is prohibited. If you are not the intended recipient(s), please contact the sender by reply e-mail and destroy all copies of the original message. Thank you.