Westlaw

Not Reported in F.Supp.
Not Reported in F.Supp., 1996 WL 596456 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

Page 1

Elm Energy and Recycling (U.K.) Ltd. v. Basic
N.D.Ill.,1996.
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern Division.
ELM ENERGY AND RECYCLING (U.K.) LIMITED, a Private Limited Liability Company Organized and Existing Under the Laws of the United Kingdom, and Nipsco Development Company, Inc., an Indiana Corporation, and Black & Veatch, a Partnership, Plaintiffs,
v.
John BASIC, Sr., John Basic, Jr., or Records Custodian of Basic Envirotech, Inc. and Flame Engineering, Inc. f/k/a Basic Environmental Engineering, Inc., Defendants.
**No. 96 C 1220.**

Oct. 9, 1996.

Paul M. Lurie, Schiff, Hardin & Waite, Chicago, IL.
Donald F. Martin, Blackwell, Sanders, Matheny, Kansas City, MO.

*MEMORANDUM OPINION AND ORDER*

GUZMAN, United States Magistrate Judge.
**\*1** Pending is Elm Energy and Recycling (UK) Ltd., NIPSCO Development Company, Inc.'s ("Elm/NIPSCO") and Black & Veatch's ("B & V") motion to compel discovery responses from non-party John Basic Sr. of Basic Envirotech, Inc. ("Envirotech") and Flame Engineering, Inc. f/k/a Basic Environmental Engineering Inc. ("Basic/Flame"). B & V has also requested that costs pursuant to Fed.R.Civ.Pro. 37(a)(4) be granted. In response to this motion Basic/Flame and Envirotech cross-move to quash the subpoenas. In the alternative Basic Flame requests that the subpoenas be modified. In addition, Basic/Flame seeks a protective order limiting the use of the requested documents to the pending action. For the reasons set forth below, this motion to compel is granted in part and denied in part; the motion to quash is denied; the motion to modify is granted in part and denied in part; and the protective order set forth below is to be entered by agreement of the parties. Finally, B & V's motion for attorneys' fees is denied.

*BACKGROUND FACTS*

UK LITIGATION

This litigation arises out of a project for the design and construction of a whole tires-to-energy waste incineration plant in Wolverhampton, UK. The plant was constructed pursuant to a contract between Elm Energy and Recycling (UK) Ltd. ("Elm"), a United Kingdom company, and TBV Power Ltd. ("TBV"), an English limited liability company. NIPSCO Development Company, Inc., an Indiana corporation, owns 95% of Elm. Black & Veatch, a partnership with its principal place of business in Kansas City, Missouri is a 50% shareholder in TBV. Tarmac Construction Ltd., the general contractor of the Elm project, is the other 50% shareholder in TBV.

There are two suits pending which involve the Elm plant, one in Michigan and one in the United Kingdom. Elm/NIPSCO are the plaintiffs and B & V the defendant in the litigation in Michigan for which they are here seeking discovery from nonparties Basic/Flame and Envirotech. Basic/Flame and Envirotech are based in Glen Ellyn, Illinois. Basic/Flame and Envirotech are suppliers of waste to energy systems based on the patented Basic Pulse Hearth$^{TM}$ technology invented by John Basic, Sr. Basic/Flame designed the incinerators for the Elm plant. NIPSCO and B & V are not parties to the UK dispute.

In the UK, the plaintiffs are TBV and Tarmac PLC and the defendants are Elm, the Environmental Incineration Company Ltd. f/k/a Basic Energy (UK) Limited ("Basic UK") and Basic UK's parent company Blue Circle Industries PLC. Basic UK is the subcontractor that provided the Basic incinerators for the project. Because the plant failed to meet availability and reliability levels called for by the contract, the project's engineer did not issue an Acceptance and Completion Certificate for the facility by June 30, 1995, as required by the Elm/TBV contract. As a result, Elm claims that it exercised its right under the contract to reject the facility constructed by TBV and demand that TBV

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:08-cv-00782   Document 19-2   Filed 04/04/2008   Page 2 of 15

Not Reported in F.Supp. Page 2
Not Reported in F.Supp., 1996 WL 596456 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

pay Elm the equivalent in English pounds of $47,353,952. (Defendants' Response, Exh "D", p. 4-5) In the English litigation, Elm is pursuing claims against TBV and Tarmac, and TBV is disputing Elm's rejection of TBV's work at the plant. TBV, B & V's affiliate, is also pursuing adverse claims against Basic UK, licensee of Basic/Flame and supplier of the Basic incinerators. TBV claims that there was no basis for the performance guarantees given by Basic UK regarding the combustion efficiency of the incinerators, thereby rendering those guarantees fraudulent and allowing TBV to avoid damage limitations in its contract with Basic UK.

THE MICHIGAN ACTION

**\*2** On August 5, 1995, plaintiffs Elm/NIPSCO filed suit against defendant B & V in the U.S. District Court for the Eastern District of Michigan. Elm/NIPSCO allege that NIPSCO's decision to invest in Elm was largely based on B & V's assurances that it would provide the necessary expertise for the design, construction and testing of the Elm plant. They also allege that B & V participated extensively in the design of the Elm plant (Defendants' Response, Exh. "D", para. 3) and in Basic's original design of the incinerators (Defendants' Response, Exh. "D" para 32). They assert that the Elm plant has failed to achieve the minimum level of availability and reliability called for by the Elm/TBV contract (Elm/NIPSCO Complaint, 4).

Count I of Elm/NIPSCO's complaint against B & V is for negligent misrepresentation based on representations by P.J. Adam, Chairman of B & V, that the plant was basically sound and that the Elm plant was capable of producing higher steam generation and lower carbon residue than had yet been achieved. Elm/NIPSCO claims that the representations made by Adam were largely based on the performance of the Basic incinerators. Elm/NIPSCO's Response to Defendants' Motion, p. 4). Elm/NIPSCO allege that Adam's statements led them to waive certain rights in the Deed of Variation and the Supplemental Deed of Variation that they had had under the original Elm-TBV contract and to make various concessions to TBV. Elm/NIPSCO allege that by entering into the Variation and Supplemental Deed of Variation, they may have lost the right to recover certain liquidated damages from TBV. NIPSCO further alleges, in reliance on Adam's statements, it decided to increase its investment in the Elm plant. Elm claims that Adam's statements were negligent because of the failure of B & V personnel to use reasonable care in their investigation and evaluation of the Elm project. (Count I of Elm/NIPSCO's Complaint, Defendants' Response, Exh. "D").

Counts II and III of Elm/NIPSCO's complaint do not involve any discovery from Basic/Flame. Count IV of Elm/NIPSCO's complaint is for negligence regarding B & V's alleged review, approval and participation in Basic's design of the five incinerators for the Elm plant. (Defendants' Response, Exh. "D," para. 32)

On September 18, 1995, the defendant B & V answered Elm/NIPSCO's complaint with various affirmative defenses. In its answer, B & V denies that it reviewed, approved or participated in Basic's design of the incinerators. Rather, B & V alleges that plaintiffs and their representatives themselves reviewed and approved Basic's design. (Defendants' Response, Exh. "E," p. 11). B & V's affirmative defenses include the claim that there was negligence and fault on the part of the plaintiffs and on the part of Basic which contributed to and caused the plaintiffs' damages, if any. (Defendants' Response, Exh. "E," p. 12, 13). B & V alleges that Basic admitted errors in the design drawings in 1993 and 1994. They further contend that Basic had a close relationship with Elm/NIPSCO. (B & V's Response to Basic/Flame's Suggestions, p. 5). They assert that Basic was involved in the re-design of the incinerators after the January 5, 1994 meeting. (6). (B & V's Response, Exh. "D"). B & V also claims that Elm/NIPSCO is estopped from bringing this action because of their selection of Basic as the subcontractor and their selection of the Basic incinerators and technology. (Defendants' Response, Exh. "E," p. 14-15).

