# EXHIBIT E

**THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NORTH CAROLINA**
**WESTERN DIVISION**

**5-07-CV-00275-D**

SILICON KNIGHTS, INC., an Ontario
(Canada) Corporation,

          Plaintiff,

vs.

EPIC GAMES, INC. a North Carolina
company,

          Defendant.

**PLAINTIFF SILICON KNIGHTS, INC.'S REPLY**
**TO DEFENDANT EPIC GAMES' COUNTERCLAIM**

Plaintiff SILICON KNIGHTS, INC. ("Silicon Knights") hereby replies to the

Counterclaim of Defendant and Counter-Claimant EPIC GAMES. INC. ("Epic") as follows:

**FIRST DEFENSE**

The Counterclaim, and each and every claim alleged therein, fails to state facts sufficient

to constitute a cause of action upon which relief may be granted and therefore should be

dismissed.

**SECOND DEFENSE**

For its answer to the specific allegations of the Counterclaim, Silicon Knights states the

following:

**Nature of the Case**

With respect to Epic's prefatory remarks to its Counterclaim, entitled "Nature of the

Case," Silicon Knights admits that Epic showed software technology purported to be "Unreal

1

Engine 3" ("the Engine") to Silicon Knights in and around the Fall of 2004, and that based on Epic's exhibition of that purported Engine, along with Epic's many misrepresentations regarding not only what the Engine could accomplish but the support that Epic allegedly would lend to licensees of the Engine, Silicon Knights licensed the Engine. Silicon Knights further admits that it was allowed to evaluate *the PC version* of the Engine, but specifically denies any implication that it was ever able to "test" or otherwise evaluate the Engine on any platform other than the PC prior to executing the purported license contract that is at issue in this case.

In addition, Silicon Knights specifically denies that it ever has, or ever has intended to, misappropriate any technology provided to it by Epic. Moreover, Silicon Knights denies that it ever tried to "pay nothing for" any Epic technology as Epic has alleged in its "Nature of the Case" discussion. As Epic is well-aware, that allegation by Epic is completely false: Silicon Knights fully paid all fees due under the "License Agreement" that could conceivably be owed for Silicon Knight's forthcoming game, *Too Human*, and contrary to other falsehoods in Epic's counterclaim, Silicon Knights is informed and believes that <u>those fees for the Engine represented the full price charged by Epic at the time Silicon Knights signed up as a licensee</u>.

Very simply, and contrary to the wholly unsupported contentions in Epic's counterclaim, had the Engine and Epic performed as represented and warranted by Epic — in other words, if the Engine had provided the reasonable commercial value to Silicon Knights in developing *Too Human* that Silicon Knights reasonably believed and understood it was bargaining for when becoming a licensee — this litigation would never have come to pass. However, as explained in detail in Silicon Knight's Complaint, the Engine was not delivered or supported by Epic in the manner Epic represented it would be. Instead, Epic collected money from not only Silicon Knights but all of its other licensees, and used those fees to finance its own game, *Gears of War*.

2

It is <u>that</u> plan – Epic's own fraudulent scheme to ensure it always had a leg up on all developers it could deceive into signing up as licensees (and then failing to deliver an operable engine product in any reasonable time frame) – that gives rise to this litigation, and not some far-fetched notion that Silicon Knights somehow wanted to "steal" technology for which it has paid in full and that was, at best, ill-suited for making a game at all, save for perhaps a clone of Epic's own videogame, which *Too Human* is most definitely not.

With respect to the remainder of the allegations in Epic's opening statement, Silicon Knights is without knowledge or information sufficient to form a belief as to whether or not they are true, and on that basis denies each and every other allegation contained in that statement.

### The Parties

1.      As to Paragraph 1 of Epic's Complaint, Silicon Knights is informed and believes, and on that basis admits, that Epic is a Maryland corporation with its principal place of business in Cary, North Carolina.

2.      As to Paragraph 2 of Epic's Complaint, Silicon Knights admits that it is an Ontario corporation with a principal place of business in Ontario, Canada.

### Jurisdiction and Venue

3.      As to Paragraph 3 of Epic's Complaint, Silicon Knights admits that this Court has jurisdiction over Epic's counterclaims and that Epic's Counterclaim is properly venued in this Court; however, Silicon Knights denies that there exists any merit to any of Epic's counterclaims, and further denies each and every other allegation contained in Paragraph 3.

### General Factual Allegations

4.      As to Paragraph 4 of Epic's Counterclaim, Silicon Knights  is informed and believes that Epic was formed in or around 1991 and has served as a designer, developer, and

3

publisher of video games, and further admits that Epic is credited with developing the games that are listed in Paragraph 4 (i.e., *Unreal*, *Unreal Championship*, *Unreal Championship 2*, *Unreal Tournament*, *Unreal Tournament 2003*, *Unreal Tournament 2004*, and *Gears of War).* With regard to the remainder of the allegations in Paragraph 4, Silicon Knights lacks sufficient knowledge or information to form a belief as to the truth of those allegations, and on that basis denies each and every such allegation contained therein.

5.      As to Paragraph 5 of Epic's Counterclaim, Silicon Knights admits that Epic sells licenses to software that Epic markets, represents, and warrants is suitable for use in developing video games.  In addition, Silicon Knights admits that game engines generally are used in video game development and that such engines may incorporate various components, including without limitation  "computer code," a "rendering engine," and a "physics engine" as generally described in Paragraph 5.  With respect to the remaining allegations of Paragraph 5, to the extent that they could be understood and/or were intended by Epic, alone or in context, to suggest that Epic supplied Silicon Knights with a game engine that performed as Epic represented it would, Silicon Knights specifically denies each and every such allegation.  With regard to the remainder of the allegations in Paragraph 5, Silicon Knights lacks sufficient knowledge or information to form a belief as to the truth of those allegations, and on that basis denies each and every such allegation.

