IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SILICON KNIGHTS, INC., | ) |
| Plaintiff, | ) Case No. 08 C 782 <br> ) Judge Gettleman <br> ) Magistrate Judge Schenkier |
| vs. | ) |
| EPIC GAMES, INC., | ) Case No. 5-07-00275-D <br> ) (Eastern District of North Carolina, <br> ) Western Division) |
| Defendant. | ) |

**MIDWAY GAMES INC.'S REPLY IN SUPPORT OF ITS
MOTION TO QUASH SILICON KNIGHTS, INC.'S SUBPOENA**

Midway Games Inc. ("Midway"), for its Reply in Support of its Motion to Quash Silicon Knights, Inc.'s ("Silicon") subpoena, states as follows:

**I.    Silicon fails to establish the threshold showing of relevance[1].**

In the introduction to its Response, Silicon again incorrectly states that Midway has documents in its possession that are "*highly relevant*" to the underlying litigation and reiterates its three (modified) requests for documents pursuant to its subpoena. Midway has already responded to the same assertions in its Motion to Quash Subpoena, supporting Memorandum and the affidavit of Michael Weilbacher. Midway is fully justified in its disagreement and its position is supported by an *uncontested* affidavit establishing the irrelevance of the information requested by Silicon.

Although long on verbiage, Silicon is short on facts, evidence and accuracy. Even a cursory review of Silicon's Response reveals that its motives are disingenuous; its implication

---

[1] As a preliminary matter, it should be noted that Silicon is simultaneously seeking a declaratory judgment in the underlying litigation in North Carolina that: "Silicon Knights is under no obligation to disclose or share any alterations Silicon Knights makes or causes to be made to the Engine with anyone, including Epic." This is exactly the same type of information Silicon is demanding from Midway pursuant to the subpoena at issue. (Silicon Exhibit B, pp. 50, 52)

1

that a conspiracy between Midway and Epic is the reason for Silicon's "problems" with Epic's Unreal Engine 3 ("UE3") software is unsupported and irrelevant; it has purposefully ignored Midway's supporting affidavit from Michael Weilbacher on relevance; and it has recharacterized and misstated its "narrowed" document requests within its Response.

**II.     The affidavit of Michael Weilbacher in support of Midway's Motion is uncontested.**

In its Response, Silicon failed to substantively address the threshold issue of whether the information it demands of Midway is relevant. *Greater Rockford Energy & Tech. Corp. v. Shell Oil Co.*, 138 F.R.D. 530, 534 (C.D. Ill. 1991) ("[T]he burden is on the party seeking discovery to establish the information is sufficiently relevant and necessary to his case to outweigh the harm disclosure would cause to the person from whom he is seeking the information.") (quotations and citations omitted).  In this instance, the issue of relevance is not even arguably "uncertain."  To the contrary, Silicon entirely ignored the affidavit of Chief Technology Officer of Midway Amusement Games, LLC, Michael Weilbacher.  Mr. Weilbacher explained, on a technical basis, in thirty-seven separate paragraphs, why the information requested of Midway is irrelevant to Silicon's underlying dispute with Epic.  Silicon ignored the affidavit.

Midway entered into an agreement in 2005 with Epic to license software for use with a particular type of video game that Midway developed and published.  (Weilbacher Aff., ¶¶ 10-11 & 18.)  Midway's experience with Epic's UE3 software is relevant only to its compatibility with Midway's specific open roaming type of games.  (*Id.*, ¶¶ 17-20 & 24.)  Midway and Silicon developed different types of games.  Midway's agreement and experience with Epic and its UE3 software are unrelated and irrelevant to any contractual or technical issues Silicon encountered with Epic and its software.  (*Id.*, ¶¶ 10-11 & 17-20.)  Presumably, Silicon failed to achieve what

2

Midway accomplished because Silicon lacked the requisite technical acumen and resources necessary to develop its particular games using UE3.

Instead of rebutting even a single statement in Mr. Weilbacher's affidavit, Silicon submitted three off-point affidavits having nothing to do with the threshold issue of the relevance of the information requested or the fact that any information related to Midway's use or evaluation of UE3 consists of Midway's confidential trade secrets. The affidavits are supplied by two lawyers representing Silicon and a third by an affiant who purports to repeat a hearsay statement of a Midway employee that is both irrelevant and inadmissible.

### III. Communications relating to the interpretation of the term "Enhancements" in the Epic License Agreement.

As more fully stated in its Memorandum and in the Weilbacher Affidavit, Midway has no documents responsive to Silicon's first modified request.