**\*3** B & V asserts counterclaims against Elm/NIPSCO for negligent misrepresentation, breach of implied warranty and negligent selection, designation and nomination of Basic as subcontractor and Basic technology. (Motion to Compel, p. 2-3). B & V claims that Elm is liable to B & V for having selected Basic UK as a subcontractor and for selecting the Basic technology and the Model 7000B incinerator in the Elm plant. (Defendants' Response, p. 8).

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:08-cv-00782   Document 19-2   Filed 04/04/2008   Page 3 of 15

Not Reported in F.Supp.                                                                                              Page 3
Not Reported in F.Supp., 1996 WL 596456 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

In Count I, B & V claims that Elm/NIPSCO, by their selection of Basic as the subcontractor and their selection of the Basic technology which constitutes the central feature of the Elm plant, impliedly warranted to TBV and its subcontractors that the technology would be fit for its intended purpose. B & V further alleges that Elm/NIPSCO breached their implied warranty to B & V because the Basic Model 7000B Units failed to achieve an annual capacity factor of at least 80.65% as required by the contract between Elm and TBV and that B & V has sustained damages as a result of that breach. (Defendants' Response, Exh. "E", 17). They allege in Count II of their counterclaim that plaintiffs knew or should have known that the Basic Model 7000B Units were not capable of achieving the capacity required by the March 2, 1992 contract. (Exh. "E," p. 19). They further claim that Elm owed a duty to its contractors and subcontractors to exercise reasonable care in investigating and selecting Basic, and as a result of Elm/NIPSCO's negligence, B & V has been damaged in the amount of at least $50 million. (Exh. "E," p. 20).

Count III of the counterclaim is for negligently misrepresenting to defendant that the Basic units were fit for their intended purpose. In Count IV, B & V seeks recovery under a theory of promissory estoppel. Defendant claims that it relied to its detriment on plaintiffs' promise, representation and warranty regarding the Basic Model 7000B Units. (Exh. "E," p. 23). Elm/NIPSCO challenges B & V's counterclaims with 16 defenses.

SUBPOENAS

Both plaintiffs, Elm/NIPSCO, and defendant, B & V, in the Michigan litigation issued subpoenas to Basic/Flame and Envirotech requesting documents relating to the incinerators used in the Elm plant and now seek to compel responses to those subpoenas. B & V served a *subpoena duces tecum* on John Basic, Sr. to produce his company's records on November 15, 1995. On December 22, 1995, Elm/NIPSCO served a *subpoena duces tecum* on an employee of Envirotech for the production of the records of Envirotech and Flame Engineering, Inc. f/k/a Basic Environmental Engineering Inc.

Basic/Flame responded to B & V's subpoena on December 15, 1995 by making objections to the subpoena and refusing to produce any documents. Basic/Flame differentiates between the two subpoenas, but Elm/NIPSCO and B & V do not. Both subpoenas were issued to John Basic, Sr., John Basic, Jr. and Basic Envirotech, Inc. The Elm/NIPSCO subpoena was also issued to Flame Engineering, Inc. and Basic Environmental Engineering, Inc. The B & V subpoena was served on John Basic, Sr. whereas the Elm/NIPSCO subpoena was served on an employee of Envirotech. (Defendants' Response, p. 2). John Basic, Sr. is the custodian of the records of Flame Engineering, Inc. f/k/a Basic Environmental Engineering, Inc. "Basic/Flame". Basic/Flame objects to the B & V and Elm/NIPSCO's definition of "Basic" as used in the subpoenas as inclusive of Basic Envirotech, Inc. because John Basic, Sr. is not an officer, director, shareholder or employee of Basic Envirotech nor is he the custodian of its records. (Defendants' Suggestions for B & V Subpoena, Exh. "A").

*4 Envirotech, like Basic/Flame, designs and supplies waste to energy systems based on the Basic technology under a license. Envirotech objects that the subpoena by Elm/NIPSCO, served on an employee of Envirotech, requested documents of Basic/Flame because Envirotech is not the custodian of records for that company. (Defendants' Suggestions for Elm/NIPSCO Subpoena, Exh. "A"). Envirotech was incorporated on August 4, 1993. Envirotech is not an owner of Basic/Flame, and Basic/Flame is not an owner of Envirotech. (Suggestions for Elm/NIPSCO, p. 2) Basic/Flame and Envirotech made objections to the subpoena requests. (*See* Motion to Compel, Exh. "E").

Elm/NIPSCO and B & V then participated in conference calls and written correspondence with counsel for Basic/Flame pursuant to Local Rule 12K, but they were unable to reach an agreement regarding the production of the requested documents. (*See* Motion to Compel, Exh. "F") In the course of their discussions, Basic/Flame requested a protective order with a non dissemination provision limiting the use of the subpoenaed documents to the pending action. (Motion to Compel, Exh. "F") Elm/NIPSCO and B & V objected to Basic/Flame's proposed protective order, but they expressed their willingness to comply with a "reasonable" protective order identical to the one to which they had agreed for their own

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  
Not Reported in F.Supp., 1996 WL 596456 (N.D.Ill.)  
**(Cite as: Not Reported in F.Supp.)**

Page 4

documents permitting the use of the subpoenaed documents in the related UK action. (Motion to Compel, p. 7). They also offered to pay reasonable compensation for the costs of Basic/Flame's and Envirotech's document production. (*Id.*) Elm/NIPSCO and B & V assert that Basic/Flame and Envirotech have used stalling tactics to delay the discovery of the requested documents. (*Id.*) Basic/Flame and Envirotech have not yet produced any documents.

In their motion to compel, Elm/NIPSCO and B & V assert that the central component of the Elm plant and a key issue in both the Michigan and the UK actions is the incinerator technology developed by John Basic, Sr. (Motion to Compel, p. 3) Elm/NIPSCO and B & V allege that Basic and his agents made express representations and guarantees regarding the combustion efficiency of the incinerators and their annual availability potential both before and after the selection of the Basic incinerator for the plant. (*Id.* at 4) They further allege that Basic and Basic/Flame's records will reveal the basis of the guarantees and representations and provide information relevant to the design, engineering and manufacture of the incinerators. (*Id.* at 4-5) Issues relating to the performance of the incinerators as well as issues regarding who investigated, selected and decided to use the Basic incinerators are raised by the parties in the Michigan action.

The Purchaser's Requirements' portion of the Elm/TBV contract for the waste incineration plant included five 7000B incinerators to a design by Basic Environmental Engineering, Inc. using technology developed by John Basic, Sr. (Motion to Compel, Exh. "A"). The incinerators were supplied to the Elm plant pursuant to a subcontract between TBV and Basic UK, a subsidiary of Blue Circle Industries PLC. Basic UK was a licensee of Basic/Flame. (Defendants' Response, p. 3)

**\*5** Basic/Flame asserts that in other projects where it has supplied incinerators, the incinerators were supplied as a part of a complete system designed by Flame. In contrast, Basic/Flame claims that it supplied only the manufacturing information for the incinerator portion of the Elm project under a manufacturing license granted to Basic UK. Basic/Flame further asserts that the Basic Model 7000B was the first of its kind and was designed specifically for the Elm plant project's requirements which were provided by Elm. (Defendants' Suggestions for B & V Subpoena, p. 2-3). Basic/Flame asserts that approximately forty engineers worked on the project for Flame, but only John Basic, Sr. is currently associated with Flame. (*Id.*) Basic/Flame also asserts that the information provided to Basic UK was provided pursuant to a confidentiality agreement. (*Id.* at 2).