6.      As to Paragraph 6 of Epic's Counterclaim, Silicon Knights admits that game engines in general are intended to facilitate the process of making games and to enhance efficiency, and that game engines generally do not provide all creative content to the videogames that employ them.  With respect to the remaining allegations of Paragraph 6, to the extent that they could be understood and/or were intended by Epic, alone or in context, to suggest that Epic

supplied Silicon Knights with a game engine that performed as Epic represented it would, Silicon Knights specifically denies each and every such allegation. With regard to the remainder of the allegations in Paragraph 6, Silicon Knights lacks sufficient knowledge or information to form a belief as to the truth of those allegations, and on that basis denies each and every such allegation.

7.     As to Paragraph 7 of Epic's Counterclaim, Silicon Knights denies that it knew or should have known of Epic's apparent practice in developing game engines alongside its own games prior to paying Epic for a license for the Engine. In addition, Silicon Knights denies the allegations of Paragraph 7 to the extent they could be understood and/or were intended by Epic, alone or in context, to suggest that Silicon Knights knew (and/or somehow should have known) that Epic's allegedly "synergistic model" of developing its own games and its licensed technology in tandem would result in Epic lacking the intent and/or resources necessary to support its licensing program, as described in more detail in Silicon Knights Complaint in this action. In fact, Silicon Knights denies that Epic ever employed a "synergistic model" in terms of providing newly-created Engine source code (such as code for Gears of War) to its licensees in real time, which is how a "synergistic" licensor would function. The reality is that prior to learning the truth about Epic's fraudulent scheme, Silicon Knights always understood and believed that with Unreal Engine 3, Epic was offering a tool that was not "game-specific," in the words of Epic's Vice-President Mark Rein, and thus not wedded to particular style or format of play. Indeed, contrary to the allegations of Paragraph 7, at the time Epic purported to sell Silicon Knights a license to the Engine, Silicon Knights understood and believed that the Unreal Engine 3 was supposedly **not** yoked to the development of Epic's own game, based upon Epic's own

misrepresentations, which Epic encouraged Silicon Knights to rely upon in making its decision to sign up as a licensee of the Engine.

In addition, Silicon Knights specifically denies the allegations of Paragraph 7 to the extent that they could be understood and/or were intended by Epic, alone or in context, to suggest that Epic told Silicon Knights (and/or that Silicon Knights somehow otherwise should have known) that the Engine would only be developed and/or supported in connection with Epic's development of its own video games. Mr. Rein has made a number of comments since Silicon Knight filed its Complaint suggesting that Epic's method of creating its game engine generally somehow was common knowledge. Silicon Knights specifically denies those comments and all related express or implied allegations in Epic's Counterclaim, particularly to the extent that they misstate the instant dispute as being simply over Epic's development of Unreal Engine 3, as opposed to being about the development of the Unreal Engine 3 in conjunction with Epic's obligations to its licensees, all to the detriment of those licensees.

At no time prior to Silicon Knight's execution of a purported license for the Engine did Epic ever inform Silicon Knights that it would only receive the game engine used to power Epic's *Gears of War* only after Epic had completed that game. In fact, just the opposite is true: Epic expressly promised Silicon Knights that any *Gears of War* updates to the Engine would be provided to Silicon Knights as soon as Epic had any such updates completed. Had Silicon Knights in fact known that Epic would not only fail to develop the Engine separate from *Gears of War* but would also only be providing Silicon Knights with the *Gears of War* engine after that game was completed (a point directly contradicted by the express language of the License Agreement itself), and that Epic would not provide support to its licensees and instead would dedicate all of its resources to the development of *Gears of War*, Silicon Knights would never

have executed the purported license to the Engine in the first place. In that regard, to the extent that the allegations of Paragraph 7 could be understood and/or were intended by Epic, alone or in context, to suggest that Epic in fact provided its licensees with updates of and support for the *Gears of War* engine concurrent with Epic's development of that game engine, Silicon Knights specifically denies each and every such allegation. With regard to the remainder of the allegations in Paragraph 7, Silicon Knights lacks sufficient knowledge or information to form a belief as to the truth of those allegations, and on that basis denies each and every such allegation.

8.      As to Paragraph 8 of Epic's Counterclaim, Silicon Knights admits that Unreal was released in or about 1998, and further admits that Epic created Unreal Engine 2 and Unreal Engine 3 for purported licensing to third parties at some point after that. To the extent that the allegations of Paragraph 8 could be understood and/or were intended by Epic, alone or in context, to suggest that Epic told Silicon Knights (and/or that Silicon Knights somehow otherwise should have known) that the Engine would only be developed and/or supported in connection with Epic's development of its own video games, Silicon Knights specifically denies each and every such allegation. With regard to the remainder of the allegations in Paragraph 8, Silicon Knights lacks sufficient knowledge or information to form a belief as to the truth of those allegations, and on that basis denies each and every such allegation.