Furthermore, Midway's interpretation of "Enhancements" is patently irrelevant in the face of Silicon's admission that the definition of "Enhancements" in Midway's contract with Epic "differs from the language in Silicon Knight's license agreement" with Epic. As stated in the letter of March 3, 2008 from Silicon's attorney, Daniel Konieczny:

> In that Exhibit 4.3, the term 'Enhancements' is defined as: 'and technology developed by Licensee that is derived from or modifies the Licensed Technology and corrects, enhances or improves the Licensed Technology.' That definition differs from the language in Silicon Knights' license agreement and the non-privileged communications and negotiations surrounding that language go directly to refute Epic's claim that all license agreements were the same, and all licensees were treated equally.

(Ex. C, Midway's Memorandum.)

Moreover, Silicon now refuses to abide by its own modification to its subpoena. Apparently dissatisfied that Midway has no records responsive to Silicon's first modified request, Silicon simply changed the scope of its modified request from "*communications regarding the*

3

*interpretation of the term 'Enhancements' in the Epic license agreement*" to misstating in its Response that its request is for "*all communications regarding 'Enhancements' to the Engine.*" Silicon Response patently misrepresented what it was seeking in its modified request. (Silicon's Response, p. 11.)

Finally, without any citation to the underlying record in the North Carolina litigation, Silicon claims that it "*contends that the term "Enhancement" is ambiguous, which renders Epic's course of dealing with other licensees and the industry standard relevant in interpreting this term.*" (Silicon's Response, p. 8.) That statement is not supported by the record.

A review of Silicon's Complaint (Silicon Response, Exhibit B), reveals that there is no allegation of ambiguity in its license agreement with Epic. In fact, starting at paragraph 87, Silicon alleges a series of "misrepresentations" by Epic as the factual basis for its subsequently pled causes of action. Furthermore, Silicon's prayer for relief, which in part seeks a declaratory judgment, does not seek a declaration that, as a matter of law, any term in the contract is ambiguous. Even assuming *arguendo* that Epic did make such a claim, as a threshold matter, Silicon fails to cite any legal authority or determination by the trial court that extrinsic evidence from Midway is relevant or admissible in the underlying action.

**IV.     Documents relating to complaints about the performance of the Unreal Engine 3.**

With respect to Silicon's second document request, and as more fully set forth in its Memorandum and the affidavit of Michael Weilbacher, Midway has no documents relating to complaints about the performance of UE3 as defined by Silicon.

Again, as with its first document request, dissatisfied with Midway's response, Silicon simply changed and misstated the scope of its request within its Response. Without explanation,

4

it expanded its request from "*complaints about the performance of the Unreal Engine 3*" to "*communications concerning issues related to UE3's performance.*"  (Silicon's Response, p. 12.)

Instead of responding to the Weilbacher affidavit, which directly addresses the issue of Midway's experience with the performance of UE3, Silicon's Response defaults to speculation: "Some [unidentified] insiders believe that its [Midway's] financial troubles are a substantial result of problems with the Engine."  (Silicon's Response, pp. 11-12.)  Silicon attaches an affidavit from "Michael Scandizzo" consisting of inadmissible hearsay to bolster its theory that there must have been a "problem" and presumably there must have been corresponding complaints to which Silicon claims entitlement.  Silicon also refers to Exhibits K and L to the Declaration of Daniel Konieczny,[2] which appear to be printouts from the Internet that are inadmissible hearsay, not probative, and not credible evidence.  *See United States v. Jackson*, 208 F.3d 633, 637-38 (7th Cir. 2000) ("[A]ny evidence procured off the Internet is adequate for almost nothing, even under the most liberal interpretations of the hearsay exception rules.") (quotations and citations omitted).  Silicon's assertions are entirely unsupported by any credible evidence.

In addition, Silicon completely fails to explain why the information it seeks cannot be provided through expert testimony.  *See Builders Assoc. of Greater Chicago v. City of Chicago*, No. 96 C 1122, 2001 WL 1002480, *7 n. 5 (N.D. Ill. Aug. 30, 2001) (holding that "this Court is reluctant to use the judicial power to compel non-parties to provide their sensitive business records to create data for a party's expert witness"); *Nat'l Claims Management Corp. v. Mercedes-Benz of North Am., Inc.*, No. 97 C 6293, 1998 WL 27136, *1 (N.D. Ill. Jan. 15, 1998)

---

[2] The format of Mr. Konieczny's declaration may be consistent with California practice where his co-counsel is located, but it does not meet the authentication requirements of the Federal Rules of Evidence.

(granting a motion to quash because "Mercedes has failed to show that it could not develop the same information through expert testimony or otherwise").