On March 20, 1996 during a hearing before this Court B & V and Elm/NIPSCO again claimed that a crucial aspect of the litigation in Michigan is the five incinerators were designed with Basic technology and that the third-party subpoenas seek to obtain documents related to the incinerators. Counsel for Elm/NIPSCO admitted that one purpose for wanting the documents was to discover whether to add Basic/Flame *et., al.* as another defendant to the action. The attorney further stated that another purpose was to find out whether any of the representations made by the various parties regarding the capabilities of the incinerators had any basis in fact. Additionally, the attorney for B & V expressed the need for the requested documents to discover who selected the Basic incinerator. (B & V's Reply to Basic/Flame's Suggestions, Exh. "K" Transcript at 9.) The attorneys explained that they wanted the communications from Basic to B & V and to Elm and to NIPSCO as well as the basis for those communications. (*Id.* at 24).

Basic's attorney argues that the subpoenas are too broad and do not fit the Michigan litigation. (*Id.* at 18). Basic's lawyer said that they would be willing to produce documents regarding what Basic said to B & V and to Elm or NIPSCO and that they wanted their trade secrets to be protected and limited to the Michigan litigation. The court requested that Basic determine what it was willing to produce with an appropriate protective order as well as what it was not willing to produce and why. (*Id.* at 44) Pursuant to this request, Basic/Flame and Envirotech submitted their Response to the Motion to Compel and their Suggestions for Modification of Elm/NIPSCO Subpoena and Suggestions for Modification of B & V's Subpoena.

Basic/Flame and Envirotech, in their response to the motion to compel and their motion to quash the subpoenas, contend that the subpoenas and the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                                                                   Page 5
Not Reported in F.Supp., 1996 WL 596456 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

motion to compel are being used to disguise an attempt to conduct discovery for the UK litigation. Basic alleges that Elm/NIPSCO's failure to challenge B & V's counterclaims with some type of dispositive motion and demonstrates that they are using the Michigan action in a joint effort to discover documents from Basic/Flame for use in the UK suit. (Defendants' Response at 9, 10).

**\*6** Basic/Flame further alleges that because English procedure does not allow for pre-trial discovery from third-parties, (Affidavit of Colin Crichton Mackay, Q.C., Defendants' Response, Exh. "C") B & V is using the Michigan case to get broad discovery to aid its affiliate TBV in its case against Basic UK. (Defendants' Response at 4). Finally, Basic/Flame claims that the scope of the subject matter described in the Michigan pleadings fails to coincide with either the documents requested or the reasons given in support of B & V and Elm/NIPSCO' motion (*Id.* at 10). Thus, Basic/Flame urges the court to grant its motion to quash the subpoenas.

In the alternative, Basic/Flame requests modification of the subpoenas. If ordered to comply with the subpoenas, Basic/Flame requests a protective order to cover the production of any documents meeting the definition of trade secrets or confidential research, development or commercial information which would limit the use of the requested documents to the pending action. Elm/NIPSCO and B & V initially objected to the proposed protective order because the UK action involves almost the same parties, Elm and B & V's 50% owned affiliate, as well as the same plant, the same contract, the same facts and the same issue of the design and construction of the incinerators. (Motion to Compel, 7).

At the hearing on March 20, 1996, this Court proposed covering the parties, lawyers and experts in the English case under an order enforceable by agreement before this Court. (B & V's Reply to Suggestions, Exh. "K," Transcript at 19-21, 35). Elm/NIPSCO would agree to comply with an appropriate protective order which would permit the use of the documents in the UK and would allegedly protect the confidentiality and trade secrets of Basic/Flame. B & V, however, has allegedly agreed not to use the discovered documents in the UK litigation. (B & V's Response to Suggestions, at 13). Basic/Flame and Envirotech claim that B & V advised them on April 8, 1996 that TBV has not accepted the court's proposal and that the proposal should therefore be considered rejected. (Defendants' Suggestions for B & V Subpoena at 15).

Envirotech also requests modification of the subpoena if ordered to comply with it. Envirotech asserts that it was not the designer or supplier of the incinerators for the Elm plant. Envirotech had no communication with Elm before the Elm/TBV contract because it was not yet in existence. Envirotech claims that the only documents in its possession pertaining to the Elm plant and requested by the subpoena would involve technical support provided to Basic UK in May 1994 regarding the computer program that sequences the operation of the incinerators, the sale of replacement parts (molded rubber bumpers) to Elm for the incinerators in February 1995, and various correspondence with Elm and NIPSCO regarding a request for a control logic diagram, for a plant visit, and for Envirotech's field service rates. (Defendants' Suggestions for Elm/NIPSCO Subpoena at 2-3).

**\*7** Finally, B & V, in their Reply to Basic/Flame's Suggestions for Modification, assert that Basic's opposition to the subpoenas has caused substantial additional and unnecessary expenses for Elm/NIPSCO and B & V as well as causing undue delay in the discovery process. They claim that Basic/Flame's objections are frivolous and without substantial justification and that the court should order Basic to pay B & V's costs under F.R.C.P. 37(a)(4).

*DISCUSSION*

B & V and Elm/NIPSCO served subpoenas duces tecum for the production of documents on nonparties Basic/Flame and Envirotech pursuant to F.R.C.P. 45. Rule 45(c)(2)(B) allows the subpoenaed party to object to the inspection and copying of documents within fourteen days after service.

Following the service of the subpoenas, Basic/Flame and Envirotech made objections and refused to produce any of the requested documents. (Motion to Compel, Exh. "E"). According to the Federal Rules of Civil Procedure, after objections are made, the party serving the subpoena may move for an order to compel production of documents at any time.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:08-cv-00782    Document 19-2    Filed 04/04/2008    Page 6 of 15

Not Reported in F.Supp.  Page 6
Not Reported in F.Supp., 1996 WL 596456 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

F.R.C.P. 45(c)(2)(B). In order to quash or modify a *subpoena duces tecum* under the Federal Rules, Basic/Flame and Envirotech must demonstrate that the subpoena subjects them to an undue burden F.R.C.P. 45(c)(3)(A)(iv); or that the subpoena requires disclosure of trade secrets, confidential research, development or commercial information Fed.R.Civ.P. 45(c)(3)(B)(i).

The party moving to quash a subpoena bears the burden of proving that the subpoena is unreasonable or oppressive. Truswal Systems Corp. v. Hydro-Air Engineering, Inc., 813 F.2d 1207, 1210 (Fed.Cir.1987). Thus, Basic/Flame and Envirotech bear the burden of demonstrating that the subpoenas should be quashed which is a heavier burden than that required for demonstrating the need for a more limited protection such as a protective order. *Id.* For the reasons set forth below, this court finds that Basic/Flame and Envirotech have not demonstrated that the subpoena should be quashed. Thus the motion to compel is hereby granted with certain modifications.

In their motion to quash, Basic/Flame and Envirotech primarily argue that the subpoenas issued by Elm/NIPSCO and B & V in their federal court case in Michigan is a disguised attempt to conduct discovery for the pending litigation in the UK and therefore should be quashed. (Defendants' Response at 2). For the court to disallow the subpoenas on such grounds, Basic/Flame and Envirotech would have to conclusively demonstrate that the discovery for the Michigan lawsuit is a sham. Although the federal rules allow for broad discovery, they do not sanction the use of discovery in one case as a sham for conducting discovery solely for a different case or to circumvent limitations on discovery in a different action. Wilk v. American Medical Assoc., 635 F.2d 1295, 1300 (7th Cir.1980); Campbell v. Eastland, 307 F.2d 478 (5th Cir.), *cert. denied,* 371 U.S. 955, 9 S.Ct. 502, 9 L.Ed.d 502 (1962) *See* Wright & Miller § 2040, at 291-295.