9.      As to Paragraph 9 of Epic's Counterclaim, to the extent that it contains any allegations that could be understood and/or were intended by Epic, alone or in context, to suggest that any game using the Engine has not been subjected to one or more delays in its release as a result of problems associated with the Engine and Epic's support thereof. Moreover, Silicon Knights is informed and believes and on that basis alleges that the actual and/or "anticipated" release dates of the various "Unreal Engine 3" games listed by Epic in Paragraph 9

of its Counterclaim were not the originally-planned release dates for those games, that some or all of the delays in those release dates were a direct and proximate result of the problems with the Engine that were encountered by the developers of those games, and that at least some of the games listed in Paragraph 9 actually rely heavily on source code from Epic's previous Engine versions (including, but not limited to, Unreal Engine 2) that had been heavily modified by those games' developers as a result of previous Epic delays and problems with those previous versions of the Engine. In other words, Silicon Knights is informed and believes, and on that basis alleges, that to the extent any of the developers of the "Unreal Engine 3" games listed in Paragraph 9 have managed to create workable engines for their games, it is not because Epic delivered a properly operable version of the Engine, but rather because those other developers, through their own sweat and toil, eventually managed to overcome the delays and deficiencies in Epic's products and service, just like Silicon Knights ultimately was able to do. With regard to the remainder of the allegations in Paragraph 9, Silicon Knights lacks sufficient knowledge or information to form a belief as to the truth of those allegations, and on that basis denies each and every such allegation.

10. As to Paragraph 10 of Epic's Counterclaim, to the extent that it contains any allegations that could be understood and/or were intended by Epic, alone or in context, to suggest that Epic supplied Silicon Knights with a game engine that performed as Epic represented and warranted it would, Silicon Knights specifically denies each and every such allegation. With regard to the remainder of the allegations in Paragraph 10, Silicon Knights lacks sufficient knowledge or information to form a belief as to the truth of those allegations, and on that basis denies each and every such allegation.

11.     As to Paragraph 11 of Epic's Counterclaim, to the extent that it contains any allegations that could be understood and/or were intended by Epic, alone or in context, to suggest that Epic supplied Silicon Knights with a game engine that performed as Epic represented and warranted it would, Silicon Knights specifically denies each and every such allegation, and further specifically denies that any of the various awards listed for the partially-completed (at the time) games listed have any bearing on this matter and/or otherwise indicate that those games did not suffer one or more delays from their originally-planned release dates, since Silicon Knights is informed and believes, and on that basis alleges, that those games were delayed, and that some or all of the delays in those release dates were a direct and proximate result of the problems with the Engine that were encountered by the developers of those games. With regard to the remainder of the allegations in Paragraph 11, Silicon Knights lacks sufficient knowledge or information to form a belief as to the truth of those allegations, and on that basis denies each and every such allegation.

12.     As to Paragraph 12 of Epic's Counterclaim, to the extent that it contains any allegations that could be understood and/or were intended by Epic, alone or in context, to suggest that Silicon Knights has infringed any of Epic's purported copyrights, Silicon Knights specifically denies each and every such allegation.  With regard to the remainder of the allegations in Paragraph 12, Silicon Knights lacks sufficient knowledge or information to form a belief as to the truth of those allegations, and on that basis denies each and every such allegation.

13.     As to Paragraph 13 of Epic's Counterclaim, Silicon Knights admits the allegations contained therein, except to the extent that any such allegations that could be understood and/or were intended by Epic, alone or in context, to suggest anything other than the

fact that Silicon Knights has over 15 years of experience designing and developing video games playable on multiple platforms.

14.     As to Paragraph 14 of Epic's Counterclaim, Silicon Knights admits that in 2004 it contacted Epic regarding the potential suitability of using the Engine for its game, *Too Human*, and that Silicon Knights later was given access to the "Unreal Developers' Network."  Silicon Knights further admits that it executed a non-disclosure agreement on or about August 6, 2004 in order to facilitate a candid exchange with Epic about the capabilities of the Engine, Epic's continued development of the Engine, and Epic's ability and willingness to support licensees of the Engine, and as described in detail in Silicon Knights Complaint, Epic made numerous misrepresentations to Silicon Knights regarding each of those topics, among others.  Silicon Knights specifically denies that Epic ever provided it with a demonstration of or the ability to evaluate the Engine "in Silicon Knights' actual development environment."  On the contrary, Silicon Knights was provided an evaluation copy of the Engine that only ran on the PC, even though Epic knew at the time (and certainly knew when it filed its Counterclaim with this Court) that Silicon Knights intended to use the Engine to develop the game on the next-generation of the Xbox, the Xbox 360, making the aforementioned "actual development environment" statement completely false.  Moreover, Epic expressly represented and warranted to Silicon Knights that the Engine would be able to be utilized in a commercially reasonable manner on the Xbox360, and Epic failed to supply Silicon Knights with a game engine that performed as Epic represented it would (a failure underscored by Epic's own statements and conduct, particularly Mark Rein's numerous admissions that the people tasked with developing *Gears of War* were the same people responsible for support licensees of the Engine.  ).  With regard to the remainder of the allegations in Paragraph 14, Silicon Knights lacks sufficient knowledge or information to

form a belief as to the truth of those allegations, and on that basis denies each and every such allegation.