**V.     The final, executed license agreement between Epic and Midway (or the Midway Home Entertainment Division), including all amendments, revisions, terminations and/or contracts.**

As a threshold matter, Silicon did not and cannot make the requisite showing of relevance and, therefore, did not and cannot demonstrate the substantial need required to obtain the documents identified in its third document request - regardless of whether they would be produced subject to a protective order. "[I]t is established that even when a protective order has been entered, a party requesting disclosure of confidential material must make a strong showing of need, especially when confidential information from a nonparty is sought." *Concord Boat Corp. v. Brunswick Corp.*, No. 96 C 6026, 1996 WL 705260, *3 (N.D. Ill. Dec. 4, 1996) (inner quotations omitted).

Moreover, even assuming *arguendo* that Silicon carried its burden of making a "strong showing of need," the protective order entered by the Eastern District of North Carolina does not adequately protect Midway's confidential information and trade secrets. The protective order still permits disclosure of documents, even those marked "Highly Confidential," to Silicon's hired consultants. (Ex. J, ¶ 9, Konieczny Declaration.) Other courts have succinctly summed up the inadequacies of similar protective orders in dealing with the disclosure of confidential information to a direct competitor:

> Once an expert has digested this confidential information, it is unlikely that the expert will forget. The expert's raison d'etre is to assimilate information in his or her own chosen field and formulate material into various theories. The information obtained . . . will be added to the expert's repository of other information for possible future use. Even with stern sanctions for unauthorized disclosure, how does one practically police a protective order? If the expert is called upon two years after this litigation to assist a potential competitor in

6

> structuring its business, will he really be able to compartmentalize all he or she has learned and not used any of the information obtained . . . ?

*Greater Rockford Energy*, 138 F.R.D. at 537-38 (*quoting Litton Indus. v. Chesapeake & Ohio Ry.*, 129 F.R.D. 528, 531 (E.D. Wisc. 1990)). Given the unrebutted facts that the video game industry is highly competitive, that Midway expended millions of dollars to develop its games using UE3, and that Midway has gone to great lengths to protect the information now sought by its unsuccessful and direct competitor Silicon, the protective order entered in North Carolina does not provide adequate protection to Midway. (Weilbacher Aff., ¶¶ 6, 13-15, 22, 29-34.)

Finally, Silicon has a copy of Midway's contract with Epic from which trade secret information has already been redacted. It is marked as Exhibit A to the Declaration of Daniel Konieczny. Absent a showing of relevance and in the face of Silicon's express acknowledgment that the terms of its contract with Epic for UE3 are materially different than the corresponding terms in Midway's contract with Epic, there is no basis for obtaining any additional records.

## VI.    Silicon's discovery agenda.

Silicon's subpoena is a pretext to facilitate discovery on an issue it has never pled. In its Response, Silicon makes several wholly unsubstantiated and equally off-base assertions that a conspiracy involving Epic and Midway must be the reason for Silicon's problems with UE3 rather than its own technical inability to achieve functionality using UE3. Silicon's subpoena is a "fishing expedition" based on pure speculation and innuendo worthy of a John Grisham novel.

> Likewise, Midway is silent with regard to its extremely close business relationship with Epic. In fact, Midway is the publisher of Unreal Tournament 3, a video game that was developed by Epic at the same time as Silicon Knights' development efforts were being delayed by the problems with Epic's Engine. *Very simply, Midway's involvement in Epic's competition with Silicon Knights during this time period underscores the relevance of Midway's information.*

(Silicon's Response, p 2; emphasis added.)

> . . . Midway's relationship with Epic *likely* involved an open exchange of concerns or problems involving the Engine that are relevant to the underlying litigation. *For that reason* Silicon Knights seeks documents from Midway and in the spirit of compromise agreed to narrow its request.

(*Id.*, p. 8; emphasis added.)

> More likely, Midway is attempting to hide behind its trade secret protection to justify its refusal to produce documents that may contradict the representations and allegations of its long time partner, Epic. However, the potential for repercussions on Midway's relationship with Epic is not a valid reason to withhold documents requested by a subpoena.

(*Id.*, p. 14.)

The relevance of technical trade secrets sought via subpoena from a competitor by Silicon is neither evaluated nor "underscored" on the basis of Silicon's suspicion that its inability to compete was the result of a conspiracy. Epic is not Midway's partner and, to paraphrase the late Lloyd Bentsen, Silicon is no Midway Games. There is no evidence whatsoever that supports Silicon's implication that any unknown video game under development by Silicon was ever going to compete with the video game Unreal Tournament 3 (already an established brand) and/or that Epic and Midway conspired to impede Silicon's release of a competing product. What Silicon's implication "underscores" is that Silicon's subpoena is based entirely on conjecture rather than any credible evidence of actual, let alone substantial, need or relevance.