**\*8** In their effort to show that the Michigan discovery is a sham, Basic/Flame and Envirotech point to the nature of the Michigan case, the subpoena requests themselves, plaintiffs' refusal to accept a protective order that would disallow use of the defendants' documents in the English case, and B & V's and Elm/NIPSCO's failure to make dispositive motions before beginning discovery.

Basic/Flame and Envirotech also contends that the subpoenas should be quashed because B & V and Elm/NIPSCO have an agreement amongst themselves to conduct discovery for the English case via discovery in the Michigan case. (Defendants' Response at 2-3). Basic/Flame's and Envirotech's only evidence of such an agreement amongst B & V and Elm/NIPSCO is B & V and Elm/NIPSCO's joint discovery plan which was submitted to this court. (Motion to Compel, Exh. "J"). This Court finds both arguments to be unpersuasive because it merely demonstrates that the parties conducted discovery planning meetings and agreed to pursue discovery from a variety of entities including Basic/Flame and Envirotech for the Michigan action. It does not indicate that they were planning to pursue discovery from Basic/Flame and Envirotech purely for purposes of getting discovery not available under English law.

As further evidence of B & V and Elm/NIPSCO's alleged effort to obtain discovery for use in the UK action, Basic/Flame and Envirotech contend that B & V and Elm/NIPSCO have pleaded affirmative defenses which should have been raised by a motion to dismiss or by a motion for summary judgment. (Defendants' Response at 7). Basic/Flame and Envirotech claim that B & V and Elm/NIPSCO' failure to make dispositive motions in lieu of affirmative defenses is due to the possible usefulness of those claims for discovering documents from Basic/Flame and Envirotech for use in the UK. (Defendants' Response at 9-10). This third argument is also without merit. Discovery has not closed in this case and it is easy to understand why motions for summary judgment have not yet been filed. This is a very complex case which involves a number of parties and it is not clear precisely what went wrong. Discovery will need to be completed before the parties will be in a position to file substantive motions.

In addition, the cases cited by Basic/Flame and Envirotech to demonstrate instances of sham discovery are not analogous to the present case. In general, the cases offered demonstrate instances where a party filed an action in federal court after having been denied discovery in another forum. *See* Ente Nazionale Idrocarburi v. Prudential Securities Group, Inc., 744 F.Supp. 450 (S.D.N.Y.1990); Beard

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  Page 7
Not Reported in F.Supp., 1996 WL 596456 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

*v. New York Central R.R. Co.,* 20 F.R.D. 607, 608-610 (N.D.Ohio, 1957); *Bachrach et al. v. General Investment Corporation et, al.,* 31 F.Supp. 84, 86 (S.D.N.Y.1940). In *Beard,* it was only after the plaintiff's motion to compel production of documents was denied by the state court that the plaintiff proceeded to file an action against the same defendant in federal court. The court held that the defendant would not be required to answer until it appeared probable that the answers would be used for discovery or as evidence in the federal action. *Id.* 608-610. In *Bachrach,* it seemed that the outcome of pending state actions might preclude the federal action from coming to trial, and that the depositions sought were for use in the state action. Thus, the court held that the depositions would be deferred until the conclusion of the state action unless the federal action went to trial in the meantime. *Id.* at 86.

**\*9** As Basic/Flame and Envirotech have argued, the parties to the UK litigation likely have an interest in gathering as much information as possible about the Basic incinerators. Further, B & V and Elm/NIPSCO admit that they would like to share documents produced in Michigan with their affiliates in the UK litigation. (Motion to Compel at 10). However, the fact that the parties to the separate action in the UK would be interested in the discovery that the parties to this action may obtain does not necessarily lead to the conclusion that the parties should be precluded from getting discovery. "[U]nless it can be shown that the discovering party is exploiting the instant litigation solely to assist in other litigation before a foreign forum, federal courts do allow full use of the information in other forums." *Johnson Foils v. Huyck Corp.,* 61 F.R.D. 405, 410 (N.D.N.Y.1973) (emphasis added). Even if, as Basic/Flame and Envirotech assert, the UK litigants could not get discovery from a third party in the US without a subpoena specifying the documents requested (Defendants' Response, Exh. "C"), this is not a valid reason to deny B & V and Elm/NIPSCO access to documents relevant to the Michigan action.

Finally, Basic/Flame and Envirotech direct the court's attention to 28 U.S.C. § 1782 which pertains to direct actions for discovery by foreign litigants. 28 U.S.C.A. § 1782 provides in part that "[t]he district court of the district in which the person resides or is found may order him to give testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or document or other thing produced, before a person appointed by the court ..."28 U.S.C.A. § 1782. A majority of courts interpreting the statute have adhered to the rule that the discovery sought in a direct action by foreign litigants must be allowed in the arena in which the case is pending. (Defendants' Response at 4-5). *See In Re Application of Asta Media S.A.,* 981 F.2d 1 (1st Cir.1992); *In Re Letters Rogatory From The First Court of First Instance In Civil Matters, Caracas, Venezuela,* 42 F.3d 308; (5th Cir.1995); *In Re Lo Ka Chun,* 858 F.2d 1564 (11th Cir.1988); *John Deere Ltd. v. Sperry Corporation,* 754 F.2d 132 (3d Cir.1985); *In Re Letter of Request From Crown Prosecution Service of the United Kingdom,* 870 F.2d 686 (D.C.Cir.1989). *Compare In Re Application of Euromepa S.A.,* 51 F.3d 1095 (2d Cir.1995) (the Second Circuit held that 28 U.S.C. § 1782 does not require that the discovery sought in the United States be discoverable in the foreign jurisdiction).

The Seventh Circuit has not yet addressed the applicability of this discovery rule. The only case to address 28 U.S.C. § 1782 in this District, is *Verson Int'l Ltd. v. Allied Prod. Corp.,* 1987 WL 17837 (N.D.Ill.) an unpublished opinion. In *Verson* the court found that a request under the statute would be left to the court's discretion.

**\*10** However, a plain reading of the statute does not require a district court to explore whether the discovery is allowed in the foreign forum. 28 U.S.C.A. § 1782. In addition, considering the ruling in *Verson* and the Second Circuit's rule that the material sought in the United States need not be discoverable in the original foreign jurisdiction, it remains possible that in this circuit the UK litigants could be granted access to the documents requested. Finally, Elm/NIPSCO maintains that third party discovery is available in the British courts by a rogatory motion. (Response to Suggestions for Elm/NIPSCO Subpoena at 5).

As further argument that the discovery is a sham, Basic/Flame and Envirotech contend that the subpoena requests are not relevant to the Michigan

Case 1:08-cv-00782   Document 19-2   Filed 04/04/2008   Page 8 of 15

Not Reported in F.Supp.  
Not Reported in F.Supp., 1996 WL 596456 (N.D.Ill.)  
**(Cite as: Not Reported in F.Supp.)**

Page 8

case. Thus, the court must determine whether and/or which of the subpoena requests are relevant to the Michigan action.

In general, the federal rules allow for broad discovery in order that the parties may gain full knowledge of the issues of the case. Hickman v. Taylor, 329 U.S. 495 (1947). More specifically, the Federal Rules of Civil Procedure allow discovery regarding "any matter, not privileged, which is relevant to the subject matter involved in the pending action ... The information sought need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." F.R.C.P. 26(b)(1). Thus, the principle requirement for a *subpoena duces tecum* is that it be relevant to the subject of the pending case.