15.     As to Paragraph 15 of Epic's Counterclaim, Silicon Knights admits that it accessed the Unreal Developers' Network.  However, Silicon Knights specifically denies that it knew (or somehow should have known) that the Engine would only be developed and/or supported in connection with Epic's development of its own video game, *Gears of War*.  As indicated above, had Silicon Knights in fact known that Epic would only be providing it with the *Gears of War* engine only after that game was completed (a point directly contradicted by the express language of the License Agreement itself), and that Epic would not provide support to its licensees and instead would dedicate all of its resources to the development of *Gears of War*, Silicon Knights would never have executed the purported license to the Engine in the first place. Certainly Silicon Knights specifically denies the allegations of Paragraph 15 to the extent they could be understood and/or were intended by Epic, alone or in context, to suggest that Epic actually did supply Silicon Knights with the *Gears of War* code concurrently with Epic's development of that code.  With regard to the remainder of the allegations in Paragraph 15, Silicon Knights lacks sufficient knowledge or information to form a belief as to the truth of those allegations, and on that basis denies each and every such allegation.

16.     As to Paragraph 16 of Epic's Counterclaim, Silicon Knights admits that it executed a document entitled "Unreal Engine 3 License Agreement" on or about May 10, 2005 ("License Agreement"), after exchanging various drafts of that document with Epic.  Silicon Knights, based on its current information and belief as well as direct representations made to it by Epic personnel, specifically denies that under that License Agreement it received any discount on the price it paid for the license to use the Engine in the development of its game *Too*

*Human*.  Instead, Silicon Knights is and was informed and believes – again based on direct representations from Epic personnel, including, but not limited to, Mark Rein, as well as based on the express language of the License Agreement itself – that if any discounts were to be received by Silicon Knights, such discounts would be on payments for use the Engine on development of subsequent games, i.e., games developed after *Too Human*.  In addition, Silicon Knights denies the allegations of Paragraph 16 to the extent that they could be understood and/or were intended by Epic, alone or in context, to suggest that Silicon Knights entered into a valid and enforceable contract with Epic when in fact Silicon Knights' execution of the License Agreement was obtained by Epic's fraud and other misconduct, as described more fully in Silicon Knights Complaint.  With regard to the remainder of the allegations in Paragraph 16, Silicon Knights lacks sufficient knowledge or information to form a belief as to the truth of those allegations, and on that basis denies each and every such allegation.

17.     As to Paragraph 17 of Epic's Counterclaim, Silicon Knights admits that prior to signing the purported License Agreement, it was informed of, and relied upon, Epic's express representations that the Engine would have certain specific capabilities and, in particular, that the Engine would be operable on the Xbox 360 and the Playstation 3 within six months of the release of the respective final development kits for those platforms.  Silicon Knights specifically denies the allegations of Paragraph 17 to the extent that they could be understood and/or were intended by Epic, alone or in context, to suggest that Silicon Knights knew (or somehow should have known) that Epic would not provide Silicon Knights with a game engine that performed as Epic represented it would.  With regard to the remainder of the allegations in Paragraph 17, Silicon Knights lacks sufficient knowledge or information to form a belief as to the truth of those allegations, and on that basis denies each and every such allegation.

18. As to Paragraph 18 of Epic's Counterclaim, Silicon Knights admits that Section 5(b) of the document entitled "Unreal Engine 3 License Agreement" states in relevant part with respect to Epic's Counterclaim as follows:

> Warranty Limitations. Except as expressly set forth therein, Epic's warranties in Section 5(a) do not include any warranty (i) that the functions performed by the Unreal Engine or Third Party Software will meet Licensee's requirements, nor (ii) that the operation of the Unreal Engine or Third Party Software will be bug free or error free in all circumstances, nor (iii) that any defects in the Unreal Engine or the Third Party Software can or will be corrected.

Silicon Knights also admits that Section 5(a) of that same document states, in relevant part with respect to Epic's Counterclaim, as follows:

> Epic's Warranties. Epic warrants that . . . (iv) it can demonstrate that the Licensed Technology (A) operates on the PC platform, (B) will operate on the Xbox 2 platform within six (6) months following the release of a final development kit by Microsoft for the Xbox 2 platform; and (C) will operate on the Playstation 3 platform within six (6) months following the release of a final development kit by Sony for the Playstation 3 platform.

With regard to the remainder of the allegations in Paragraph 18, Silicon Knights admits that it exchanged various drafts of the License Agreement with Epic, but otherwise denies each and every such allegation.

19. As to Paragraph 19 of Epic's Counterclaim, Silicon Knights admits that the purported License Agreement contains the language cited by Epic and that that document was executed by Silicon Knight's President, Denis Dyack. Silicon Knights specifically denies that the License Agreement constitutes a valid and enforceable agreement between the parties and further denies the allegations of Paragraph 19 to the extent that they could be understood and/or were intended by Epic, alone or in context, to suggest that Silicon Knights was not entitled to rely on Epic's representations regarding the Engine at the time it signed that document, that Epic did not induce and expect such reliance, and/or that those representations cannot know be used

by Silicon Knights to explain, among other things, ambiguities in that document.  With regard to the remainder of the allegations in Paragraph 19, Silicon Knights admits that it exchanged various drafts of the License Agreement with Epic, but otherwise denies each and every such allegation.

20.     As to Paragraph 20 of Epic's Counterclaim, Silicon Knights admits that License Agreement states that Epic owns the intellectual property rights defined by Section 1(i) therein, however, Silicon Knights specifically denies that the License Agreement constitutes a valid and enforceable agreement between the parties.  Moreover, Silicon Knights, based on its current information and belief, specifically denies that it had "full access" to Epic's Licensed Technology, including the Engine, in the manner contemplated by either the License Agreement itself and/or as represented and warranted by Epic.  With regard to the remainder of the allegations in Paragraph 20, Silicon Knights denies each and every such allegation.