Silicon's insistence that this court order Midway, a competing developer and publisher of interactive entertainment software with an investment cost of millions of dollars per game, to turn over its confidential business records and trade secrets to Silicon and its experts is based on nothing more than the creative writing of its attorneys.

**VII.   Midway's position regarding Silicon's subpoena is fully justified.**

Silicon refers to its "repeated attempts to cooperate with Midway" and implies that, because it has appeared to restate the exact same position three times, Midway is obligated to

8

change its position or it is not justified in moving to quash Silicon's subpoena.  As noted herein, Silicon has actually changed and expanded the scope of its demands and has done so without clarifying that change in its Response.  As noted, Silicon hypocritically demands from Midway the same type of information that it seeks to keep confidential pursuant to a declaratory judgment in the underlying litigation. (Silicon's Response, Exhibit B, pp. 50, 52.)

There is also significant inconsistency between Kurani's Declaration and email attached to Silicon's Response that, in the spirit of cooperation, Silicon has narrowed its requests for communications regarding the "*interpretation of the term "Enhancements" as it is used in the Epic License Agreement*" and the actual scope of the overreaching demand set forth in Silicon's Response:

> "…what *is* relevant are Midway's "Enhancements" to the Engine. Thus, Midway's internal communication regarding those "Enhancements" including the scope of the "Enhancements," are among the category of communications responsive to Silicon Knights' subpoena. In addition, Midway's communications with third-parties and/or Epic concerning the same topics also are relevant."

(Silicon's Response, p. 11.)

Finally, Midway, through its counsel, initiated personal consultation with Anjali Kurani, counsel for Silicon; advised attorney Kurani that the subpoena was objectionable; considered Silicon's counsel's subsequent correspondence reiterating Silicon's same proposed modifications; reviewed and again considered the same representations received twice in correspondence; and, elected to proceed with the motion to quash for the reasons set forth in its Memorandum, Weilbacher's Affidavit and this Reply.

Silicon's persistence in appearing to reiterate the same positions three times (in a telephone conversation and in two subsequent letters), while recharacterizing them in its Response, neither mandates that Midway change its position nor provides a basis to assert that

there is an insufficient basis for Midway's Motion to Quash. To the contrary, Silicon has demonstrated that its representations are disingenuous and its subpoena is improper.

## CONCLUSION

For the reasons set forth in its Motion, Memorandum, Michael Weilbacher's Affidavit and this Reply, Midway Games Inc. prays that the court enter an order quashing the subpoena of Silicon Knights, Inc.

Respectfully submitted,

Dated:  April 11, 2008 　　　　　　　　　　**MIDWAY GAMES INC.**
　　　　　　　　　　　　　　　　　　　　　By: s/ Gerald O. Sweeney, Jr.

　　　　　　　　　　　　　　　　　　　　　　Attorney for Midway Games Inc.

Gerald O. Sweeney, Jr.
**Barnes & Thornburg LLP**
One North Wacker Drive, Suite 4400
Chicago, Illinois 60606
(312) 357-1313

## CERTIFICATE OF SERVICE

I, Gerald O. Sweeney, Jr., an attorney, certify that a copy of the foregoing *Midway Games Inc.'s Reply in Support of Its Motion to Quash Subpoena* was served on the following attorneys of record via the Court's CM/ECF system on this 11th day of April 2008:

**Caesar A. Tabet**
**Timothy A. Hudson**
**Daniel I. Konieczny**
Tabet DiVito & Rothstein, LLC
209 South LaSalle Street
Seventh Floor
Chicago, IL 60604
(312) 762-9450
Email: dkonieczny@tdrlawfirm.com
Email: thudson@tdrlawfirm.com


I, Gerald O. Sweeney, Jr., an attorney, also certify that a copy of the foregoing *Midway Games Inc.'s Reply in Support of Its Motion to Quash Subpoena* was served on the following attorneys of record via facsimile on this 11th day of April 2008:

**Christopher T. Holland**
**Garth A. Rosengren**
**Anjali Kumar Kurani**
Kreig Keller Sloan, Reilly & Roman LLP
114 Sansome Street, 4th Floor
San Francisco, CA  94104
Fax: (415) 249-8333


                                                                                    By: s/ Gerald O. Sweeney, Jr.
                                                                                         Attorney for Midway Games Inc.