Likewise, Fed.R.Ev. Rule 401 states that " 'relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Cited in New York State Energy Research and Development Authority v. Nuclear Fuel Services, Inc., 97 F.R.D. 709, 712-713 (W.D.N.Y.1983). In general, relevancy for discovery purposes should be liberally construed. See Wright and Miller § 2008. Relevance should be measured by the general relevance to the subject matter and the legal issues present in the case rather than the precise issues presented by the pleadings. Transcontinental Fertilizer Co. v. Samsung Company, Ltd. 108 F.R.D. 650, 652 (E.D.Pa.1985). If there is a possibility that the discovery sought may lead to information relevant to the subject matter of the action, then the discovery should generally be allowed. Fed.R.Civ.Pro. 26(b)(1); Wauchop v. Domino's Pizza, Inc., 138 F.R.D. 539, 544 (N.D.IN1991); Wright and Miller § 2008. In deciding whether to quash or modify the subpoenas or to compel answers to them, the court must balance the "relevance of the discovery sought, the requesting party's need, and the potential hardship to the party subject to the subpoena." Truswal Systems Corp. v. Hydro-Air Engineering, Inc., 813 F.2d 1207, 1210 (Fed.Cir.1987) citing Deitchman v. E.R. Squibb & Sons, Inc., 740 F.2d 556, 560, 564 (7th Cir.1984).

**\*11** In addition, "[a] district court whose only connection with a case is supervision of discovery ancillary to an action in another district should be 'especially hesitant to pass judgment on what constitutes relevant evidence thereunder.' " *Truswal,* 1211-1212, citing Horizons Titanium Corp. v. Norton Co., 290 F.2d 421, 425 (1st Cir.1961). If relevance is unclear, Rule 26(b)(1) indicates that the court should be permissive. *Truswal,* 1211-1212 (citing Heat & Contro, Inc. v. Hester Industries, Inc., 785 F.2d 1017, 228 USPQ 926 (Fed.Cir.1986).

In this case, the district court is supervising the discovery of documents which are to be used in the Michigan action. Thus, the court should be permissive regarding the relevancy of the discovery requests to the pleadings. If the documents sought bear no discernible relevance to the case at hand, the subpoenas requested by B & V and Elm/NIPSCO should be quashed.

Basic/Flame and Envirotech contend that B & V and Elm/NIPSCO have not demonstrated that the requested documents fall within the scope of the Michigan case. (Defendants' Response at 10). However, this court finds that B & V and Elm/NIPSCO have successfully demonstrated that at least some of the documents requested are relevant to the issues in the Michigan action which is premised on the failure of the Elm plant and the Basic incinerators to live up to the terms of the Elm/TBV contract. Plaintiffs and defendant in the Michigan litigation agree that the Basic incinerators constitute a central feature of the Elm plant and allege that Basic UK and Basic offered guarantees regarding the combustion efficiency and the annual availability potential of the incinerators. (B & V Response to Suggestions, Exh "A").

A number of the documents requested are relevant to Counts I and IV of the plaintiffs' complaint which are alleged to arise out of the performance problems of the incinerators designed by Basic. (B & V's Reply to Suggestions at 6). Count I of Elm/NIPSCO's complaint is for negligent misrepresentation by B & V's Adam. Elm/NIPSCO claim that P.J. Adam represented that the Elm plant was capable of reaching certain output levels and thereby induced Elm/NIPSCO to amend the Elm/TBV contract to their detriment. (Complaint, para. 13) They further claim that P.J. Adam's representations were largely based on the performance of the Basic incinerators. (Elm/NIPSCO's Response to Suggestions at 4). The

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:08-cv-00782   Document 19-2   Filed 04/04/2008   Page 9 of 15

Not Reported in F.Supp.
Not Reported in F.Supp., 1996 WL 596456 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

Page 9

Basic documents regarding the actual capabilities of the Basic 7000B incinerators are relevant to Elm/NIPSCO's claim (and B & V's defense) and must be produced (Subpoena Requests 2a, c, d, e).

On the other hand, Basic/Flame and Envirotech allege that Elm/NIPSCO's claim for negligent misrepresentation is based on a statement of opinion regarding the capabilities of the Elm plant rather than on a statement of fact and it therefore cannot form the basis of a claim for negligent misrepresentation. (Defendants' Suggestions for B & V's Subpoena at 6) They rely on *City National Bank of Detroit v. Rodgers & Morgenstein,* 155 Mich.App. 318, 399 N.W.2d 505, 507-08 (1987), *appeal denied* to assert that only misrepresentations of fact and not statements of opinion can serve as the bases for claims of negligent misrepresentation. This argument is not persuasive.

**\*12** In *City National Bank,* a bank sought and received an attorney's legal opinion regarding the authority of managing partners to bind a partnership in the absence of the concurrence of the other partners. The court found that the legal opinion "amounted to an expression of opinion in the exercise of professional judgment rendered upon facts fully disclosed and known to all." *Id.* at 507. Basic/Flame asserts that the statements by Adam were statements of opinion because the only 7000B incinerators built were built by Basic UK for the Elm plant. (*See* Exhibit "C" of Defendants' Suggestions for B & V's Subpoena). However, P.J. Adam purportedly stated that the plant was capable of reaching certain output levels. (Defendants' Response, Exh. "D," at 7). These statements could reasonably be interpreted as statements of fact if they had been premised on research or testing of the incinerators. Therefore, Elm/NIPSCO could conceivably have a claim for negligent misrepresentation and the Basic documents regarding the capabilities of the 7000B incinerators are relevant as to whether Adam's statements were based on any documented information.

Elm/NIPSCO's Count IV relates to B & V's alleged negligence in reviewing, approving and redesigning the design of the yoke beam assembly for the Basic incinerators. Basic/Flame and Envirotech assert that because B & V and Elm/NIPSCO agree that Basic's original design was insufficient (Defendants' Response, Exh. "D," Elm/NIPSCO Complaint, Count IV ¶ 34, B & V Answer ¶ 34), the issue is eliminated from controversy. (Defendants' Suggestions for B & V Subpoena at 12). Basic/Flame and Envirotech cite *FDIC v. W.R. Grace & Company,* 691 F.Supp. 87, 91-92 (N.D.Ill.1988) where the defendant claimed that the FDIC had failed to prove that the claim against the defendant was assigned to the FDIC. The court in that case found that the fact of the assignment was admitted in the defendant's answer and decided pre-trial and that it was therefore unnecessary for the FDIC to prove the fact of the assignment at trial. *Id.* Thus, once facts are admitted they are not in dispute and no evidence is needed to prove them. B & V's statement that Basic's original design was insufficient is not an admission of negligence in the review, approval and redesign of the assembly but they are certainly relevant to what went wrong regarding the design and manufacture of the yoke beams.

B & V's third affirmative defense is that plaintiff's damages are due to the negligence of non-party Basic. Under Michigan law, a defendant has the right to introduce evidence that the plaintiff's damages are due to a third party's negligence even if the other allegedly negligent party is not a party to the action. *Laney v. Celotex,* 901 F.2d 1319, 1320 (6th Cir.1990). In *Laney v. Celotex,* a worker brought suit for damages for injuries arising from alleged asbestos exposure, and the trial court found the manufacturer negligent. On appeal, the court held that evidence of other asbestos products to which the worker may have been exposed was relevant, and the trial court erred in excluding that evidence. *Id.* 1319, 1320. Similarly, B & V wants to introduce evidence that Basic/Flame's negligence led to Elm/NIPSCO's alleged damages. B & V provides evidence that John Basic, Sr. admitted to errors in the design of the incinerators both before and after the Chicago meeting where Adam allegedly made the statements that serve as the basis for Count I of Elm/NIPSCO's complaint. (B & V's Response to Suggestions at 5, Exh. "C", "D"). B & V further points out that the document in Exhibit "D" demonstrates that Basic was involved in the re-design of the incinerators after the 1994 meeting. (B & V Response to Suggestions at 6). Because this Court finds that these documents regarding the Basic 7000B incinerators and their capabilities could be relevant to why the incinerator did not perform to capacity they must be produced.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  
Not Reported in F.Supp., 1996 WL 596456 (N.D.Ill.)  
**(Cite as: Not Reported in F.Supp.)**

Page 10

**\*13** B & V's defense and counterclaim also raise the issues of who investigated, selected and decided to use the Basic incinerators. B & V alleges that Elm/NIPSCO selected the Basic technology without adequately investigating the technology prior to TBV and B & V's involvement with the project. B & V provides correspondence indicating that Elm and Basic UK and Basic/Flame were in contact regarding the Elm plant as early as September 1991. (B & V's Response to Suggestions, Exh. "B", Exh. "G"). B & V also provides evidence of discussions between Basic and NIPSCO and Elm regarding a plant in Belgium using Basic incinerators which took place a year prior to the Elm/TBV contract. (Exh. "F"). Basic/Flame's documents from before and after the date of the Elm/TBV contract relating to any joint venture with Elm or NIPSCO to market the Basic incinerators would be relevant to B & V's counterclaim and defenses that Elm/NIPSCO selected the Basic incinerators after an inadequate investigation of their capabilities.