21.     As to Paragraph 21 of Epic's Counterclaim, Silicon Knights admits that in and around May of 2006 it was forced to begin developing its own game engine in order to complete *Too Human* in a reasonable (albeit delayed) timeframe, and/or to otherwise mitigate the substantial damage caused by the Engine's failure to perform as warranted and/or by Epic's inability and/or unwillingness to support the Engine and its licensees like Silicon Knights. Silicon Knights further admits that it referred to its game engine as "the Silicon Knights Engine" in its Complaint for the purpose of lending clarity to its pleading, since the Silicon Knights Engine is distinguishable in many ways from the Unreal Engine 3 that Epic represented and warranted that it would provide to Silicon Knights, as well as from the purported "Engine" that Silicon Knights actually received.

Silicon Knights specifically denies that Paragraph 21, 57, and 63 of its Complaint somehow "admit" that Silicon Knights has developed "an engine to compete with the Unreal Engine 3," as Epic contends. On the contrary, given Silicon Knights' current focus on *Too Human* and developing its other various games based on the independently-created technology of the Silicon Knights Engine, Silicon Knights does not believe it is in a position to undertake the considerable challenge of licensing its technology to other developers and providing adequate support to those licensees. Therefore, Silicon Knights has no present intention of developing a middleware business as Epic contends. Indeed, unlike Epic, Silicon Knights would not embark on a licensing program without first putting into place all of the necessary independent resources to support such a program, including sufficient technical staff and other aspects of an appropriate licensing structure. Only by investing in those resources can a developer/licensor guard against having to choose between developing its own game and supporting its licensees. With regard to the remainder of the allegations in Paragraph 21, Silicon Knights denies each and every such allegation.

22.     As to Paragraph 22 of Epic's Counterclaim, Silicon Knights admits that it has a fully paid license to use the Engine for the development of *Too Human*, ill-gotten though that fee is. Silicon Knights also admits that paragraph 59 of its Complaint states as follows:

> Progress on the Silicon Knights Engine continues to date and, at this time, the Silicon Knights Engine is completely independent of Epic's Engine and certainly derives no benefit from the unworkable source code provided by Epic. In fact, at this juncture the Silicon Knights Engine should, at a minimum, be described under the Agreement as an "Enhancement" of Epic's Engine, which, as defined by the Agreement, is technology developed by Silicon Knights that improves upon the Engine and is therefore the property of Silicon Knights. Moreover, as development of the Silicon Knights Engine continues, the amount of code from Epic's Engine employed by Silicon Knights continues to decrease. After the release of Silicon Knights' ***Too Human***, all Epic code will be removed from the Silicon Knights Engine.

Silicon Knights further admits that, because Epic wrongfully induced Silicon Knights to use the Engine for the initial development of *Too Human* on the Xbox360, Silicon Knights has been forced to adapt the code that was generated during early development in order to mitigate its own damages and salvage what it could from the essentially fruitless effort of working with the Engine.

Indeed, as a result of the residue left from Silicon Knights' initial work with the Engine (especially certain art content created in the beginning when Silicon Knights still believed Epic would follow through on its representations and warranties regarding the Engine and support for its licensees), Silicon Knights was forced to integrate certain code produced by the Unreal Editor into the Silicon Knights Engine. In order to accomplish that task, however, Silicon Knights has gone so far as to write its own software to translate what is produced by the Unreal Editor for use in the substantially different Silicon Knights Engine.

After *Too Human* is finished, Silicon Knights will be able to cast-off any remnants of the Engine (including the Unreal Editor, which Silicon Knights specifically denies has any commercial value since Silicon Knights is informed and believes, and on that basis alleges, that Epic has been giving that Unreal Editor away for free to purchasers of its games for nearly a decade), and proceed with its own proprietary technology. Silicon Knights denies the allegations of Paragraph 22 to the extent that they could be understood and/or were intended by Epic, alone or in context, to suggest that Silicon Knights has at any time in the past infringed, or ever in the future intends to infringe, upon and/or made any unlawful use of Epic's Licensed Technology, including

but not limited to any code from the Engine.  With regard to the remainder of the

allegations in Paragraph 22, Silicon Knights denies each and every such allegation.

     23.    As to Paragraph 23 of Epic's Counterclaim, Silicon Knights admits that paragraph

45 of its Complaint states as follows:

> Silicon Knights and Nintendo mutually determined to take different creative
> tracks in 2004, and ended their exclusive partnership.  Silicon Knights
> continued its focus on next-generation platforms, however, by entering a new
> first-party partnership with Microsoft to develop games for Microsoft's new
> Xbox 360, and a short time later embarking on development of a second
> game with another major publisher, Sega, on the Playstation 3.

Silicon Knights expressly denies that it has not notified Epic of its development of a

game with Sega.  On the contrary, Epic's Vice President Mark Rein was expressly informed of

that development, and in response explicitly told Silicon Knights that until *Gears of War* was

completed, Epic would be unable to address either Silicon Knights' problems with the Engine or

Silicon Knights' development of its second game (which naturally included a host of issues

based on Epic's severe non-performance under the License Agreement to date).  Moreover,

following the completion of Gears of War, Silicon Knights and Epic had extensive discussions

regarding both:  (1) the fact that Silicon Knights believes it owes nothing with respect to its

development of its game with Sega (due to, among other things, it being based on the Silicon

Knights Engine rather than the Unreal Engine 3, as well as the severe damage Epic had already

caused Silicon Knights as outlined in its Complaint in this action); and (2) the fact that Silicon

Knights believes it was owed all of its money back from the Too Human license as well as

substantial additional damages that have resulted from Epic's fraud and misconduct.  In addition,

Silicon Knights denies the allegations of Paragraph 23 to the extent that they could be

understood and/or were intended by Epic, alone or in context, to suggest that any valid and

enforceable agreement exists between the parties.  With regard to the remainder of the allegations in Paragraph 23, Silicon Knights denies each and every such allegation.