B & V claims that Elm/NIPSCO had a duty to B & V as a sub-contractor on the project because they selected the Basic incinerators. (B & V's Response to Suggestions at 4.) B & V points to *Green Const. Co. v. Williams Form Engineering,* 506 F.Supp. 173 (W.D.Mich.1980) where the court found that an owner had a duty to a contractor when the owner took responsibility for approving the materials to be used by the contractor. (B & V's Response to Suggestions at 4). Whether the Basic documents requested provide any evidence that Elm/NIPSCO had more knowledge and information than B & V regarding the Basic technology is relevant to B & V's defense and counterclaim. (*Id.* at 7)

Basic/Flame asserts that B & V's subpoena is unjustifiably broad in requesting all documents supporting the research, science or engineering that support all statements by Basic/Flame to B & V and Elm/NIPSCO. (Defendants' Suggestions for B & V's Subpoena at 4). *See Lever Bros. Co. v. Proctor & Gamble Mfg. Co.,* 38 F.Supp. 680, 684 (D.C.Md.1941) (held that requests such as that for 'all written reports, memoranda, or other records of conferences of officers or members of the technical staff of the defendants ... in which the processes employed or to be employed in the manufacture of new Ivory soap were discussed' were too broad). Basic/Flame and Envirotech claim that the requests violate Rule 45(c)(1) in that it would impose an "undue burden or expense" upon them.

This court finds that the some of the document requests contained in the subpoenas are too broad as issued. However, "[w]hen a court is confronted with a motion to quash such a subpoena, its duty is not to deny any discovery, but to reduce the demand to what is reasonable, considering the discoverer's needs and the discoveree's problems." *Deitchman v. E.R. Squibb & Sons, Inc.,* 740 F.2d 556, 560 (7th Cir.1984). Thus, the court must consider each subpoena request and determine what is reasonable. In addition, Basic/Flame and Envirotech have estimated that the documents requested would comprise 11 banker's boxes. (Motion to Compel, Exh. "F"). With the modifications set out below, the number of documents to be produced should comprise less than the estimated 11 bankers' boxes, and as such is not an undue burden. In addition, B & V and Elm/NIPSCO have repeatedly expressed their willingness to pay the reasonable expenses of production. (B & V's Response to Suggestions at 12). Therefore, the cost of producing the documents does not place an undue burden on Basic/Flame and Envirotech.

*MODIFICATIONS TO THE B & V SUBPOENA*

**\*14** Only requests numbers 1, 2a, 2c, 2d, 2e, 3, 4, and 5 are in controversy with respect to the B & V subpoena because Flame has represented that it has no documents in its possession fitting the remaining other requests.
Request No. 1: All correspondence regarding the project between Basic and (1) Basic Energy (UK), (2) Elm, (3) any NIPSCO company, (4) Black & Veatch, (5) TBV Power, and (6) Blue Circle.
Request No. 1 is granted as modified: All correspondence regarding the Elm project between Basic/Flame and (1) Basic Energy UK, (2) Elm, (3) NIPSCO (4) Black & Veatch, (5) TBV Power, and (6) Blue Circle during the years 1990 to 1995.

Basic/Flame has objected to Request No. 1 because it is allegedly overbroad, burdensome and not in compliance with Rule 34(b). Basic's argument is correct in part because it clearly would be unduly burdensome to request Basic/Flame to produce *all* correspondence with respect to six different companies. However, this request is relevant in part

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:08-cv-00782   Document 19-2   Filed 04/04/2008   Page 11 of 15

Not Reported in F.Supp.                                                                                     Page 11
Not Reported in F.Supp., 1996 WL 596456 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

as to the correspondence between the years 1990-1995 because this period roughly covers the time period of Basic/Flame's involvement in the project.
Request 2a: All documents regarding the combustion efficiency of the Basic 7000B incinerator, including its efficiency in the burnout of carbonaceous material.
Request 2a will not be modified.

The combustion efficiency of the Basic incinerators is pertinent to Elm/NIPSCO's allegations that B & V misrepresented the plant's capabilities on January 5, 1994 and a B & V argues is at the heart of the dispute. The requested documents could contain or could lead to the discovery of information regarding the incinerators' efficiency depending on the mix of tyres and is relevant to whether the statements made by P.J. Adam were "obvious statements of opinion" or fact and whether Elm/NIPSCO reasonably relied on any statements. The requested documents are also relevant to B & V's defense and counterclaims.
Request 2c: All documents relied upon by Basic to guarantee or represent the overall annual availability, efficiency of burnout of carbonaceous materials, and the capability to produce steam and flue gas, of the Basic 7000B incinerators used in the Elm Project.
Request No. 2c will be granted as modified: All documents relied upon by Basic to guarantee or represent to *Elm/NIPSCP* and *B & V* the overall annual availability, efficiency of burnout of carbonaceous materials, and the capability to produce steam and flue gas, of the Basic 7000B incinerators used in the Elm Project.

This Court agrees with Flame that this request is overbroad and thus it has been limited to Elm/NIPSCO and B & V. It is now reasonably particular in what it seeks as to the guarantees and representations made to Elm/NIPSCO and B & V.
Request No. 2d: All documents regarding the design and manufacture of the Yoke beams for the Basic 7000B incinerators used in the Elm Project.
Request No. 2d will be modified to read: All documents *communicated to B & V* regarding the design drawings for the Yoke beams for the Basic 7000B incinerators used in the Elm Project.
**\*15** Request No. 2e: All documents in the possession of Basic in 1989, 1990, 1991 and 1992 regarding the combustion efficiency of any Basic incinerators.
Request 2e is denied.

This request is overbroad and creates an unnecessary burden to Basic/Flame. This case revolves around the Basic 7000B incinerator. The combustion efficiency of other Basic incinerators which may run on different fuels (B & V Sugg, 5) and be of different design is not relevant to the case at hand. Any relevant documents would be included in the response to Request No. 2c.
Request No. 3: All agreements with Basic to pursue or develop worldwide, plants using Basic incinerators or to market Basic incinerators or technology.
Request no. 3 is denied.

This request is overbroad and creates an unnecessary burden to Basic/Flame. Agreements which Basic has entered into as well as marketing information is irrelevant to the issues in the Michigan litigation. Further, Basic has represented that it is not presently aware of any documents in its possession fitting this category. B & V can get these documents from Elm/NIPSCO if that in fact is all it is seeking.
Request No. 4: All correspondence between Basic and NIPSCO or Elm concerning developing plants using Basic incinerators.
Request No. 4 is denied for the same reasons set forth in 3.
Request No. 5: All agreements between Basic and Basic UK, BEE or George Harrison relating to the marketing and licensing of Basic incinerators.
Request No. 5 is hereby denied.