24.    As to Paragraph 24 of Epic's Counterclaim, Silicon Knights specifically denies that it has infringed upon and/or made any unauthorized use of any of Epic's Licensed Technology and/or violated any of Epic's purported intellectual property rights, including but not limited to any allegedly copyrighted works, trade secrets, know how and/or other materials or information, including any "Confidential Information" as defined in the License Agreement. Moreover, Silicon Knights denies the allegations of Paragraph 24 to the extent that they could be understood and/or were intended by Epic, alone or in context, to suggest that there exists a valid and enforceable agreement between the parties.  With regard to the remainder of the allegations in Paragraph 24, Silicon Knights denies each and every such allegation.

25.    As to Paragraph 25 of Epic's Counterclaim, Silicon Knights admits that it has paid what it understood to be the full license fee for the Engine for use with *Too Human*, and that Silicon Knights has thus there is nothing untoward or illegal about Silicon Knights accessing the Unreal Developers' Network at various times.  Silicon Knights specifically denies that it has or intends to use any material from the Unreal Developers' Network in an unlawful manner. Moreover, Silicon Knights denies the allegations of Paragraph 25 to the extent that they could be understood and/or were intended by Epic, alone or in context, to suggest that there exists a valid and enforceable agreement between the parties.

Simply put, Epic's allegations that Silicon Knights has sued Epic in order to "steal" the Engine for use in later games is not rational, especially to any understanding of the cost of litigation versus the cost of licensing the Engine for all of the remaining games Silicon Knights could realistically develop for this generation of hardware.  If the Engine actually worked as

Epic represented it would, Silicon Knights would have willingly paid the fee to license it for use

with additional games of this generation.  Instead, Silicon Knights was forced to abandon the

Engine and mitigate its substantial damages as best it could, yet Epic still seeks to extract fees

for a product that never worked, and that Silicon Knights has no intention of ever using again in

any fashion.  If there is any attempted theft in this case, it was by Epic, in stealing millions of

dollars in license fees from Silicon Knights and other licensees and converting those fees to

Epic's own use in its illicit development of *Gears of War*.  With regard to the remainder of the

allegations in Paragraph 25, Silicon Knights denies each and every such allegation.

<u>**Reply to First Counterclaim for Relief**</u>

**(Copyright Infringement)**

26.     As to Paragraph 26 of Epic's Counterclaim, Silicon Knights re-alleges and

incorporates by reference its responses to Paragraphs 1 through 25 of Epic's Counterclaim, and

its other responses above, as though set forth here in full.  With respect to the remaining

allegations of Paragraph 26, Silicon Knights lacks sufficient knowledge or information to form a

belief as to the truth of such allegations, and on that basis denies each and every such allegation.

27.     As to Paragraph 27 of Epic's Counterclaim, Silicon Knights specifically denies

that there exists a valid and enforceable agreement between it and Epic.  Silicon Knights lacks

sufficient knowledge or information to form a belief as to the truth of any additional material

allegations of Paragraph 27, and on that basis denies each and every such allegation.

28.     As to Paragraph 28 of Epic's Counterclaim, Silicon Knights specifically denies

each and every allegation contained therein.

29.     As to Paragraph 29 of Epic's Counterclaim, Silicon Knights specifically denies

each and every allegation contained therein.

30.&#9;As to Paragraph 30 of Epic's Counterclaim, Silicon Knights specifically denies each and every allegation contained therein.

31.&#9;As to Paragraph 31 of Epic's Counterclaim, Silicon Knights specifically denies each and every allegation contained therein.

### Reply to Second Counterclaim for Relief:

### (Breach of Contract)

32.&#9;As to Paragraph 32 of Epic's Counterclaim, Silicon Knights re-alleges and incorporates by reference its responses to Paragraphs 1 through 31 of Epic's Counterclaim, and its other responses above, as though set forth here in full.  With respect to the remaining allegations of Paragraph 32, Silicon Knights lacks sufficient knowledge or information to form a belief as to the truth of such allegations, and on that basis denies each and every such allegation.

33.&#9;As to Paragraph 33 and each of its subparts (a) – (d) of Epic's Counterclaim, Silicon Knights specifically denies each and every allegation contained therein.

34.&#9;As to Paragraph 34 of Epic's Counterclaim, Silicon Knights specifically denies each and every allegation contained therein.

### Reply to Third Counterclaim for Relief:

### (Misappropriation of Trade Secrets)

35.&#9;As to Paragraph 35 of Epic's Counterclaim, Silicon Knights re-alleges and incorporates by reference its responses to Paragraphs 1 through 34 of Epic's Counterclaim, and its other responses above, as though set forth here in full.  With respect to the remaining allegations of Paragraph 35, Silicon Knights lacks sufficient knowledge or information to form a belief as to the truth of such allegations, and on that basis denies each and every such allegation.

36.     As to Paragraph 36 of Epic's Counterclaim, Silicon Knights specifically denies that there existed a valid and enforceable agreement between it and Epic.  With respect to the remaining allegations of Paragraph 36, Silicon Knights lacks sufficient knowledge or information to form a belief as to the truth of any such allegations, and on that basis denies each and every such allegation.