*MODIFICATIONS TO THE ELM/NIPSCO SUBPOENA*

Only requests numbers 1, 2a, 2b, and 3 are in controversy because there are no documents in Basic/Envirotech's possession fitting the other requests.
Request No. 1: All correspondence regarding the project between Basic and (1) Basic Energy (UK), (2) Elm, (3) any NIPSCO Company, (4) Black & Veatch, (5) TBV Power, and (6) Blue Circle.
Request No. 1 will be granted as modified: All correspondence regarding the Elm project between Basic/Flame and (1) Basic Energy UK, (2) Elm, (3) any NIPSCO company, (4) Black & Veatch, (5) TBV Power, and (6) Blue Circle *during the years 1990-1995 and correspondence with B & V regarding the original design or B & V's redesign of the yoke beams.*
Request No. 2a: All documents regarding any burn

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:08-cv-00782    Document 19-2    Filed 04/04/2008    Page 12 of 15

Not Reported in F.Supp.  Page 12
Not Reported in F.Supp., 1996 WL 596456 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

tests or pilot tests conducted for the Basic 7000, 7000A, and 7000B incinerators;
Request No. 2a is granted as modified: All documents regarding the burn tests or pilot tests conducted for the Basic 7000 and 7000B incinerators;

This Court agrees with Basic that no documents regarding the 7000A incinerator should be produced since it never was manufactured.
Request No. 2b: All documents regarding any burn tests or pilot trials conducted for the Basic 7000, 7000A and 7000B incinerators.
Request No. 2b is granted as modified: All documents regarding any burn tests or pilot trials conducted for the Basic 7000 and 7000B incinerators.

This Court agrees with Basic/Flame that no documents should be produced as to the 7000A incinerator because it was never manufactured. These documents should be produced at the Stroud plant in Oklahoma.
**\*16** Request No. 2d: All documents regarding the design and manufacture of the Yoke beams for the Basic 7000, 7000A and 7000B incinerators.
Request No. 2d. is denied.

Basic/Flame has represented that it has no documents covering the Yoke beam at the Elm plant.
Request No. 3: All agreements with Basic to pursue or develop worldwide, plants using Basic incinerators or to market Basic incinerators or technology.
Request No. 3 is denied.

This request is irrelevant to any issues in the Michigan litigation.

### PROTECTIVE ORDER

All parties involved in this action are in agreement that a protective order for certain confidential information and trade secrets is appropriate. However, the parties disagree as to the form the protective order should take. (*See,* Motion to Compel, Exh. "H", "I"). Basic/Flame and Envirotech have requested a protective order that would prevent the use of the subpoenaed documents in the UK action. (*See Id.*Exhibit "H"). In contrast, B & V and Elm/NIPSCO initially maintained that they would agree to a protective order that would protect the confidential information and trade secrets of Basic/Flame and Envirotech while allowing the use of the subpoenaed documents in the UK action. *See Id.*Exh. "I"). However, B & V has since allegedly agreed to limit the use of the discovered documents to the Michigan action. (B & V's Response to Suggestions at 13). Therefore, only Elm/NIPSCO continues to insist that the subpoenaed documents should be made available to the UK litigants. (Elm/NIPSCO's Response to Suggestions at 5).

Generally, the parties to an action may use information obtained through discovery as they wish. *See Wauchop v. Domino's Pizza, Inc., 138 F.R.D. 539, 545 (N.D.Ind.1991)*; *Public Citizen v. Liggett Group, Inc., 858 F.2d 775, 790 (1st Cir.1988),* cert. denied,488 U.S. 1030, 109 S.Ct. 838, 102 L.Ed.2d 970 (1989); *American Telephone & Telegraph Co. v. Grady, 594 F.2d 594, 596 (7th Cir.1978),* cert. denied,440 U.S. 971, 99 S.Ct. 1533, 59 L.Ed.2d 787 (1979) ("As a general proposition, pretrial discovery must take place in the public unless compelling reasons exist for denying the public access to the proceedings"). However, Rule 26(c) allows a district court to issue protective orders for discovery materials when good cause is shown. *Public Citizen v. Liggett Group, Inc., 858 F.2d at 789*. Rule 26(c) of the Federal Rules of Civil Procedure provides that: "Upon motion by a party or by the person from whom discovery is sought, and for good cause shown, the court ... may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense including one or more of the following: (1) that the discovery not be had; ... (7) that a trade secret or other confidential research development, or commercial information not be disclosed or be disclosed only in a designated way." The party seeking the protective order has the burden of demonstrating that good cause exists for the granting of that order. *See United States v. Garrett, 571 F.2d 1323, 1326 n. 3 (5th Cir.1978); Culinary Foods, Inc. v. Raychem Corp., 151 F.R.D. 297, 300 (N.D.Ill.1993).* Courts have interpreted "good cause" in a variety of ways. *See Culinary* at 300 n. 1. Broad allegations of harm without specific examples or clear reasoning do not constitute good cause under the Rule 26(c) test. *Cippollone v. Liggett,* 785 F.2d at 1121. The court's understanding of the background facts along with the court's common sense should be a guide as to whether good cause has been established. *Zenith Radio Corp. v. Matsushita Electric Industrial Co., Ltd., 529 F.Supp. 866, 891 (E.D.Pa.1981).* A non-party may show good cause

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  Page 13
Not Reported in F.Supp., 1996 WL 596456 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

more easily than a party. *Wauchop,* 138 F.R.D. at 546; citing *Farnsworth v. Procter & Gamble Co.,* 758 F.2d 1545, 1547 (11th Cir.1985). One way of showing good cause is by demonstrating that a discovery request seeks trade secrets. *See, e.g., Ball Memorial Hospital, Inc. v. Mutual Hospital Ins., Inc.,* 784 F.2d 1325, 1346 (7th Cir.1986).

**\*17** B & V and Elm/NIPSCO do not dispute that Basic/Flame and Envirotech have shown good cause for a protective order with a non dissemination provision covering documents which contain trade secrets or confidential research, development or commercial information under Rule 45(c)(3)(B)(i). The documents requested by the subpoenas are largely related to the Basic incinerators which use the Basic Pulse Hearth technology patented by John Basic, Sr. Basic/Flame supplied their patented technology to Basic UK under a confidentiality agreement. (Defendants' Suggestions For B & V Subpoena, Exh. "A"). In addition, Basic/Flame claims that the incineration of waste to produce energy without polluting the atmosphere is a growing industry in which B & V and TBV are competitors of Flame and Elm and NIPSCO are potential competitors of Flame's customers. (*Id.* at 3). These claims support the need for a protective order regarding confidential documents and trade secrets to protect Basic/Flame and Envirotech's competitive position. Thus, the requested documents which fall under the definition of confidential as set forth in the Protective Order below shall be protected from disclosure.

Basic/Flame and Envirotech must also demonstrate good cause for a protective order with a non dissemination provision. *Wauchop,* 138 F.R.D. at 545. In this case, Basic/Flame and Envirotech are legitimately concerned that B & V and Elm/NIPSCO intend to share the discovered documents with their affiliates in the UK. However, using the discovered information from one lawsuit in connection with another litigation comes squarely within the purposes of the Federal Rules of Civil Procedure. *United States v. Hooker Chemicals & Plastics Corp.,* 90 F.R.D. 421, 426 (W.D.N.Y.1981).