37.     As to Paragraph 37 of Epic's Counterclaim, Silicon Knights lacks sufficient knowledge or information to form a belief as to the truth of the allegations of that paragraph, and on that basis denies each and every such allegation.

38.     As to Paragraph 38 of Epic's Counterclaim, Silicon Knights specifically denies that there existed a valid and enforceable agreement between it and Epic.  Silicon Knights lacks sufficient knowledge or information to form a belief as to the truth of any additional allegations of that paragraph, and on that basis denies each and every such allegation.

39.     As to Paragraph 39 of Epic's Counterclaim, Silicon Knights specifically denies that there existed a valid and enforceable agreement between it and Epic.  Silicon Knights lacks sufficient knowledge or information to form a belief as to the truth of any additional allegations of that paragraph, and on that basis denies each and every such allegation.

40.     As to Paragraph 40 of Epic's Counterclaim, Silicon Knights specifically denies each and every allegation contained therein.

41.     As to Paragraph 41 of Epic's Counterclaim, Silicon Knights specifically denies each and every allegation contained therein.

## Reply to Fourth Counterclaim for Relief:

### (Constructive Trust)

42.     As to Paragraph 42 of Epic's Counterclaim, Silicon Knights re-alleges and incorporates by reference its responses to Paragraphs 1 through 41 of Epic's Counterclaim, and its other responses above, as though set forth here in full.  With respect to the remaining allegations of Paragraph 42, Silicon Knights lacks sufficient knowledge or information to form a belief as to the truth of such allegations, and on that basis denies each and every such allegation.

43.     As to Paragraph 43 of Epic's Counterclaim, Silicon Knights specifically denies that there existed a valid and enforceable agreement between it and Epic as well as all other allegations of that paragraph.

44.     As to Paragraph 44 of Epic's Counterclaim, Silicon Knights specifically denies each and every allegation contained therein.

45.     As to Paragraph 45 of Epic's Counterclaim, Silicon Knights specifically denies each and every allegation contained therein.

### Reply to Epic's Allegation of "No Adequate Remedy At Law"

46.     As to Paragraph 46 of Epic's Counterclaim, Silicon Knights specifically denies each and every allegation contained therein including, but not limited to, any allegation that Epic is or ever could be entitled to any form of injunctive relief against any of Silicon Knights videogames.  Among other things, Epic's Counterclaim is premised on the allegation that there exists a contract between the parties, and thus Epic should be precluded from seeking any relief outside of that which is allowed for in that purported agreement, and Epic admits in its Counterclaim that monetary damages would be sufficient to address any purported "harm" done to Epic by virtue of the allegations therein.

47.     With regard to Epic's prayer for relief, Silicon Knights denies that Epic is entitled to any of the relief requested.

48.    Except as specifically admitted herein, allegations of the Counterclaim are denied.

## THIRD DEFENSE

### (Estoppel)

Any and/or all of the causes of action in the Counterclaim are barred by the doctrine of estoppel, due to Epic's own representations and conduct, which constitute a breach of the covenant of good-faith and fair dealing, breach of the contract, ratification of the actions of Silicon Knights, and/or acceptance of benefits conferred upon it by Silicon Knights, thereby estopping Epic from complaining of damages, if any.

## FOURTH DEFENSE

### (Unconscionability)

Any and/or all of the causes of action in the Counterclaim are barred by the doctrine of unconscionability.

## FIFTH DEFENSE

### (Waiver/Acquiescence)

Any and/or all of the causes of action in the Counterclaim are barred by the doctrines of waiver and or acquiescence. Epic has waived any rights to sue to enforce its purported rights under the contract by virtue of its conduct and representations.

## SIXTH DEFENSE

### (Unclean Hands)

Any and/or all of the causes of action in the Counterclaim is barred by the doctrine of unclean hands.

## SEVENTH DEFENSE

### (Justification)

Silicon Knights was justified by legitimate and lawful business reasons in doing any and/or all of the acts alleged in the Counterclaim.

## EIGHTH DEFENSE

### (Lack of Agreement)

Epic's counterclaims arising from or related to an alleged breach of contract are barred on the ground that the alleged contract or agreement was not the product of a meeting of the minds.

## NINTH DEFENSE

### (Lack of Consideration)

Epic's counterclaims arising from or related to an alleged breach of contract are barred on the ground that the alleged contract is void for want of any consideration.

## TENTH DEFENSE

### (Indefiniteness)

Epic's counterclaims arising from or related to an alleged breach of contract are barred on the ground that, if any contract existed between the parties, which Silicon Knights denies, the terms of the alleged contract are too indefinite to be enforced.

## ELEVENTH DEFENSE

### (Nonperformance)

Epic's counterclaims arising from or related to an alleged breach of contract are barred on the ground that, if any contract between existed between the parties, which Silicon Knights denies, Epic failed to fulfill his obligations under the contract.

## TWELFTH DEFENSE

### (Negligent or Fraudulent Inducement)

Epic's counterclaims arising from or related to an alleged breach of contract are barred on the ground that, if any contract between existed between the parties, which Silicon Knights denies, Epic negligently or fraudulently induced Silicon Knights into entering into the contract, and Silicon Knights would not have entered into the contract but for Epic's negligent or fraudulent inducement.

## THIRTEENTH DEFENSE

### (Mistake of Fact)

Epic's counterclaims arising from or related to an alleged breach of contract are barred on the ground that, if any contract between existed between the parties, which Silicon Knights denies, Silicon Knights entered into said contract under a bilateral or unilateral mistake as to the underlying facts.