In their motion to compel, B & V and Elm/NIPSCO point to *Wauchop v. Domino's Pizza, Inc.,* 138 F.R.D. 539 (N.D.Ind.1991) to support their contention that Basic/Flame and Envirotech have not shown good cause for the inclusion of a non dissemination provision. In *Wauchop,* Domino's was concerned that others would use the discovery information in present or future threatened litigation against Domino's, and the plaintiffs admitted their intent to share their discovery information with others. Even so, the court held that "[t]he general risk of ... collaborative sharing of information does not constitute good cause for a protective order under Rule 26(c)." *Id.* at 545. In *Johnson Foils, Inc. v. Huyck Corp.,* 61 F.R.D. 405 (N.D.N.Y.1973), the defendant sought a protective order with a non dissemination provision which would have prevented the plaintiff from sharing the discovered information with its related entities in a foreign litigation. In that case, the court found that if there is no evidence of bad faith by the discovering party, federal courts allow the use of the discovered information in other forums. *Id.* at 410.

In this case, there is no evidence of bad faith by the discovering party. Therefore, the discovered materials from this litigation which are not designated "confidential" may be used by the related entities in other forums. However, as Envirotech asserts, "[m]ovants have submitted no authority allowing the use of documents covered by a protective order issued to cover confidential documents in another proceeding." (Defendants' Suggestions for Elm/NIPSCO Subpoena at 8). Thus, those documents which are designated "confidential" shall be used only in preparation for trial, at trial and on appeal of the pending action.

**\*18** Basic/Flame and Envirotech have a legitimate concern that B & V and Elm/NIPSCO be responsible for misuse of discovered information, particularly considering that Flame is a small company in comparison with NIPSCO and B & V. (Defendants' Suggestions for B & V Subpoena at 14). Therefore, this court will require that the Protective Order contain the clause set forth in Paragraph 6 below holding the party employing the person or expert liable for any non-compliance with the protective order.

Elm/NIPSCO, in contrast to Basic/Flame and Envirotech, claims that the parties to the English action would be able to get discovery from a non-party such as Basic/Flame or Envirotech. (Elm/NIPSCO's Response to Suggestions at 5). Because Elm/NIPSCO continues to claim that

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:08-cv-00782   Document 19-2   Filed 04/04/2008   Page 14 of 15

Not Reported in F.Supp.  Page 14
Not Reported in F.Supp., 1996 WL 596456 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

English courts allow pre-trial discovery from third parties and because B & V and Elm/NIPSCO have provided no evidence that the parties to the UK action would abide by a protective order issued by this court, this court requires that the protective order containing a non dissemination provision set forth below be in effect.

*Request for Attorney's Fees*

Under F.R.C.P. 37(a)(4)(C), the court may "apportion the reasonable expenses incurred in relation to the motion among the parties and persons in a just manner." The court finds that Basic/Flame and Envirotech were substantially justified in making their objections to the subpoena requests. Therefore, the court finds the award of attorneys' fees to B & V not justified under the circumstances.

*PROTECTIVE ORDER*

In order to protect and maintain the confidentiality of certain documents subpoenaed by the parties to this litigation from deponents Flame Engineering, Inc. f/k/a Basic Environmental Engineering Inc. ("Basic/Flame") and Basic Envirotech, Inc. ("Envirotech") and to avoid unnecessary disclosures of those documents and the information contained therein, the Court hereby enters the following protective order:

1. In responding to subpoenas served upon them in the action entitled: *ELM ENERGY AND RECYCLING (U.K.) LIMITED and NIPSCO DEVELOPMENT COMPANY, INC. v. BLACK & VEATCH,* Case NO. 95-CV-73128-DT, pending in the United States District Court for the Eastern District of Michigan (the "Pending Action"), Basic/Flame and Envirotech shall be permitted to designate documents as containing confidential information and subject to this Protective Order by marking them "Confidential." All copies, duplicates, or information extracted from such documents shall be subject to and handled under the terms of this Protective Order to the same extent and in the same manner as the original documents.

2. As used in the Protective Order the term "confidential information" may be used if:
a. the producing party is under a statutory, regulatory, contractual or other legal obligation to maintain such information as proprietary, or
b. the information is a trade secret, is competitively sensitive, or would harm the producing party's business if disclosed; and
**\*19** c. the producing party has consistently in the ordinary course of its business treated the information as proprietary as to non-employees and non-agents of the producing party.

3. The documents subject to this Protective Order may be disclosed only to the parties to this case, and their officers, directors, and employees who have responsibility for the preparation for trial, trial, or appeal of the Pending Action; counsel of record in the Pending Action; counsel of record's clerical staff; witnesses at the time of their deposition or at trial; and expert witnesses for the parties in this action.

4. The documents subject to this Protective Order shall be used only in connection with preparation for trial, trial, or appeal of the Pending Action.

5. In the event that a document subject to this Protective Order, or information obtained from it, is used during the course of a deposition, that part of the deposition transcript that discusses or otherwise references the protected document or information shall be subject to the terms of this Protective Order. The party conducting the examination shall inform the court reporter of this order and instruct the reporter to identify the pages of the transcript as being subject to this order. The cover page of any deposition or transcript containing proprietary information must bear the following legend: "This document contains information designated as confidential." All copies, duplicates, extracts, etc., of such testimony shall be subject to the terms of this Protective Order to the same extent and in the same manner as the original transcripts.

6. Prior to disclosure to an officer, director, and employee of a party or an expert witness, such persons must agree to be bound by the terms of this Protective Order by executing the "Confidentiality Agreement" annexed hereto (See Exh. "H" or "I"??). The executed Confidentiality Agreement shall be maintained by counsel for the party employing the person or expert and a copy of it shall be provided to counsel for Basic/Flame and Envirotech. The party employing the person or expert shall be jointly and severally liable for any damages caused by such

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:08-cv-00782   Document 19-2   Filed 04/04/2008   Page 15 of 15

Not Reported in F.Supp. Page 15
Not Reported in F.Supp., 1996 WL 596456 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

person's non-compliance with this order.

7. All persons in possession of documents, information and testimony subject to this Protective Order shall take all necessary and appropriate measures to maintain the confidentiality of those materials, shall share such information only with persons authorized to receive it pursuant to this Protective Order, and shall retain it in a secure manner.

8. Within 60 days after any order disposing of the Pending Action becomes final and no longer appealable, the persons who have obtained possession of the documents subject to this Protective Order shall at the option of the producing parties return or destroy all copies of the designated documents and destroy all transcripts and all extracts, summaries, or descriptions of the information taken from the documents or transcripts covered by this Protective Order.

***20** 9. Any materials subject to this Protective Order filed with the Court in the Pending Action shall contain a legend indicating that they contain information subject to a Protective Order dated xxxx, 1996 issued by the United States District Court for the Northern District of Illinois. Prior to any such filing, counsel for the parties will confer with the Court in the Pending Action on an appropriate method to protect from disclosure inconsistent with this order the confidential information when contained in court papers or utilized at trial. Counsel for the parties shall advise counsel for Basic/Flame and Envirotech of the procedures adopted.

10. The prohibition of disclosure of the documents, information and testimony subject to this Protective Order shall continue notwithstanding the termination of the Pending Action.

11. The provisions of this Protective Order shall be without prejudice to any party challenging whether any particular document or testimony should be designated confidential. The party challenging the confidential designation shall give notice to counsel for Basic/Flame and Envirotech and other counsel in this action. If the parties cannot resolve the dispute after good faith negotiations, the challenging party may seek an order from this Court that the particular document or testimony should not be subject to this Protective Order. Until such an order is obtained, the disputed document or testimony will be treated as confidential under the terms of this order.

12. This Protective Order may be modified by the court *sua sponte* or on motion of Elm, NIPSCO, B & V, Basic/Flame or Envirotech. Twenty-one days advance written notice shall be given to Elm, NIPSCO, B & V, Basic/Flame and Envirotech of any proposed modification of this protective order.

SO ORDERED.

N.D.Ill.,1996.
Elm Energy and Recycling (U.K.) Ltd. v. Basic
Not Reported in F.Supp., 1996 WL 596456 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.