## FOURTEENTH DEFENSE

### (Latent Ambiguity)

Epic's counterclaims arising from or related to an alleged breach of contract are barred on the ground that, if any contract between existed between the parties, which Silicon Knights denies, said contract contains a material latent ambiguity, not obvious to Silicon Knights at the time the contract was entered into.

## FIFTEENTH DEFENSE

### (Counterclaimant's Breach)

Epic's counterclaims arising from or related to an alleged breach of contract are barred by virtue of Epic's own breach of the purported contract.

## SIXTEENTH DEFENSE

### (Release)

Epic's counterclaims arising from or related to an alleged breach of contract are barred by virtue of Epic's release of Silicon Knights from certain obligations under the purported contract.

## SEVENTEENTH DEFENSE

### (Consent/Ratification)

Epic's counterclaims arising from or related to an alleged breach of contract are barred because Epic authorized, consented to, and/or ratified the acts of Silicon Knights as alleged in the Counterclaim, and therefore Epic may not complain thereof.

## EIGHTEENTH DEFENSE

### (Mitigation)

Epic has failed, and continues to fail, to act reasonably to mitigate the damages alleged in the Counterclaim.

## NINETEENTH DEFENSE

### (Balance of Hardships)

Epic's requested equitable relief is not warranted by the balance of the hardships.

## TWENTIETH DEFENSE

### (Lack of Copyright)

Epic's counterclaims arising from or related to Silicon Knight's alleged infringement of copyrights are barred because Epic has not obtained a valid and enforceable grant of any copyright barring any conduct of Silicon Knights.

## TWENTY-FIRST DEFENSE

### (Invalid Copyright)

Epic's counterclaims arising from or related to Silicon Knight's alleged infringement of copyrights are barred because any alleged instrument upon which Epic's claims are based is not valid and enforceable and Epic did not therefore receive any grant of rights in connection therewith.

## TWENTY-SECOND DEFENSE

### (Lack of Copyrightability)

Epic's counterclaims arising from or related to Silicon Knight's alleged infringement of copyrights are barred because the material Epic claims was infringed is not copyrightable because, among other things, it is not sufficiently creative or original.

## TWENTY-THIRD DEFENSE

### (Lack of Substantial Similarity)

Epic's counterclaims arising from or related to Silicon Knight's alleged infringement of copyrights are barred because the material of Silicon Knights that Epic claims is infringing is not substantially similar to Epic's own material.

## TWENTY-FOURTH DEFENSE

### (Unprotectable Ideas and Subject Matter)

Epic's counterclaims arising from or related to Silicon Knight's alleged infringement of copyrights are barred because if any similarities exist between Epic's and Silicon Knights' work, those similarities relate to unprotectable ideas, and hence unprotectable subject matter under the Federal Copyright Act.

## TWENTY-FIFTH DEFENSE

### (Independent Creation)

Epic's counterclaims arising from or related to Silicon Knight's alleged infringement of copyrights are barred because Silicon Knights' allegedly infringing material was created independently from Epic's.

## TWENTY-SIXTH DEFENSE

### (No Entitlement to Punitive Damages)

Epic's claim for punitive damages is not authorized by statute or by contract, and is therefore improper.

## TWENTY-SEVENTH DEFENSE

### (Silicon Knights acted in Good Faith)

Epic's claims are barred in whole or in part because Silicon Knights at all times acted reasonably and in good faith toward Epic.

## TWENTY-EIGHTH DEFENSE

### (No Entitlement to Punitive Damages)

Epic is not entitled to some or all of the relief requested because Silicon Knight's actions were not malicious, egregious, in bad faith, or in willful or reckless indifference or disregard of any legal rights by Epic.


[The remainder of this page is intentionally blank.]

WHEREFORE, Silicon Knights respectfully requests that the Court:

1.     Dismiss Epic's Counterclaims;

2.     Enter an Order that Epic have and recover nothing from Silicon Knights;

3.     Award Silicon Knights its costs and expenses to the extent allowed by law;

4.     Award Silicon Knights such other relief that the Court deems just and proper;

and

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Silicon Knights hereby

demands a trial by jury on any and all issues in Epic's Counterclaim which are triable to a jury.


      /s/ Betsy Cooke
Hayden J. Silver III (NC State Bar No. 10037)
Betsy Cooke (NC State Bar 25353)
KILPATRICK STOCKTON LLP
3737 Glenwood Avenue, Suite 400
Raleigh, NC  27612
Telephone:  (919) 420-1711
Facsimile:  (919) 510-6136

*Attorneys for Plaintiff*
*SILICON KNIGHTS, INC.*

Christopher T. Holland (CA State Bar No. 164053)
Garth A. Rosengren (CA State Bar No. 215732)
KRIEG, KELLER, SLOAN, REILLEY & ROMAN LLP
114 Sansome Street, 4th Floor
San Francisco, CA  94104
Telephone:  (415) 249-8330
Facsimile:   (415) 249-8333

*Attorneys for Plaintiff*
*SILICON KNIGHTS, INC.*

## CERTIFICATE OF SERVICE

This is to certify that on this date the foregoing was electronically filed with the Clerk of the Court using the CM/ECF System which will automatically send notification of filing to the following CM/ECF participant:

Robert C. Van Arnam
rvanarnam@hunton.com

This the 31st day of August, 2007.

/s/ Betsy Cooke

_____

KILPATRICK STOCKTON LLP
3737 Glenwood Avenue, Suite 400
Raleigh, North Carolina 27612
Telephone: (919) 420-1700