# EXHIBIT 1

## Tracy Bulow - Midway Games - Silicon Knights Record Search

**From:** Gerald Sweeney
**To:** "Daniel I. Konieczny" <DKonieczny@TDRLAWFIRM.com>
**Date:** 7/25/2008 3:44 PM
**Subject:** Midway Games - Silicon Knights Record Search

**Security:** Confidential

Mr. Konieczny,

The redacted Midway UE3 license agreement in the form submitted to the North Carolina Court is attached as was discussed in court on Wednesday, July 23, 2008.

Pursuant to the Court's order of July 23, 2008, Midway hereby informs counsel for Silicon Knights as to how far its active database goes back, how many tapes it has for the term of the license agreement with Epic Games and the time and expense it will involve to search the active and archival databases for responsive information.

This is a significant undertaking and will require an immediate response and an outside contractor if there is any possibility of meeting the Court's production date of August 22, 2008. As a preliminary matter, the email system is backed up daily and removed to off site storage on a daily basis.

### I. Search Terms:

Search terms to be derived from the yellow highlighted sections of the PDF attachment provided by Silicon Knights counsel on July 23, 2008 relating to Midway's experience with UE3.

### II. Time Frame of Search:

The inception date of the Midway UE3 Agreement - January 14, 2005 to present.

### III. Document Sources to be Searched:*

1. Email (archived daily)
2. Twiki (immediately searchable)
3. List Server (immediately searchable)
4. Employee Files Retained in Electronic Format

* Chat Tool Instant Messenger (not retained), Unreal Development Site (not retained)

### IV. Relevant Email Background Information:

In the second half of 2005, Midway's email system migrated from Exchange 2000 to current Exchange 2003 system.

To search the data on Exchange, Midway will have to recreate the Exchange 2000 environment at five (5) locations: L.A., Austin, San Diego, Chicago, & Seattle.

This requires purchasing hardware and software and set up at each location consisting of a Server, Tape Drive, Microsoft Exchange Program, Exchange Search Utility Software & Tape Drive Software at an estimated cost of $15,000 per location for a total cost of approximately **$75,000.**

It is estimated that there are 5000 email tapes in total that will be reviewed by an outside contractor at an estimated cost of approximating $50/hr. X 8 hours X 500 man days (averaging review of 10 tapes per person per day) at a cost of approximately **$200,000.** (attorney fees not included)

## V. Search of Employee Files Retained in Electronic Format:

800 employee files estimated at 2/hrs. each X Midway averaged hourly rate of $62 = **$99,200.** (attorney fees not included)

## VI. Twiki and List Server Search

$62/hr X 200 hrs = **$12,400.** (attorney fees not included)

## VII. Attorney fees/cost for search set up, document review and redaction of subset for production

Estimated on an average rate of $325/hr. X 160 hours = **$52,000.**

# TABET | DIVITO | ROTHSTEIN

Tabet DiVito & Rothstein LLC
The Rookery Building
209 S. LaSalle St., 7th floor
Chicago, Illinois 60604
312-762-9450 Telephone
312-762-9451 Facsimile
www.tdrlawfirm.com

Writer's direct dial:
  (312) 762-9456

Writer's email:
  dkonieczny@tdrlawfirm.com

July 11, 2008

*By e-mail*

Gerald O. Sweeney, Jr.
Barnes & Thornburg LLP
One North Wacker Drive
Suit 4400
Chicago, IL 60606

    Re:    *Silicon Knights, Inc. v. Epic Games, Inc.*, No. 08-cv-00782
           **(subpoena directed to Midway Games Inc. by Silicon Knights, Inc.)**

Dear Gerald:

    As we discussed by telephone today, in furtherance of the Court's directive to meet and confer, enclosed please find a list of "Alleged UE3 Problems." After you have had an opportunity to review it, please contact us to discuss.

    Very truly yours,

    Daniel I. Konieczny

DIK/maslwg
Enclosure

Cc:    Christopher T. Holland (by e-mail)
       Anjali Kumar Kurani (by e-mail)
       Garth A. Rosengren (by e-mail)

1) **UE3 Licensee Support from Epic**
   a) Lack of any and/or timely documentation necessary to assist licensees in achieving compatibility between UE3 and the licensee's games
   b) Lack of visibility for licensees into Epic's development schedule for UE3
   c) General unresponsiveness and/or out right dismissal of suggestions and requests from licensees
   d) Epic's decisions about what UE3 functionality was to be considered "game-level" versus "engine-level"
   e) Epic's decisions about what UE3 functionality was to be considered an optimization versus a feature of UE3
   f) Epic's development of UE3 at variance with Microsoft's TCR's for games being developed on the Xbox360
   g) Epic's advice that licensees develop UE3 to achieve compatibility with their games in a manner distinct from Epic's use of UE3 with *Gears of War* and/or *Unreal Tournament 3*
   h) Epic's practice of "deprecating" content

2) **UE3 Performance Issues**
   a) Memory allocation and usage
   b) Streaming, including without limitation the occurrence of memory spikes during loading, the absence and/or delay in providing asynchronous streaming, UE3's use of multiple load paths, and the absence and/or delay in providing a seek-free load path, the absence and/or delay in providing pushbuffer support
   c) Script performance, including without limitation, debugging, syntax, organization, header autogeneration
   d) Editor performance, including without limitation, backward compatibility, data import process, resource management
   e) Renderer performance, including without limitation optimization of the renderer to hardware of the PS3 and the Xbox360, achievable frame rates, rendering of indoor and outdoor terrain, and lighting
   f) Dataflow/workflow architecture governing editor usage and the means by which a licensee can get data into a game using UE3, including without limitation the binary file format used for UE3 and the implementation and integration of Kismet and Matince in UE3
   g) Code churn from a given UE3 code-drop to the next to the next code drop by Epic, including without limitation Epic's addition, deletion, or alteration of files from one version of UE3 to the next such that an licensee is unable to assure that work done on one version of UE3 will be compatible with the next version of UE3 released by Epic
   h) Multithreading (including SPU utilization on the PS3)
   i) General programming practice, including without limitation code structure, coding standards, API, engine-level vs. game-level abstraction, changes in the underlying engine code without regard for the impact of those changes on the licensee's code necessary to achieve compatibility with the game in development.

3) **Communications with UE3 Licensees**
   a) Epic's representations about the current performance of UE3 during any given point in the development cycle of UE3 on the PS3 and on the Xbox360
   b) Epic's representations about the current state of development of UE3 during any given point in the development cycle of UE3 relative to the complete development cycle for UE3 on the PS3 and on the Xbox360
   c) Epic's representations about the projected performance of UE3 as the development cycle of UE3 progressed on the PS3 and on the Xbox360
   d) Epic's representations about how to best leverage UE3 in developing games based thereon for the PS3 and on the Xbox360

4) **Failure to deliver/meet roadmap for development of UE3**
   a) Licensees provided with a very short "look ahead" on Epic's schedule for the development of UE3 on the PS3 and on the Xbox360
   b) Epic's practice of frequently changing the roadmap for development of UE3 on the PS3 and on the Xbox360, including without limitation Epic's tendency to remove features and/or reprioritize features of UE3
   c) Epic's practice of prioritizing "road-mapped" features of UE3 on the PS3 and on the Xbox360 arbitrarily and/or based on the needs of certain titles
   d) Epic's failure to deliver a commercially functional engine on the Xbox360 and PS3 within six months of the release of the final development kit for those respective platforms

# EXHIBIT 2

## Tracy Bulow - Fwd: Midway Games - Silicon Knights Record Search

| | |
|---|---|
| **From:** | Gerald Sweeney |
| **To:** | "Daniel I. Konieczny" <DKonieczny@TDRLAWFIRM.com> |
| **Date:** | 7/28/2008 6:45 PM |
| **Subject:** | Fwd: Midway Games - Silicon Knights Record Search |
| **CC:** | Bulow, Tracy |

Mr. Konieczny,

Please advise wheher SK want Midway to start the search on VI described below **"Twiki and List Server Search".**

Regards,

Gerald O. Sweeney, Jr.
BARNES & THORNBURG LLP
Suite 4400
One North Wacker Drive
Chicago, IL 60606-2809

(312) 214-4858 Direct
(630) 363-4565 Cell
(312) 357-1313 Main
(312) 759-5646 Fax

gsweeney@btlaw.com
www.btlaw.com

>>> Gerald Sweeney 7/25/2008 3:44 PM >>>
Mr. Konieczny,

The redacted Midway UE3 license agreement in the form submitted to the North Carolina Court is attached as was discussed in court on Wednesday, July 23, 2008.

Pursuant to the Court's order of July 23, 2008, Midway hereby informs counsel for Silicon Knights as to how far its active database goes back, how many tapes it has for the term of the license agreement with Epic Games and the time and expense it will involve to search the active and archival databases for responsive information.

This is a significant undertaking and will require an immediate response and an outside contractor if there is any possibility of meeting the Court's production date of August 22, 2008. As a preliminary matter, the email system is backed up daily and removed to off site storage on a daily basis.

**I. Search Terms:**

Search terms to be derived from the yellow highlighted sections of the PDF attachment provided by Silicon Knights counsel on July 23, 2008 relating to Midway's experience with UE3.

**II. Time Frame of Search:**

The inception date of the Midway UE3 Agreement - January 14, 2005 to present.

**III. Document Sources to be Searched:***

1. Email (archived daily)
2. Twiki (immediately searchable)
3. List Server (immediately searchable)
4. Employee Files Retained in Electronic Format

* Chat Tool Instant Messenger (not retained), Unreal Development Site (not retained)

**IV. Relevant Email Background Information:**

In the second half of 2005, Midway's email system migrated from Exchange 2000 to current Exchange 2003 system.

To search the data on Exchange, Midway will have to recreate the Exchange 2000 environment at five (5) locations: L.A., Austin, San Diego, Chicago, & Seattle.

This requires purchasing hardware and software and set up at each location consisting of a Server, Tape Drive, Microsoft Exchange Program, Exchange Search Utility Software & Tape Drive Software at an estimated cost of $15,000 per location for a total cost of approximately **$75,000**.

It is estimated that there are 5000 email tapes in total that will be reviewed by an outside contractor at an estimated cost of approximating $50/hr. X 8 hours X 500 man days (averaging review of 10 tapes per person per day) at a cost of approximately **$200,000**. (attorney fees not included)

**V. Search of Employee Files Retained in Electronic Format:**

800 employee files estimated at 2/hrs. each X Midway averaged hourly rate of $62 = **$99,200.** (attorney fees not included)

**VI. Twiki and List Server Search**

$62/hr X 200 hrs = **$12,400.** (attorney fees not included)

**VII. Attorney fees/cost for search set up, document review and redaction of subset for production**

Estimated on an average rate of $325/hr. X 160 hours = **$52,000.**

# EXHIBIT 3

# Tracy Bulow - Midway Games - Silicon Knights Record Search

| | |
|---|---|
| **From:** | Gerald Sweeney |
| **To:** | cholland@kksrr.com |
| **Date:** | 7/29/2008 3:39:42 PM |
| **Subject:** | Midway Games - Silicon Knights Record Search |
| **CC:** | Bulow, Tracy;  DKonieczny@TDRLAWFIRM.com |

Chris,

Please advise whether SK wants Midway to start the search on VI described below **"Twiki and List Server Search"** - which are the databases available on-site and immediately searchable.  I will be out of the office Friday returning on Tuesday, August 4th.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Pursuant to the Court's order of July 23, 2008, Midway hereby informs counsel for Silicon Knights as to how far its active database goes back, how many tapes it has for the term of the license agreement with Epic Games and the time and expense it will involve to search the active and archival databases for responsive information.

This is a significant undertaking and will require an immediate response and an outside contractor if there is any possibility of meeting the Court's production date of August 22, 2008. As a preliminary matter, the email system is backed up daily and removed to off site storage on a daily basis.

## I. Search Terms:

Search terms to be derived from the yellow highlighted sections of the PDF attachment provided by Silicon Knights counsel on July 23, 2008 relating to Midway's experience with UE3.

## II. Time Frame of Search:

The inception date of the Midway UE3 Agreement - January 14, 2005 to present.

## III. Document Sources to be Searched:*

1. Email (archived daily)
2. Twiki (immediately searchable)
3. List Server (immediately searchable)
4. Employee Files Retained in Electronic Format

* Chat Tool Instant Messenger (not retained), Unreal Development Site (not retained)

## IV. Relevant Email Background Information:

In the second half of 2005, Midway's email system migrated from Exchange 2000 to current Exchange 2003 system.

To search the data on Exchange, Midway will have to recreate the Exchange 2000 environment at five (5) locations: L.A., Austin, San Diego, Chicago, & Seattle.

This requires purchasing hardware and software and set up at each location consisting of a Server, Tape Drive, Microsoft Exchange Program, Exchange Search Utility Software & Tape Drive Software at an estimated cost of

$15,000 per location for a total cost of approximately **$75,000**.

It is estimated that there are 5000 email tapes in total that will be reviewed by an outside contractor at an estimated cost of approximating $50/hr. X 8 hours X 500 man days (averaging review of 10 tapes per person per day) at a cost of approximately **$200,000**. (attorney fees not included)

**V. Search of Employee Files Retained in Electronic Format:**

800 employee files estimated at 2/hrs. each X Midway averaged hourly rate of $62 = **$99,200**. (attorney fees not included)

**VI. Twiki and List Server Search**

$62/hr X 200 hrs = **$12,400**. (attorney fees not included)

**VII. Attorney fees/cost for search set up, document review and redaction of subset for production**

Estimated on an average rate of $325/hr. X 160 hours = **$52,000**.

# EXHIBIT 4

**TABET | DiVITO | ROTHSTEIN**

Tabet DiVito & Rothstein LLC
The Rookery Building
209 S. LaSalle St., 7th floor
Chicago, Illinois 60604
312-762-9450 Telephone
312-762-9451 Facsimile
www.tdrlawfirm.com

Writer's direct dial:
**(312) 762-9456**

Writer's email:
**dkonieczny@tdrlawfirm.com**

July 30, 2008

*By Facsimile and E-mail*

Gerald O. Sweeney, Jr.
Barnes & Thornburg LLP
One North Wacker Drive
Suite 4400
Chicago, IL  60606

>   Re:   ***Silicon Knights, Inc. v. Epic Games, Inc.*, No. 08-cv-00782**
>          **(subpoena directed to Midway Games Inc. by Silicon Knights, Inc.)**

Dear Gerald:

        We have received your e-mail dated July 25, 2008, in which you estimate the cost of searching Midway's electronic records for documents responsive to the subpoena to be $438,600.  This estimate is extraordinarily high and exceeds our expectations by a factor of 40 times or more.  Moreover, it is incomplete and confusing in several respects.  So that we may understand your estimate and determine whether it is possible to reach common ground on the question of costs with respect to any type of search, we ask that you provide answers to the following questions:

        1.      With respect to the two databases that you characterize as "immediately searchable" (*i.e.*, the Twiki and List Servers), you state that the cost of searching the databases would be $62 per hour x 200 hours.  Is $62 the actual salary of the Midway employee who would perform the search or simply the average salary of all of Midway's employees?  Why is it necessary to pay someone $62 per hour to perform a computer-aided search?  If the databases are "immediately searchable," why would it take 200 hours to complete the search?  We would be surprised if the employee time for a search based on a list of specific terms would take more than a few hours to complete by a low-level employee.

        2.      With respect to employee files retained in electronic format, you state that the cost of searching these documents would be 800 employee files x 2 hours x $62 per hour, which you state is the average salary of Midway's employees.  First, how did Midway calculate the number of relevant employees?  Are there in fact 800 Midway employees who were or are in a position to complain about UE3, or is this simply the total number of Midway's employees?  Second, why does Midway estimate that a search of an employee's electronic files would take 2 hours per employee?  Again, we would be surprised if it took an employee more than 30 minutes to search the files on his or her own computer, in addition to the paper files in his or her office.

**TABET | DiVito | ROTHSTEIN**

Gerald O. Sweeney
July 30, 2008
Page 2

     3.     With respect to e-mails, you first state that searching e-mail from the first half of 2005 requires purchasing and installing five Exchange 2000 systems (one for each Midway location) at a total cost of $75,000. Why is it necessary to purchase and install $75,000 worth of equipment to review 6 months worth of e-mails? Have you investigated whether a third-party contractor could simply access and search the backup tapes from the Exchange 2000 system without incurring this expense?

     4.     With respect to e-mails, you also state that there are 5,000 email tapes to be reviewed at $50 per hour x 8 hours per 10 tapes for a total cost of $200,000. Are the 5,000 backup tapes of e-mails simply daily backups of the same e-mail system? What is the basis of Midway's estimate that only 10 tapes could be searched by a full-time employee in an 8-hour day? How many of 5,000 tapes are from the first half of 2005 (*i.e.*, the tapes from the Exchange 2000 system)?

     5.     With respect to attorney fees, which you estimate at $325 per hour x 160 hours, what is the basis for the hourly rate and how do you calculate that 160 hours of attorney review would be necessary? 160 hours is equivalent to four weeks of full-time effort. It appears that your estimate already contemplates an enormous number of hours of document review by employees and third-party contractors (apparently 5,800 hours). How is it possible that an additional 160 hours of attorney time would be necessary?

     Given the tight deadlines imposed by the Court for the production of Midway's documents, we ask that you provide the answers to our questions as soon as possible, and in any event by no later than Thursday, July 31.

                Very truly yours,

                Daniel I. Konieczny

DIK/maslwg

Cc:    Christopher T. Holland (by e-mail)
       Anjali Kumar Kurani (by e-mail)
       Garth A. Rosengren (by e-mail)

# EXHIBIT 5

## Tracy Bulow - RE: Midway Games - Silicon Knights Record Search

**From:**     Gerald Sweeney
**To:**       cholland@kksrr.com;  Konieczny, Daniel I.
**Date:**     7/30/2008 11:57 AM
**Subject:**  RE: Midway Games - Silicon Knights Record Search
**CC:**       Bulow, Tracy

Wednesday, July 30, 2008

Dan & Chris,

The explanation given to Silicon Knights on Friday July 25 was based on the best available information and estimates made by the responsible IT personnel at Midway upon recent experience. I appreciate that this is an extensive and surprisingly costly undertaking as Silicon Knights has made a request covering a 3.5 year period that implicates most, if not all of Midway's products during that time.

(1) $62 is the cost on an averaged hourly basis for employee time of the persons considered sufficiently qualified by Midway to locate and identify the technical-based material defined in your letter. For example, secretarial level employees would not have sufficient knowledge to perform this search. Midway needs to pay someone $62 an our because that is Midway's averaged cost to perform the search. When Midway indicates that certain information is immediately searchable, that means that those databases were available to be searched without locating tapes from off-site storage - not that the information is instantly available without any time required to search. The amount of time to search is based on recent experience locating documents under similar circumstances.

(2) Employees in different capacities may be relevant and we are not in a position to guess who may have made some comment pertaining to the subject matter of your request. If you want to limit the scope of the search to design personnel, please advise and we will limit the search to that category. Again, the estimate of two hours to set up and search on a per employee basis is an estimate based upon experience.

(3) It is necessary to recreate the 2005 environment because Midway no longer has the capacity to search the email for the first half of 2005 for the reasons stated. If you are aware of a vendor that has the assets described that it will make available to recreate the 2005 environment in five (5) locations for the limited purpose of this search, please advise. Midway is not currently aware of such a resource and would consider your suggestions.

(4) With respect to email, the system is backed up daily and the tapes are removed daily to off site storage. The $50/hr cost is an estimated vendor cost on an hourly basis. The time for reviewing each tape is based on experience reviewing such tapes. This is not material that is otherwise searchable without first retrieving it from an off site location.

(5) Given the extent of the document request, the estimate is based on what it might take for legal review. If it's actually less, than the charges will be less. Silicon Knights will only be charged in each instance what the actual equivalent cost is to Midway for searching and reviewing and producing in accordance with Silicon Knights requests.

Regards,

Gerald O. Sweeney, Jr.
BARNES & THORNBURG LLP
Suite 4400
One North Wacker Drive
Chicago, IL 60606-2809

(312) 214-4858 Direct
(630) 363-4565 Cell
(312) 357-1313 Main
(312) 759-5646 Fax

gsweeney@btlaw.com
www.btlaw.com

>>> "Daniel I. Konieczny" <DKonieczny@TDRLAWFIRM.com> 7/30/2008 10:32 AM >>>
Gerald:

Please see the attached correspondence.

Dan

---

**From:** Gerald Sweeney [mailto:Gerald.Sweeney@BTLaw.com]
**Sent:** Tuesday, July 29, 2008 3:40 PM
**To:** cholland@kksrr.com
**Cc:** Tracy Bulow; Daniel I. Konieczny
**Subject:** Midway Games - Silicon Knights Record Search

Chris,

Please advise whether SK wants Midway to start the search on VI described below **"Twiki and List Server Search"** - which are the databases available on-site and immediately searchable.  I will be out of the office Friday returning on Tuesday, August 4th.

* * * * * * * * * * * * * * * * * *

Pursuant to the Court's order of July 23, 2008, Midway hereby informs counsel for Silicon Knights as to how far its active database goes back, how many tapes it has for the term of the license agreement with Epic Games and the time and expense it will involve to search the active and archival databases for responsive information.

This is a significant undertaking and will require an immediate response and an outside contractor if there is any possibility of meeting the Court's production date of August 22, 2008. As a preliminary matter, the email system is backed up daily and removed to off site storage on a daily basis.

**I. Search Terms:**

Search terms to be derived from the yellow highlighted sections of the PDF attachment provided by Silicon Knights counsel on July 23, 2008 relating to Midway's experience with UE3.

**II. Time Frame of Search:**

The inception date of the Midway UE3 Agreement - January 14, 2005 to present.

## III. Document Sources to be Searched:*

1. Email (archived daily)
2. Twiki (immediately searchable)
3. List Server (immediately searchable)
4. Employee Files Retained in Electronic Format

* Chat Tool Instant Messenger (not retained), Unreal Development Site (not retained)

## IV. Relevant Email Background Information:

In the second half of 2005, Midway's email system migrated from Exchange 2000 to current Exchange 2003 system.

To search the data on Exchange, Midway will have to recreate the Exchange 2000 environment at five (5) locations: L.A., Austin, San Diego, Chicago, & Seattle.

This requires purchasing hardware and software and set up at each location consisting of a Server, Tape Drive, Microsoft Exchange Program, Exchange Search Utility Software & Tape Drive Software at an estimated cost of $15,000 per location for a total cost of approximately **$75,000**.

It is estimated that there are 5000 email tapes in total that will be reviewed by an outside contractor at an estimated cost of approximating $50/hr. X 8 hours X 500 man days (averaging review of 10 tapes per person per day) at a cost of approximately **$200,000**. (attorney fees not included)

## V. Search of Employee Files Retained in Electronic Format:

800 employee files estimated at 2/hrs. each X Midway averaged hourly rate of $62 = **$99,200**. (attorney fees not included)

## VI. Twiki and List Server Search

$62/hr X 200 hrs = **$12,400**. (attorney fees not included)

## VII. Attorney fees/cost for search set up, document review and redaction of subset for production

Estimated on an average rate of $325/hr. X 160 hours = **$52,000**.

---

**CONFIDENTIALITY NOTICE: This email and any attachments are for the exclusive and confidential use of the intended recipient. If you are not the intended recipient, please do not read, distribute or take action in reliance upon this message. If you have received this in error, please notify us immediately by return email and promptly delete this message and its attachments from your computer system. We do not waive attorney-client or work product privilege by the transmission of this message. TAX ADVICE NOTICE: Tax advice, if any, contained in this e-mail does not constitute a "reliance opinion" as defined in IRS Circular 230 and may not be used to establish reasonable reliance on the opinion of counsel for the purpose of avoiding the penalty imposed by Section 6662A of the Internal Revenue Code. The firm provides reliance opinions only in formal opinion letters containing the signature of a partner.**

# EXHIBIT 6

**TABET | DIVITO | ROTHSTEIN**

Tabet DiVito & Rothstein LLC
The Rookery Building
209 S. LaSalle St., 7th floor
Chicago, Illinois 60604
312-762-9450 Telephone
312-762-9451 Facsimile
www.tdrlawfirm.com

Writer's direct dial:
    (312) 762-9476
Writer's email:
    thudson@tdrlawfirm.com

August 1, 2008

*By Facsimile and E-mail*

Gerald O. Sweeney, Jr.
Barnes & Thornburg LLP
One North Wacker Drive
Suite 4400
Chicago, IL  60606

  Re: *Silicon Knights, Inc. v. Epic Games, Inc.*, No. 08-cv-00782
    **(subpoena directed to Midway Games Inc. by Silicon Knights, Inc.)**

Dear Gerald:

   Your e-mail dated July 30, 2008 does not provide sufficient information for Silicon Knights to make a reasoned and informed decision regarding the scope of the search that Midway should perform on its electronic records.  Respectfully, we need more than your assurances that the estimate of $438,600 for the search is based on the "best available information" and "recent experience."  We seek the actual, quantitative basis of Midway's estimate so that we can evaluate the reasonableness of the estimate and so that, if appropriate, we can propose alternatives or limit the search in specific ways to minimize Midway's expenses.  Your responses to date make it impossible for Silicon Knights to meet either goal.

   For example, Midway still has not explained why it would take approximately 200 hours to search the Twiki and List Server, which Midway states are "immediately searchable."  What search protocol does Midway expect to utilize that will take 200 hours?  How much data do each of these servers contain?

   As a further example, Midway still has not explained why it would be necessary to search the electronic files of 800 employees, or even where the number "800" comes from.  Is this simply the total number of Midway's employees?  How many of the 800 were involved with UE3?  You state that Midway is "not in a position to guess who may have made some comment pertaining to the subject matter of your request," but you provide no information that would allow Silicon Knights to limit the number of employee files to be searched in any principled manner.

   Given the insufficient information provided thus far, your estimate that it will cost $438,600 to search Midway's electronic records for documents responsive to the subpoena is extraordinarily high and unreasonable.  Silicon Knights specifically objects to, and does not

**TABET | DIVITO | ROTHSTEIN**

Gerald O. Sweeney
August 1, 2008
Page 2

consent in any way to those estimates being reasonable, appropriate, or something that Silicon Knights will or should ultimately be responsible for, under the Federal Rules or any ruling to date by the Court in this matter.

Therefore, without waiving our client's rights with respect to other sources of responsive material (including but not limited to the archival databases you have referenced) and based on your representation that Midway's Twiki and List Server databases are on-site and immediately searchable, please search those current databases for information responsive to the subpoena. We will let the Court decide whether Midway's actually-incurred costs are in fact reasonable, and what portion of those costs, if any, should be borne by Silicon Knights.

With respect to Midway's email, employee files or other archived materials, we would like to schedule a conference call early next week with you and one or more representatives of Midway who have direct knowledge of Midway's IT systems, so that we may obtain answers to our questions directly. Please advise as to whether Midway will agree to have such a call and as to when Midway's representatives are available for the call.

Very truly yours,

Timothy A. Hudson

TAH/pal

cc:    Christopher T. Holland (by e-mail)
       Anjali Kumar Kurani (by e-mail)
       Garth A. Rosengren (by e-mail)
       Daniel I. Konieczny (by e-mail)

# EXHIBIT 7

## Tracy Bulow - Fwd: RE: Midway Games - Silicon Knights Record Search

| | |
|---|---|
| **From:** | Gerald Sweeney |
| **To:** | cholland@kksrr.com;  DKonieczny@TDRLAWFIRM.com;  THudson@TDRLAWFIRM.com |
| **Date:** | 8/5/2008 9:09 PM |
| **Subject:** | Fwd: RE: Midway Games - Silicon Knights Record Search |
| **CC:** | Bulow, Tracy |

Mr. Hudson,

With respect to first full paragraph on page 2 of your letter of August 1, 2008 (attached), please confirm that SK's position is that it will not pay Midway any of the costs incurred for the record production SK has subpoenaed pertaining to Twiki and the List Server databases without a further order of Court.

If so, we need to schedule a hearing on this issue since Midway has timely complied with the Court's request for an estimate of costs.  We have provided a reasonable estimate and now two explanations based on experience.  **SK will be charged only for the costs of the search based on the hourly costs and expenses stated.** FRCP 45 and the order expressly address costs.

With regard to the other issues you restate, the quantitative basis for the estimates are fully explained. The databases to be searched have been identified.  The estimates are based on expressly stated hourly rates (contract vendors and Midway employees) multiplied by the estimated average time it will take to review the archived tapes and the number of tapes that will need to be reviewed to cover the time frame for which SK seeks records. As stated, Midway cannot search the first half of archived records for 2005 without recreating the environment and there are obvious costs associated with doing so.

Further to your objections, there are approximately 800 employees whose electronic data will be reviewed because that is the approximate number of employees who are employed by Midway, all of whom fall within SK's request.  As stated, it takes an estimated two hours on average at an expressly stated hourly rate to set up, access and search the electronic files of each individual employee.  If you want to limit the search to a particular group of employees, such as designers and/or programers, etc., indicate that and Midway will search in any manner you request.  SK knows best, based on its own experience, how it can catagorize by type (s) the employees it considers to be relevant to the issues it has with UE3.  As previously stated, UE3 is the engine in Midway's games since 2005 and; therefore, the breadth of SK's search request is very large.

Based on the foregoing - as well as the last two explanations - you have received Midway's best estimate of what your request entails. There is no basis to make Midway's employees available for oral examinations. Midway is represented by counsel and if you have further specific questions, please provide them in writing and I will respond to each of them.


Regards,

Gerald O. Sweeney, Jr.
BARNES & THORNBURG LLP
Suite 4400
One North Wacker Drive
Chicago, IL 60606-2809

(312) 214-4858 Direct
(630) 363-4565 Cell
(312) 357-1313 Main

(312) 759-5646 Fax

gsweeney@btlaw.com
www.btlaw.com

>>> Gerald Sweeney 7/30/2008 11:57 AM >>>
Wednesday, July 30, 2008

Dan & Chris,

The explanation given to Silicon Knights on Friday July 25 was based on the best available information and estimates made by the responsible IT personnel at Midway upon recent experience. I appreciate that this is an extensive and surprisingly costly undertaking as Silicon Knights has made a request covering a 3.5 year period that implicates most, if not all of Midway's products during that time.

(1) $62 is the cost on an averaged hourly basis for employee time of the persons considered sufficiently qualified by Midway to locate and identify the technical-based material defined in your letter.  For example, secretarial level employees would not have sufficient knowledge to perform this search. Midway needs to pay someone $62 an our because that is Midway's averaged cost to perform the search. When Midway indicates that certain information is immediately searchable, that means that those databases were available to be searched without locating tapes from off-site storage - not that the information is instantly available without any time required to search.  The amount of time to search is based on recent experience locating documents under similar circumstances.

(2) Employees in different capacities may be relevant and we are not in a position to guess who may have made some comment pertaining to the subject matter of your request.  If you want to limit the scope of the search to design personnel, please advise and we will limit the search to that category. Again, the estimate of two hours to set up and search on a per employee basis is an estimate based upon experience.

(3) It is necessary to recreate the 2005 environment because Midway no longer has the capacity to search the email for the first half of 2005 for the reasons stated.  If you are aware of a vendor that has the assets described that it will make available to recreate the 2005 environment in five (5) locations for the limited purpose of this search, please advise.  Midway is not currently aware of such a resource and would consider your suggestions.

(4) With respect to email, the system is backed up daily and the tapes are removed daily to off site storage. The $50/hr cost is an estimated vendor cost on an hourly basis. The time for reviewing each tape is based on experience reviewing such tapes.  This is not material that is otherwise searchable without first retrieving it from an off site location.

(5) Given the extent of the document request, the estimate is based on what it might take for legal review. If it's actually less, than the charges will be less. Silicon Knights will only be charged in each instance what the actual equivalent cost is to Midway for searching and reviewing and producing in accordance with Silicon Knights requests.

Regards,

Gerald O. Sweeney, Jr.
BARNES & THORNBURG LLP
Suite 4400
One North Wacker Drive
Chicago, IL 60606-2809

(312) 214-4858 Direct
(630) 363-4565 Cell
(312) 357-1313 Main
(312) 759-5646 Fax

gsweeney@btlaw.com
www.btlaw.com

>>> "Daniel I. Konieczny" <DKonieczny@TDRLAWFIRM.com> 7/30/2008 10:32 AM >>>
Gerald:

Please see the attached correspondence.

Dan

---

**From:** Gerald Sweeney [mailto:Gerald.Sweeney@BTLaw.com]
**Sent:** Tuesday, July 29, 2008 3:40 PM
**To:** cholland@kksrr.com
**Cc:** Tracy Bulow; Daniel I. Konieczny
**Subject:** Midway Games - Silicon Knights Record Search

Chris,

Please advise whether SK wants Midway to start the search on VI described below **"Twiki and List Server Search"** - which are the databases available on-site and immediately searchable.  I will be out of the office Friday returning on Tuesday, August 4th.

*********************

Pursuant to the Court's order of July 23, 2008, Midway hereby informs counsel for Silicon Knights as to how far its active database goes back, how many tapes it has for the term of the license agreement with Epic Games and the time and expense it will involve to search the active and archival databases for responsive information.

This is a significant undertaking and will require an immediate response and an outside contractor if there is any possibility of meeting the Court's production date of August 22, 2008. As a preliminary matter, the email system is backed up daily and removed to off site storage on a daily basis.

**I. Search Terms:**

Search terms to be derived from the yellow highlighted sections of the PDF attachment provided by Silicon Knights counsel on July 23, 2008 relating to Midway's experience with UE3.

**II. Time Frame of Search:**

The inception date of the Midway UE3 Agreement - January 14, 2005 to present.

### III. Document Sources to be Searched:*

1. Email (archived daily)
2. Twiki (immediately searchable)
3. List Server (immediately searchable)
4. Employee Files Retained in Electronic Format

* Chat Tool Instant Messenger (not retained), Unreal Development Site (not retained)

### IV. Relevant Email Background Information:

In the second half of 2005, Midway's email system migrated from Exchange 2000 to current Exchange 2003 system.

To search the data on Exchange, Midway will have to recreate the Exchange 2000 environment at five (5) locations: L.A., Austin, San Diego, Chicago, & Seattle.

This requires purchasing hardware and software and set up at each location consisting of a Server, Tape Drive, Microsoft Exchange Program, Exchange Search Utility Software & Tape Drive Software at an estimated cost of $15,000 per location for a total cost of approximately **$75,000.**

It is estimated that there are 5000 email tapes in total that will be reviewed by an outside contractor at an estimated cost of approximating $50/hr. X 8 hours X 500 man days (averaging review of 10 tapes per person per day) at a cost of approximately **$200,000.** (attorney fees not included)

### V. Search of Employee Files Retained in Electronic Format:

800 employee files estimated at 2/hrs. each X Midway averaged hourly rate of $62 = **$99,200.** (attorney fees not included)

### VI. Twiki and List Server Search

$62/hr X 200 hrs = **$12,400.** (attorney fees not included)

### VII. Attorney fees/cost for search set up, document review and redaction of subset for production

Estimated on an average rate of $325/hr. X 160 hours = **$52,000.**

---

**CONFIDENTIALITY NOTICE: This email and any attachments are for the exclusive and confidential use of the intended recipient. If you are not the intended recipient, please do not read, distribute or take action in reliance upon this message. If you have received this in error, please notify us immediately by return email and promptly delete this message and its attachments from your computer system. We do not waive attorney-client or work product privilege by the transmission of this message. TAX ADVICE NOTICE: Tax advice, if any, contained in this e-mail does not constitute a "reliance opinion" as defined in IRS Circular 230 and may not be used to establish reasonable reliance on the opinion of counsel for the purpose of avoiding the penalty imposed by Section 6662A of the Internal Revenue Code. The firm provides reliance opinions only in formal opinion letters containing the signature of a partner.**

# EXHIBIT 8

**TABET | DiVITO | ROTHSTEIN**

Tabet DiVito & Rothstein LLC
The Rookery Building
209 S. LaSalle St., 7th floor
Chicago, Illinois 60604
312-762-9450 Telephone
312-762-9451 Facsimile
www.tdrlawfirm.com

Writer's direct dial:
(312) 762-9476

Writer's email:
thudson@tdrlawfirm.com

August 6, 2008

**By Facsimile and E-mail**

Gerald O. Sweeney, Jr.
Barnes & Thornburg LLP
One North Wacker Drive
Suite 4400
Chicago, IL  60606

Re:    *Silicon Knights, Inc. v. Epic Games, Inc.*, No. 08-cv-00782
       **(subpoena directed to Midway Games Inc. by Silicon Knights, Inc.)**

Dear Gerald:

I am writing in response to your August 5, 2008 e-mail.  As you know, the first full paragraph on page 2 of my August 1, 2008 letter does not state or otherwise imply that it is Silicon Knights' position that it will not pay Midway "any of the costs" incurred in connection with Midway's document production pertaining to its Twiki and List Server databases.  We disagree, however, that Midway is entitled to simply throw out any figure it proposes (no matter how unreasonable or excessive) and that unless Silicon Knights agrees to that figure (which we do not), Midway may then continue its months-long obstreperous conduct with respect to document production.  The July 23 Order clearly indicated that Silicon Knights may be responsible only for participating in "reasonable" attorneys fees and costs associated with Midway's document production.  Moreover, Magistrate Judge Schenkier made clear at the hearing that the Court would determine what was reasonable in that regard at some point in the future.

As previously indicated, Silicon Knights requests that Midway comply with the Court's July 23 Order and produce all responsive documents on the active List Server and Twiki databases.  Silicon Knights reserves all of its rights with respect to potential production of archived documents.  With respect to fees and costs associated with this production, Silicon Knights understands that Midway is to meet and confer about those actual costs once they occur and if the parties cannot agree on a reasonable amount of contribution by Silicon Knights, then the parties will seek resolution from the Court.  Silicon Knights certainly will adhere to whatever ruling the Court issues in that regard.

**TABET | DIVITO | ROTHSTEIN**

Gerald O. Sweeney
August 6, 2008
Page 2

As you state in your August 5 e-mail, Federal Rule of Civil Procedure 45 expressly addresses costs. Specifically, Rule 45(c) states that the party issuing the subpoena must take reasonable steps to avoid imposing undue burden or expense on the party subject to the subpoena. This letter, as well as our prior correspondence, is consistent with this obligation as well as the Court's direction that the parties work together to ensure an efficient collection and production of responsive documents.

Respectfully, your August 5 e-mail does not respond to our legitimate and reasonable requests for additional information and is inconsistent with the intent of the Federal Rules and the Court's directions to the parties. For example, Midway, not Silicon Knights, is the only party in a position to determine which of Midway's approximately 800 total employees are reasonably likely to have information responsive to Silicon Knights' modified subpoena. Your correspondence, on the other hand, indicates that Midway is unwilling to make such a determination yet expects Silicon Knights to pay the costs for Midway's insistence on searching the files of every Midway employee, regardless of whether such a broad search is necessary or reasonable. Similarly, your August 5 e-mail does not respond to our questions regarding (1) the search protocol Midway expects to utilize for the Twiki and List Server databases, (2) how much data the Twiki and List Server databases contain, and (3) how many of Midway's e-mail backup tapes are from the first half of 2005.

We remain willing to work cooperatively with Midway to devise search protocols that satisfy Silicon Knights' entitlement to relevant information and avoid unreasonable (and unnecessary) expense. For instance, if Midway can tell us how many of its approximately 5000 e-mail backup tapes are from the first half of 2005, we may be able to suggest a sampling protocol that obviates the need to search each of the tapes. Similarly, if Midway provides additional information regarding its five Exchange 2000 e-mail systems (one for each of Midway's locations) – such as the number of employees at each location, Midway's search protocols, and whether the employees at each location were engaged in work-related activities such that they were or are in a position to complain about UE3 – we may be able to avoid conducting searches of each server and installing $75,000 worth of equipment to review 6 months worth of e-mails.

Finally, with respect to our suggestion that we schedule a conference call with one or more representatives of Midway who have direct knowledge of Midway's IT systems, we simply thought that this would be the most efficient manner of obtaining answers to our questions.

**TABET | DiVito | ROTHSTEIN**

Gerald O. Sweeney
August 6, 2008
Page 3

Based on your rejection of this suggestion, please promptly provide answers to the specific questions set forth above and in our previous letters.

Very truly yours,

Timothy A. Hudson

TAH/pal

cc:    Christopher T. Holland (by e-mail)
       Anjali Kumar Kurani (by e-mail)
       Garth A. Rosengren (by e-mail)
       Daniel I. Konieczny (by e-mail)

# EXHIBIT 9

## Brad Rago - RE: RE: Midway Games - Silicon Knights Record Search

| | |
|---|---|
| **From:** | Gerald Sweeney |
| **To:** | Hudson, Timothy |
| **Date:** | 8/6/2008 6:44 PM |
| **Subject:** | RE: RE: Midway Games - Silicon Knights Record Search |
| **CC:** | Holland, Chris;  Konieczny, Daniel I.;  Kurani, Anjali;  Rosengren, Garth |

Tim,

I called to confer on the discovery matters set forth in your letter received on August 6th and attached hereto.

The following is the summary of our discovery telephone conference this evening, August 6th:

1. SK will advise Midway by the end of the day on Thursday, August 7th whether, based on its experience in the video game business and with UE3, it will provide a description of the categories of employees for which SK wants Midway to perform a search of electronically stored employee data and Midway will suggest categories of employees for which it believes the search of electronically stored data is not likely to be productive;

2. The estimated cost of $75,000 provided by Midway in IV of the email of July 29th (below) is the estimated cost for recreating the Exchange 2000 environment at five (5) locations for the review of the tapes from the first half of 2005 - not for the Exchange 2003 system that was implemented in the second half of 2005 and is still in use today.

3. Midway does not have the capacity to review the tapes that predate the Exchange 2003 system without recreating the environment and SK will advise whether it chooses to forgo a review of the first half of 2005;

4. Midway is to search the Twiki and List Server.

5. SK will advise Midway whether it wants Midway to limit its search of electronic data to a "sample" search of electronic data for particular dates.


Regards,

Gerald O. Sweeney, Jr.
BARNES & THORNBURG LLP
Suite 4400
One North Wacker Drive
Chicago, IL 60606-2809

(312) 214-4858 Direct
(630) 363-4565 Cell
(312) 357-1313 Main
(312) 759-5646 Fax

gsweeney@btlaw.com
www.btlaw.com



>>> "Timothy Hudson" <THudson@TDRLAWFIRM.com> 8/6/2008 5:01 PM >>>
Gerald,

# EXHIBIT 10

# Gerald Sweeney - RE: RE: Midway Games - Silicon Knights Record Search

| | |
|---|---|
| **From:** | "Timothy Hudson" <THudson@TDRLAWFIRM.com> |
| **To:** | "Gerald Sweeney" <Gerald.Sweeney@BTLaw.com> |
| **Date:** | 8/7/2008 1:34 PM |
| **Subject:** | RE: RE: Midway Games - Silicon Knights Record Search |
| **CC:** | "Anjali Kurani" <akurani@kksrr.com>, "Chris Holland" <cholland@kksrr.com>, "Garth Rosengren" <grosengren@kksrr.com>, "Daniel I. Konieczny" <DKonieczny@TDRLAWFIRM.com> |

Gerry,

Thank you for your email below regarding our telephone conference last night, certain aspects of which require clarification.

As a preliminary matter, attached please find a supplemental list of Alleged UE3 Problems that Silicon Knights provided to Epic. The attached list is a supplement to (but does not replace) the list of Alleged UE3 Problems that Silicon Knights previously provided to Midway. Both lists should be used in connection with Midway's preparation of its search protocols.

## Twiki and List Server Databases

Please search these databases. In addition, please provide us with Midway's search protocols for conducting its search of these databases. This will enable us to provide comment and guidance to the extent necessary to assist Midway is avoiding any unnecessary expense and/or burden. We would appreciate being apprised of Midway's progress in searching these databases.

## Employee Files Retained in Electronic Format

Your summary of our conversation below is incomplete. As we discussed last night, it remains Silicon Knights' position that Midway (and Midway alone) is obligated to determine who among its 800 employees is reasonably likely to have information responsive to the subpoena. Silicon Knights does not (and cannot) know how Midway, among other things, structures its operations and communication hierarchy, defines its employees' job descriptions, and allocates responsibilities among its employees. During our telephone conversation , you indicated that Midway still has not determined which of its employees is reasonably likely to have responsive information concerning Alleged UE3 Problems, and that Midway is reluctant to make any such determination because of the theoretical possibility that every employee could (theoretically) have such information. As I explained last night, Midway's position is unacceptable. Silicon Knights cannot make this determination on Midway's behalf.

Nevertheless, and without altering in any way Midway's obligation to determine who among its 800 employees is reasonably likely to have information responsive to the subpoena, I stated that Silicon Knights could suggest certain likely categories of Midway's employees that may have responsive information. Although Midway is the only party in a position to determine who among its employees is reasonably likely to have responsive information, such obvious categories may include (but may not be limited to) game designers, programmers, design and program managers, software engineers, senior executives, and anyone else who either: (1) interacted with Epic; (2) had either internal or

external (liaison) responsibility for developing *Unreal Tournament*; and/or (3) had responsibility for dealing with UE3 problems and complaints that Midway had (including identifying, fixing, creating supplemental and/or additional source code and/or interfacing with Epic regarding those problems and complaints). As we further discussed, we could speculate that certain categories of Midway's employees may not be reasonably likely to have responsive information, such as (potentially) accounting and financial personnel, secretaries, marketing personnel, and receptionists. Of course, without knowing Midway's personnel and their respective job descriptions, Silicon Knights can only speculate as to which Midway employees may or may not be reasonably likely to have responsive information. Silicon Knights cannot make such a determination on Midway's behalf. Midway alone must ultimately make such a determination, and has an obligation to do so.

Please search the files retained by Midway in electronic format for those employees that Midway believes are reasonably likely to have responsive information. In addition, please provide us with the search protocols that Midway intends utilize for such a search so that we can provide comment and guidance to the extent necessary to assist Midway in avoiding unnecessary expense and/or burden. We believe that Midway's proposal to search the files of all of its employees without first determining who among them are reasonably likely to have responsive information is facially unreasonable and unnecessarily expensive and burdensome.

## Email Search

Thank you for your clarification below regarding Midway's Exchange 2000 environment that Midway utilized through the first half of 2005. Without waiving our rights to later obtain relevant email information from the first half of 2005 by recreating the Exchange 2000 environment, Silicon Knights requests that Midway **not** recreate the Exchange 2000 environment and search for email information from the first half of 2005 at this time.

With respect to Midway's search for responsive emails from the second half of 2005 to the present, Silicon Knights proposes the following protocol to avoid unnecessary burden and expense.

1.    Search Midway's current active system for responsive emails.

2.    As for a potential search of each of Midway's email backup tapes that it creates on a daily basis, Silicon Knights may be amenable to Midway instituting a sampling protocol whereby Midway search the backup tapes created on a given day of each month from the date of Midway's implementation of its Exchange 2003 system in the second half of 2005 to the present. Such a sampling protocol will substantially reduce the amount of time and expense you previously estimated for the email search. However, before embarking on any such protocol-driven search, we need to understand why any backup tape searching is required. Specifically, based on the representations that Midway's Chief Technology Officer made at the recent hearing, the current, active e-mail system goes back to mid 2005. Please explain what additional information, if any, is stored on the backup tape drives that is not redundant (*i.e.*, the purpose of such storage systems) over the current, active e-mail system. Once we have that information, we can make a determination on whether any such tape drive searching is necessary.

I look forward to receiving your response.

Tim

Timothy Hudson
Attorney

Tabet DiVito & Rothstein LLC
The Rookery Building
209 South LaSalle St., 7th Floor
Chicago, Illinois 60604
(312) 762-9476 Telephone
(312) 762-9451 Facsimile
thudson@tdrlawfirm.com

This message is for the sole use of the intended recipient and may contain information that is privileged and/or confidential. If you are not the intended recipient of this message, please delete the message immediately and contact the sender. Thank you.

---

**From:** Gerald Sweeney [mailto:Gerald.Sweeney@BTLaw.com]
**Sent:** Wednesday, August 06, 2008 6:44 PM
**To:** Timothy Hudson
**Cc:** Anjali Kurani; Chris Holland; Garth Rosengren; Daniel I. Konieczny
**Subject:** RE: RE: Midway Games - Silicon Knights Record Search

Tim,

I called to confer on the discovery matters set forth in your letter received on August 6th and attached hereto.

The following is the summary of our discovery telephone conference this evening, August 6th:

1. SK will advise Midway by the end of the day on Thursday, August 7th whether, based on its experience in the video game business and with UE3, it will provide a description of the categories of employees for which SK wants Midway to perform a search of electronically stored employee data and Midway will suggest categories of employees for which it believes the search of electronically stored data is not likely to be productive;

2. The estimated cost of $75,000 provided by Midway in IV of the email of July 29th (below) is the estimated cost for recreating the Exchange 2000 environment at five (5) locations for the review of the tapes from the first half of 2005 - not for the Exchange 2003 system that was implemented in the second half of 2005 and is still in use today.

3. Midway does not have the capacity to review the tapes that predate the Exchange 2003 system without recreating the environment and SK will advise whether it chooses to forgo a review of the first half of 2005;

4. Midway is to search the Twiki and List Server.

5. SK will advise Midway whether it wants Midway to limit its search of electronic data to a "sample" search of electronic data for particular dates.


Regards,

Gerald O. Sweeney, Jr.
BARNES & THORNBURG LLP
Suite 4400
One North Wacker Drive
Chicago, IL 60606-2809

(312) 214-4858 Direct
(630) 363-4565 Cell
(312) 357-1313 Main
(312) 759-5646 Fax

gsweeney@btlaw.com
www.btlaw.com

>>> "Timothy Hudson" <THudson@TDRLAWFIRM.com> 8/6/2008 5:01 PM >>>
Gerald,

Please see the attached letter.

Tim

Timothy Hudson
Attorney

Tabet DiVito & Rothstein LLC
The Rookery Building
209 South LaSalle St., 7th Floor
Chicago, Illinois 60604
(312) 762-9476 Telephone
(312) 762-9451 Facsimile
thudson@tdrlawfirm.com

This message is for the sole use of the intended recipient and may contain information that is privileged and/or confidential. If you are not the
intended recipient of this message, please delete the message immediately and contact the sender. Thank you.

---

**From:** Gerald Sweeney [mailto:Gerald.Sweeney@BTLaw.com]
**Sent:** Tuesday, August 05, 2008 9:10 PM
**To:** cholland@kksrr.com; Daniel I. Konieczny; Timothy Hudson
**Cc:** Tracy Bulow
**Subject:** Fwd: RE: Midway Games - Silicon Knights Record Search

Mr. Hudson,

With respect to first full paragraph on page 2 of your letter of August 1, 2008 (attached), please confirm
that SK's position is that it will not pay Midway any of the costs incurred for the record production SK
has subpoenaed pertaining to Twiki and the List Server databases without a further order of Court.

If so, we need to schedule a hearing on this issue since Midway has timely complied with the Court's
request for an estimate of costs. We have provided a reasonable estimate and now two explanations based
on experience. **SK will be charged only for the costs of the search based on the hourly costs
and expenses stated.** FRCP 45 and the order expressly address costs.

With regard to the other issues you restate, the quantitative basis for the estimates are fully explained.
The databases to be searched have been identified. The estimates are based on expressly stated hourly
rates (contract vendors and Midway employees) multiplied by the estimated average time it will take to
review the archived tapes and the number of tapes that will need to be reviewed to cover the time frame for
which SK seeks records. As stated, Midway cannot search the first half of archived records for 2005 without
recreating the environment and there are obvious costs associated with doing so.

Further to your objections, there are approximately 800 employees whose electronic data will be reviewed
because that is the approximate number of employees who are employed by Midway, all of whom fall within
SK's request. As stated, it takes an estimated two hours on average at an expressly stated hourly rate to
set up, access and search the electronic files of each individual employee. If you want to limit the search to
a particular group of employees, such as designers and/or programers, etc., indicate that and Midway will
search in any manner you request. SK knows best, based on its own experience, how it can catagorize by
type(s) the employees it considers to be relevant to the issues it has with UE3. As previously stated, UE3
is the engine in Midway's games since 2005 and; therefore, the breadth of SK's search request is very
large.

Based on the foregoing - as well as the last two explanations - you have received Midway's best estimate of

what your request entails. There is no basis to make Midway's employees available for oral examinations. Midway is represented by counsel and if you have further specific questions, please provide them in writing and I will respond to each of them.


Regards,

Gerald O. Sweeney, Jr.
BARNES & THORNBURG LLP
Suite 4400
One North Wacker Drive
Chicago, IL 60606-2809

(312) 214-4858 Direct
(630) 363-4565 Cell
(312) 357-1313 Main
(312) 759-5646 Fax

gsweeney@btlaw.com
www.btlaw.com




>>> Gerald Sweeney 7/30/2008 11:57 AM >>>
Wednesday, July 30, 2008

Dan & Chris,

The explanation given to Silicon Knights on Friday July 25 was based on the best available information and estimates made by the responsible IT personnel at Midway upon recent experience. I appreciate that this is an extensive and surprisingly costly undertaking as Silicon Knights has made a request covering a 3.5 year period that implicates most, if not all of Midway's products during that time.

(1) $62 is the cost on an averaged hourly basis for employee time of the persons considered sufficiently qualified by Midway to locate and identify the technical-based material defined in your letter. For example, secretarial level employees would not have sufficient knowledge to perform this search. Midway needs to pay someone $62 an our because that is Midway's averaged cost to perform the search. When Midway indicates that certain information is immediately searchable, that means that those databases were available to be searched without locating tapes from off-site storage - not that the information is instantly available without any time required to search. The amount of time to search is based on recent experience locating documents under similar circumstances.

(2) Employees in different capacities may be relevant and we are not in a position to guess who may have made some comment pertaining to the subject matter of your request. If you want to limit the scope of the search to design personnel, please advise and we will limit the search to that category. Again, the estimate of two hours to set up and search on a per employee basis is an estimate based upon experience.

(3) It is necessary to recreate the 2005 environment because Midway no longer has the capacity to search the email for the first half of 2005 for the reasons stated. If you are aware of a vendor that has the assets described that it will make available to recreate the 2005 environment in five (5) locations for the limited purpose of this search, please advise. Midway is not currently aware of such a resource and would consider your suggestions.

(4) With respect to email, the system is backed up daily and the tapes are removed daily to off site storage. The $50/hr cost is an estimated vendor cost on an hourly basis. The time for reviewing each tape is based on experience reviewing such tapes. This is not material that is otherwise searchable without first retrieving it from an off site location.

(5) Given the extent of the document request, the estimate is based on what it might take for legal review. If it's actually less, than the charges will be less. Silicon Knights will only be charged in each instance what the actual equivalent cost is to Midway for searching and reviewing and producing in accordance with Silicon Knights requests.

Regards,

Gerald O. Sweeney, Jr.
BARNES & THORNBURG LLP
Suite 4400
One North Wacker Drive
Chicago, IL 60606-2809

(312) 214-4858 Direct
(630) 363-4565 Cell
(312) 357-1313 Main
(312) 759-5646 Fax

gsweeney@btlaw.com
www.btlaw.com

>>> "Daniel I. Konieczny" <DKonieczny@TDRLAWFIRM.com> 7/30/2008 10:32 AM >>>
Gerald:

Please see the attached correspondence.

Dan

---

**From:** Gerald Sweeney [mailto:Gerald.Sweeney@BTLaw.com]
**Sent:** Tuesday, July 29, 2008 3:40 PM
**To:** cholland@kksrr.com
**Cc:** Tracy Bulow; Daniel I. Konieczny
**Subject:** Midway Games - Silicon Knights Record Search

Chris,

Please advise whether SK wants Midway to start the search on VI described below **"Twiki and List Server Search"** - which are the databases available on-site and immediately searchable.  I will be out of the office Friday returning on Tuesday, August 4th.

*******************

Pursuant to the Court's order of July 23, 2008, Midway hereby informs counsel for Silicon Knights as to how far its active database goes back, how many tapes it has for the term of the license agreement with Epic Games and the time and expense it will involve to search the active and archival databases for responsive information.

This is a significant undertaking and will require an immediate response and an outside contractor if there is any possibility of meeting the Court's production date of August 22, 2008. As a preliminary matter, the email system is backed up daily and removed to off site storage on a daily basis.

## I. Search Terms:

Search terms to be derived from the yellow highlighted sections of the PDF attachment provided by Silicon Knights counsel on July 23, 2008 relating to Midway's experience with UE3.

## II. Time Frame of Search:

The inception date of the Midway UE3 Agreement - January 14, 2005 to present.

## III. Document Sources to be Searched:*

1. Email (archived daily)
2. Twiki (immediately searchable)
3. List Server (immediately searchable)
4. Employee Files Retained in Electronic Format

* Chat Tool Instant Messenger (not retained), Unreal Development Site (not retained)

## IV. Relevant Email Background Information:

In the second half of 2005, Midway's email system migrated from Exchange 2000 to current Exchange 2003 system.

To search the data on Exchange, Midway will have to recreate the Exchange 2000 environment at five (5) locations: L.A., Austin, San Diego, Chicago, & Seattle.

This requires purchasing hardware and software and set up at each location consisting of a Server, Tape Drive, Microsoft Exchange Program, Exchange Search Utility Software & Tape Drive Software at an estimated cost of $15,000 per location for a total cost of approximately **$75,000.**

It is estimated that there are 5000 email tapes in total that will be reviewed by an outside contractor at an estimated cost of approximating $50/hr. X 8 hours X 500 man days (averaging review of 10 tapes per person per day) at a cost of approximately **$200,000.** (attorney fees not included)

## V. Search of Employee Files Retained in Electronic Format:

800 employee files estimated at 2/hrs. each X Midway averaged hourly rate of $62 = **$99,200.** (attorney fees not included)

## VI. Twiki and List Server Search

$62/hr X 200 hrs = **$12,400.** (attorney fees not included)

## VII. Attorney fees/cost for search set up, document review and redaction of subset for production

Estimated on an average rate of $325/hr. X 160 hours = **$52,000.**

---

**CONFIDENTIALITY NOTICE: This email and any attachments are for the exclusive and confidential use of the intended recipient. If you are not the intended recipient, please do not read, distribute or take action in reliance upon this message. If you have received this in error, please notify us immediately by return email and promptly delete this message and its attachments from your computer system. We do not waive attorney-client or work product privilege by the transmission of this message. TAX ADVICE NOTICE: Tax advice, if any, contained in this e-mail does not constitute a "reliance opinion" as defined in IRS Circular 230**

and may not be used to establish reasonable reliance on the opinion of counsel for the purpose of avoiding the penalty imposed by Section 6662A of the Internal Revenue Code. The firm provides reliance opinions only in formal opinion letters containing the signature of a partner.

---

**CONFIDENTIALITY NOTICE:** This email and any attachments are for the exclusive and confidential use of the intended recipient. If you are not the intended recipient, please do not read, distribute or take action in reliance upon this message. If you have received this in error, please notify us immediately by return email and promptly delete this message and its attachments from your computer system. We do not waive attorney-client or work product privilege by the transmission of this message. **TAX ADVICE NOTICE:** Tax advice, if any, contained in this e-mail does not constitute a "reliance opinion" as defined in IRS Circular 230 and may not be used to establish reasonable reliance on the opinion of counsel for the purpose of avoiding the penalty imposed by Section 6662A of the Internal Revenue Code. The firm provides reliance opinions only in formal opinion letters containing the signature of a partner.

---

**CONFIDENTIALITY NOTICE:** This email and any attachments are for the exclusive and confidential use of the intended recipient. If you are not the intended recipient, please do not read, distribute or take action in reliance upon this message. If you have received this in error, please notify us immediately by return email and promptly delete this message and its attachments from your computer system. We do not waive attorney-client or work product privilege by the transmission of this message. **TAX ADVICE NOTICE:** Tax advice, if any, contained in this e-mail does not constitute a "reliance opinion" as defined in IRS Circular 230 and may not be used to establish reasonable reliance on the opinion of counsel for the purpose of avoiding the penalty imposed by Section 6662A of the Internal Revenue Code. The firm provides reliance opinions only in formal opinion letters containing the signature of a partner.

# EXHIBIT 11

## Tracy Bulow - RE: RE: Midway Games - Silicon Knights Record Search

| | |
|---|---|
| **From:** | Gerald Sweeney |
| **To:** | Hudson, Timothy |
| **Date:** | 8/7/2008 6:00:42 PM |
| **Subject:** | RE: RE: Midway Games - Silicon Knights Record Search |
| **CC:** | Holland, Chris;  Konieczny, Daniel I.;  Kurani, Anjali;  Rosengren, Garth |

August 7, 2008

Tim, Chris, Dan, Anjali, Garth, et al.

In response to Tim's email, there is a preliminary question of what constitutes the <u>final</u> list of "UE3 Problems". To search electronic databases without a final list will result in duplicating the search at SK's cost.

1. **List of UE3 Problems** - I received your supplemental list today. However, I checked with the NC proceedings and understand that the list has not been finalized and it may not be finalized until August 13th by which time Epic is to have responded to SK's supplemental list. **Am I correct that this is not the final list and the time frame for the final list extends to August 13th?**

Assuming that the supplemental list is the one to which Epic and SK ultimately agree on or before August 13th, please confirm that the highlighted yellow sections in the July 11, 2008 letter (attached) and the supplement (attached) received today, August 7, 2008, are collectively the final list "UE3 Problems".

2. **Search Terms** - Based on SK's list of alleged "UE3 Problems" provided, please submit the search terms SK wants Midway to use in searching its electronic databases.  This will eliminate any uncertainty up front. Otherwise, it requires Midway to abstract the list and submit it back to SK.  SK is in the best position to do that rather than for Midway to spend its time guessing at what SK wants and submitting it for SK's review and approval.  Simply put, provide the terms you want searched and that's what will be used.

3. **UE3 License Agreement** - Epic produced Midway's UE3 licences agreement to SK pursuant to the court's order in NC.  Accordingly, Midway will not duplicate the production of the license agreement.

4. **Twicki and List Server** - with your advice of August 7th, we will search those databases after we receive from SK the search terms based on the <u>final</u> list of "UE3 Problems".

5. **Employee Files** - based on your search terms derived from the <u>final</u> list "UE3 Problems" and advice in your email of August 7th, Midway will search the electronic files of game designers, programmers, design and program managers, software engineers, senior executives, and anyone else who can be reasonably determined to have either: (1) interacted with Epic; (2) had either internal or external (liaison) responsibility for developing *Unreal Tournament*; and/or (3) had responsibility for dealing with UE3 problems and complaints as described in the search terms submitted by SK based on the <u>final</u> list of "UE3 Problems".

We are in agreement with your statement that, as we further discussed, categories of Midway's employees may not be reasonably likely to have responsive information, such as accounting and financial personnel, secretaries, marketing personnel, and receptionists.  We are also in agreement with your statement that since Silicon Knights cannot make such a determination on Midway's behalf, Midway is left to make such a determination. Midway offered to search all employees files for responsive information; however that offer was rejected by SK. Given the potential costs and SK's clearly stated objection to costs and its contention to argue about whether Midway has been prudent, we will eliminate those categories of employees that "may not be reasonably likely to have responsive information."

6. **Email** - Based on your representations, SK has not requested Midway to search email prior to the implementation of the Exchange 2003 system.

With regard to searching the "current" system, it is backed up daily and removed from the premises. To the extent that searching email can be done without accessing tapes, it will be done if practical and more expeditious than searching tapes. (Please note that Mr. Weilbacker's job function is Chief Technology Officer not Information Technology.)  Finally, If you want a sample search of archived data, you need to provide the criteria now.

Regards,

Gerald O. Sweeney, Jr.
BARNES & THORNBURG LLP
Suite 4400
One North Wacker Drive
Chicago, IL 60606-2809

(312) 214-4858 Direct
(630) 363-4565 Cell
(312) 357-1313 Main
(312) 759-5646 Fax

gsweeney@btlaw.com
www.btlaw.com

>>> "Timothy Hudson" <THudson@TDRLAWFIRM.com> 8/7/2008 1:33 PM >>>
Gerry,

Thank you for your email below regarding our telephone conference last night, certain aspects of which require clarification.

As a preliminary matter, attached please find a supplemental list of Alleged UE3 Problems that Silicon Knights provided to Epic.  The attached list is a supplement to (but does not replace) the list of Alleged UE3 Problems that Silicon Knights previously provided to Midway. Both lists should be used in connection with Midway's preparation of its search protocols.

## Twiki and List Server Databases

Please search these databases.  In addition, please provide us with Midway's search protocols for conducting its search of these databases.  This will enable us to provide comment and guidance to the extent necessary to assist Midway is avoiding any unnecessary expense and/or burden. We would appreciate being apprised of Midway's progress in searching these databases.

## Employee Files Retained in Electronic Format

Your summary of our conversation below is incomplete.  As we discussed last night, it remains Silicon Knights' position that Midway (and Midway alone) is obligated to determine who among its 800 employees is reasonably likely to have information responsive to the

subpoena.  Silicon Knights does not (and cannot) know how Midway, among other
things, structures its operations and communication hierarchy, defines its employees' job
descriptions, and allocates responsibilities among its employees.  During our telephone
conversation , you indicated that Midway still has not determined which of its employees is
reasonably likely to have responsive information concerning Alleged UE3 Problems, and that
Midway is reluctant to make any such determination because of the theoretical possibility that
every employee could (theoretically) have such information.  As I explained last
night, Midway's position is unacceptable.  Silicon Knights cannot make this determination on
Midway's behalf.

Nevertheless, and without altering in any way Midway's obligation to determine who among
its 800 employees is reasonably likely to have information responsive to the subpoena, I
stated that Silicon Knights could suggest certain likely categories of Midway's employees that
may have responsive information. Although Midway is the only party in a position to
determine who among its employees is reasonably likely to have responsive information,
such obvious categories may include (but may not be limited to) game designers,
programmers, design and program managers, software engineers, senior executives, and
anyone else who either: (1) interacted with Epic; (2) had either internal or external (liaison)
responsibility for developing *Unreal Tournament*; and/or (3) had responsibility for dealing with UE3
problems and complaints that Midway had (including identifying, fixing, creating supplemental and/or
additional source code and/or interfacing with Epic regarding those problems and complaints).  As we
further discussed, we could speculate that certain categories of Midway's employees may not
be reasonably likely to have responsive information, such as (potentially) accounting and
financial personnel, secretaries, marketing personnel, and receptionists.  Of course, without
knowing Midway's personnel and their respective job descriptions, Silicon Knights can only
speculate as to which Midway employees may or may not be reasonably likely to have
responsive information.  Silicon Knights cannot make such a determination on Midway's
behalf.  Midway alone must ultimately make such a determination, and has an obligation to do
so.

Please search the files retained by Midway in electronic format for those employees that
Midway believes are reasonably likely to have responsive information.  In addition, please
provide us with the search protocols that Midway intends utilize for such a search so that we
can provide comment and guidance to the extent necessary to assist Midway in avoiding
unnecessary expense and/or burden.  We believe that Midway's proposal to search the files
of all of its employees without first determining who among them are reasonably likely to have
responsive information is facially unreasonable and unnecessarily expensive and
burdensome.

**Email Search**

Thank you for your clarification below regarding Midway's Exchange 2000 environment
that Midway utilized through the first half of 2005.  Without waiving our rights to later obtain
relevant email information from the first half of 2005 by recreating the Exchange
2000 environment, Silicon Knights requests that Midway **not** recreate the Exchange 2000
environment and search for email information from the first half of 2005 at this time.

With respect to Midway's search for responsive emails from the second half of 2005 to the
present, Silicon Knights proposes the following protocol to avoid unnecessary burden and
expense.

1.    Search Midway's current active system for responsive emails.

2.    As for a potential search of each of Midway's email backup tapes that it creates on a daily basis, Silicon Knights may be amenable to Midway instituting a sampling protocol whereby Midway search the backup tapes created on a given day of each month from the date of Midway's implementation of its Exchange 2003 system in the second half of 2005 to the present.  Such a sampling protocol will substantially reduce the amount of time and expense you previously estimated for the email search.  However, before embarking on any such protocol-driven search, we need to understand why any backup tape searching is required.  Specifically, based on the representations that Midway's Chief Technology Officer made at the recent hearing, the current, active e-mail system goes back to mid 2005.  Please explain what additional information, if any, is stored on the backup tape drives that is not redundant (*i.e.*, the purpose of such storage systems) over the current, active e-mail system.  Once we have that information, we can make a determination on whether any such tape drive searching is necessary.

I look forward to receiving your response.


Tim

Timothy Hudson
Attorney

Tabet DiVito & Rothstein LLC
The Rookery Building
209 South LaSalle St., 7th Floor
Chicago, Illinois 60604
(312) 762-9476 Telephone
(312) 762-9451 Facsimile
thudson@tdrlawfirm.com

This message is for the sole use of the intended recipient and may contain information that is privileged and/or confidential.  If you are not the intended recipient of this message, please delete the message immediately and contact the sender.  Thank you.

---

**From:** Gerald Sweeney [mailto:Gerald.Sweeney@BTLaw.com]
**Sent:** Wednesday, August 06, 2008 6:44 PM
**To:** Timothy Hudson
**Cc:** Anjali Kurani; Chris Holland; Garth Rosengren; Daniel I. Konieczny
**Subject:** RE: RE: Midway Games - Silicon Knights Record Search

Tim,

I called to confer on the discovery matters set forth in your letter received on August 6th and attached hereto.

The following is the summary of our discovery telephone conference this evening, August 6th:

1. SK will advise Midway by the end of the day on Thursday, August 7th whether, based on its experience in the video game business and with UE3, it will provide a description of the categories of employees for which SK wants Midway to perform a search of electronically stored employee data and Midway will suggest categories of employees for which it believes the search of electronically stored data is not likely to be productive;

2. The estimated cost of $75,000 provided by Midway in IV of the email of July 29th (below) is the estimated cost for recreating the Exchange 2000 environment at five (5) locations for the review of the tapes from the first half of 2005 - not for the Exchange 2003 system that was implemented in the second half of 2005 and is still in use today.

3. Midway does not have the capacity to review the tapes that predate the Exchange 2003 system without recreating the environment and SK will advise whether it chooses to forgo a review of the first half of 2005;

4. Midway is to search the Twiki and List Server.

5. SK will advise Midway whether it wants Midway to limit its search of electronic data to a "sample" search of electronic data for particular dates.


Regards,

Gerald O. Sweeney, Jr.
BARNES & THORNBURG LLP
Suite 4400
One North Wacker Drive
Chicago, IL 60606-2809

(312) 214-4858 Direct
(630) 363-4565 Cell
(312) 357-1313 Main
(312) 759-5646 Fax

gsweeney@btlaw.com
www.btlaw.com




>>> "Timothy Hudson" <THudson@TDRLAWFIRM.com> 8/6/2008 5:01 PM >>>
Gerald,

Please see the attached letter.

Tim

Timothy Hudson
Attorney

Tabet DiVito & Rothstein LLC
The Rookery Building
209 South LaSalle St., 7th Floor
Chicago, Illinois 60604
(312) 762-9476 Telephone
(312) 762-9451 Facsimile
thudson@tdrlawfirm.com

This message is for the sole use of the intended recipient and may contain information that is privileged and/or confidential.  If you are not the intended recipient of this message, please delete the message immediately and contact the sender.  Thank you.

---

**From:** Gerald Sweeney [mailto:Gerald.Sweeney@BTLaw.com]
**Sent:** Tuesday, August 05, 2008 9:10 PM
**To:** cholland@kksrr.com; Daniel I. Konieczny; Timothy Hudson
**Cc:** Tracy Bulow
**Subject:** Fwd: RE: Midway Games - Silicon Knights Record Search

Mr. Hudson,

With respect to first full paragraph on page 2 of your letter of August 1, 2008 (attached), please confirm that SK's position is that it will not pay Midway any of the costs incurred for the record production SK has subpoenaed pertaining to Twiki and the List Server databases without a further order of Court.

If so, we need to schedule a hearing on this issue since Midway has timely complied with the Court's request for an estimate of costs.  We have provided a reasonable estimate and now two explanations based on experience.  **SK will be charged only for the costs of the search based on the hourly costs and expenses stated.** FRCP 45 and the order expressly address costs.

With regard to the other issues you restate, the quantitative basis for the estimates are fully explained. The databases to be searched have been identified.  The estimates are based on expressly stated hourly rates (contract vendors and Midway employees) multiplied by the estimated average time it will take to review the archived tapes and the number of tapes that will need to be reviewed to cover the time frame for which SK seeks records. As stated, Midway cannot search the first half of archived records for 2005 without recreating the environment and there are obvious costs associated with doing so.

Further to your objections, there are approximately 800 employees whose electronic data will be reviewed because that is the approximate number of employees who are employed by Midway, all of whom fall within SK's request.  As stated, it takes an estimated two hours on average at an expressly stated hourly rate to set up, access and search the electronic files of each individual employee.  If you want to limit the search to a particular group of employees, such as designers and/or programers, etc., indicate that and Midway will search in any manner you request.  SK knows best, based on its own experience, how it can catagorize by type (s) the employees it considers to be relevant to the issues it has with UE3.  As previously stated, UE3 is the engine in Midway's games since 2005 and; therefore, the breadth of SK's search request is very large.

Based on the foregoing - as well as the last two explanations - you have received Midway's best estimate of what your request entails. There is no basis to make Midway's employees available for oral examinations. Midway is represented by counsel and if you have further specific questions, please provide them in writing and I will respond to each of them.


Regards,

Gerald O. Sweeney, Jr.
BARNES & THORNBURG LLP
Suite 4400
One North Wacker Drive
Chicago, IL 60606-2809

(312) 214-4858 Direct
(630) 363-4565 Cell
(312) 357-1313 Main
(312) 759-5646 Fax

gsweeney@btlaw.com
www.btlaw.com


>>> Gerald Sweeney 7/30/2008 11:57 AM >>>
Wednesday, July 30, 2008

Dan & Chris,

The explanation given to Silicon Knights on Friday July 25 was based on the best available information and estimates made by the responsible IT personnel at Midway upon recent experience. I appreciate that this is an extensive and surprisingly costly undertaking as Silicon Knights has made a request covering a 3.5 year period that implicates most, if not all of Midway's products during that time.

(1) $62 is the cost on an averaged hourly basis for employee time of the persons considered sufficiently qualified by Midway to locate and identify the technical-based material defined in your letter.  For example, secretarial level employees would not have sufficient knowledge to perform this search. Midway needs to pay someone $62 an our because that is Midway's averaged cost to perform the search. When Midway indicates that certain information is immediately searchable, that means that those databases were available to be searched without locating tapes from off-site storage - not that the information is instantly available without any time required to search.  The amount of time to search is based on recent experience locating documents under similar circumstances.

(2) Employees in different capacities may be relevant and we are not in a position to guess who may have made some comment pertaining to the subject matter of your request.  If you want to limit the scope of the search to design personnel, please advise and we will limit the search to that category. Again, the estimate of two hours to set up and search on a per employee basis is an estimate based upon experience.

(3) It is necessary to recreate the 2005 environment because Midway no longer has the capacity to search the email for the first half of 2005 for the reasons stated.  If you are aware of a vendor that has the assets described that it will make available to recreate the 2005 environment in five (5) locations for the limited purpose of this search, please advise.  Midway is not currently aware of such a resource and would consider your suggestions.

(4) With respect to email, the system is backed up daily and the tapes are removed daily to off site storage. The $50/hr cost is an estimated vendor cost on an hourly basis. The time for reviewing each tape is based on experience reviewing such tapes.  This is not material that is otherwise searchable without first retrieving it from an off site location.

(5) Given the extent of the document request, the estimate is based on what it might take for legal review. If it's actually less, than the charges will be less. Silicon Knights will only be charged in each instance what the actual equivalent cost is to Midway for searching and reviewing and producing in accordance with Silicon Knights requests.

Regards,

Gerald O. Sweeney, Jr.
BARNES & THORNBURG LLP
Suite 4400
One North Wacker Drive
Chicago, IL 60606-2809

(312) 214-4858 Direct
(630) 363-4565 Cell
(312) 357-1313 Main
(312) 759-5646 Fax

gsweeney@btlaw.com

www.btlaw.com

>>> "Daniel I. Konieczny" <DKonieczny@TDRLAWFIRM.com> 7/30/2008 10:32 AM >>>
Gerald:

Please see the attached correspondence.

Dan

_____

**From:** Gerald Sweeney [mailto:Gerald.Sweeney@BTLaw.com]
**Sent:** Tuesday, July 29, 2008 3:40 PM
**To:** cholland@kksrr.com
**Cc:** Tracy Bulow; Daniel I. Konieczny
**Subject:** Midway Games - Silicon Knights Record Search

Chris,

Please advise whether SK wants Midway to start the search on VI described below **"Twiki and List Server Search"** - which are the databases available on-site and immediately searchable.  I will be out of the office Friday returning on Tuesday, August 4th.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Pursuant to the Court's order of July 23, 2008, Midway hereby informs counsel for Silicon Knights as to how far its active database goes back, how many tapes it has for the term of the license agreement with Epic Games and the time and expense it will involve to search the active and archival databases for responsive information.

This is a significant undertaking and will require an immediate response and an outside contractor if there is any possibility of meeting the Court's production date of August 22, 2008. As a preliminary matter, the email system is backed up daily and removed to off site storage on a daily basis.

**I. Search Terms:**

Search terms to be derived from the yellow highlighted sections of the PDF attachment provided by Silicon Knights counsel on July 23, 2008 relating to Midway's experience with UE3.

**II. Time Frame of Search:**

The inception date of the Midway UE3 Agreement - January 14, 2005 to present.

**III. Document Sources to be Searched:***

1. Email (archived daily)
2. Twiki (immediately searchable)
3. List Server (immediately searchable)
4. Employee Files Retained in Electronic Format

* Chat Tool Instant Messenger (not retained), Unreal Development Site (not retained)

**IV. Relevant Email Background Information:**

In the second half of 2005, Midway's email system migrated from Exchange 2000 to current Exchange 2003 system.

To search the data on Exchange, Midway will have to recreate the Exchange 2000 environment at five (5) locations: L.A., Austin, San Diego, Chicago, & Seattle.

This requires purchasing hardware and software and set up at each location consisting of a Server, Tape Drive, Microsoft Exchange Program, Exchange Search Utility Software & Tape Drive Software at an estimated cost of $15,000 per location for a total cost of approximately **$75,000**.

It is estimated that there are 5000 email tapes in total that will be reviewed by an outside contractor at an estimated cost of approximaing $50/hr. X 8 hours X 500 man days (averaging review of 10 tapes per person per day) at a cost of approximately **$200,000**. (attorney fees not included)

### V. Search of Employee Files Retained in Electronic Format:

800 employee files estimated at 2/hrs. each X Midway averaged hourly rate of $62 = **$99,200**. (attorney fees not included)

### VI. Twiki and List Server Search

$62/hr X 200 hrs = **$12,400**. (attorney fees not included)

### VII. Attorney fees/cost for search set up, document review and redaction of subset for production

Estimated on an average rate of $325/hr. X 160 hours = **$52,000**.

---

**CONFIDENTIALITY NOTICE: This email and any attachments are for the exclusive and confidential use of the intended recipient. If you are not the intended recipient, please do not read, distribute or take action in reliance upon this message. If you have received this in error, please notify us immediately by return email and promptly delete this message and its attachments from your computer system. We do not waive attorney-client or work product privilege by the transmission of this message. TAX ADVICE NOTICE: Tax advice, if any, contained in this e-mail does not constitute a "reliance opinion" as defined in IRS Circular 230 and may not be used to establish reasonable reliance on the opinion of counsel for the purpose of avoiding the penalty imposed by Section 6662A of the Internal Revenue Code. The firm provides reliance opinions only in formal opinion letters containing the signature of a partner.**

---

**CONFIDENTIALITY NOTICE: This email and any attachments are for the exclusive and confidential use of the intended recipient. If you are not the intended recipient, please do not read, distribute or take action in reliance upon this message. If you have received this in error, please notify us immediately by return email and promptly delete this message and its attachments from your computer system. We do not waive attorney-client or work product privilege by the transmission of this message. TAX ADVICE NOTICE: Tax advice, if any, contained in this e-mail does not constitute a "reliance opinion" as defined in IRS Circular 230 and may not be used to establish reasonable reliance on the opinion of counsel for the purpose of avoiding the penalty imposed by Section 6662A of the Internal Revenue Code. The firm provides reliance opinions only in formal opinion letters containing the signature of a partner.**

**CONFIDENTIALITY NOTICE: This email and any attachments are for the exclusive and confidential use of the intended recipient. If you are not the intended recipient, please do not read, distribute or take action in reliance upon this message. If you have received this in error, please notify us immediately by return email and promptly delete this message and its attachments from your computer system. We do not waive attorney-client or work product privilege by the transmission of this message. TAX ADVICE NOTICE: Tax advice, if any, contained in this e-mail does not constitute a "reliance opinion" as defined in IRS Circular 230 and may not be used to establish reasonable reliance on the opinion of counsel for the purpose of avoiding the penalty imposed by Section 6662A of the Internal Revenue Code. The firm provides reliance opinions only in formal opinion letters containing the signature of a partner.**

**SK's Supplemental List of Alleged UE3 Problems**

1) **UE3 Licensee Support from Epic**

    ...

    h) The following problems associated with Epic's practice of "deprecating" content (by which SK means Epic's practice of changing the way something should be built in order to be compatible with UE3 without updating the sample builds provided by Epic and without informing the licensee of why the previous method would no longer be supported):

    i) Repeated lighting model changes requiring that environment be re-lit/flagged to the new "correct" method of building assets. Changes included:

    (1) Dynamic lighting changed to light maps

    (2) Lightmaps changed to vertex lighting

    (3) Setting flags on environment pieces for collision detection

    (4) Setting flags on lights for shadow casting vs. not shadow casting

    (5) Pooled particles vs. dynamically allocated particles

    ii) The introduction of graphics systems and functionalities that had to be removed or restricted to achieve acceptable frame rates during in-game performance.

2) **UE3 Performance Issues**

    a) The following problems associated with how UE3 allocates the memory made available by either the PS3 or Xbob360 to the various engine systems of UE3

    i) Garbage collection:

    (1) CPU performance for cleanup of memory

    (2) Memory wasted and unnecessary overhead due to frequency of garbage collection

    (3) Difficulty in identifying memory overwrites and bad pointer accesses due to garbage collection latency

    (4) UE3 systems that would allocate memory at the outset of a run and then fail to free that memory during the course of the game.

    b) The following problems associated with how UE3 implements streaming:

    i) CPU impact of streaming – time slice mechanism

    ii) Memory spikes due to garbage collection not being able to execute while streaming – coupled with the longer load times due to the lack of a seek free loading path

    iii) Multiple load paths complicated optimization/inhibited SK's ability to understand/fix the issue.

    iv) Lack of utilization of the multithreaded console architecture

    v) Failure to deliver "Gemini" (threaded renderer)

    (1) Repeatedly told it was to be delivered on time. Then significantly delayed just before delivery – impacted ability to mitigate risk (Gemini was supposed to be part of general multithreaded support)

    (2) CPU DirectX performance – pushbuffers were supposed to mitigate per object render call overhead

    (3)    Inefficient shader management causing stalls and memory allocations that are not freed.

c) The following problems associated with UE3's script performance:
 i) CPU performance of the scripting language – significantly slower then native C++ much slower on the XBOX then on the PC.
 ii) Inability to debug script on console platforms
 iii) Header autogeneration requiring an executable to be built, which, in turn, required a header that couldn't be autogenerated

d) The following problems associated with UE3's editor performance:
 i) Manual data import
 ii) Difficulty deleting resources
 iii) Competition for binary package files which impeded artist workflow
 iv) Automatic removal of references from packages when all of the assets were not available

...

f) The following problems associated with UE3's dataflow/workflow architecture governing editor usage and the means by which a developer can get data into a game using UE3:
 i) No guard rails on Kismet
 ii) Matinee incomplete
 iii) Inability to stream Matinee data
 iv) Impossible to tell from the binary file data what changed from one revision to the next. Controlling the data flow was difficult because of inter-package dependencies that were not apparent to the users.
 v) Difficulty determining what data needed to be cooked to the target platform and which packages were used.
 vi) Tools did not exist for determining what would be loaded from a package, and when it would be loaded, making memory tracking difficult.

...

i) The following problems associated with Epic's general programming practice:
 i. Initial problems with UE3 when it was first provided to SK
    (1) The unstable and error-ridden nature of the code;
    (2) The presence of excessive "legacy" code from previous versions of the Unreal Engine;
    (3) The code in UE3 was inelegant and overly complicated.
 ii. UE3 was not created in a modular fashion.
 iii. Problems experienced by SK during its use of UE3:
    (1) UE3 was not architected to allow it to be readily used for different types of games.
    (2) Painful merges cause by engine changes that removed or changed significant functionality.
    (3) Designation of "game level features"
    (4) No attempt at encapsulation by Epic caused SK to have to redo significant amounts of work due to changes by Epic.

(5) Disorganized graphics pipeline making it difficult for developers to add their own draws.

(6) Importation of functions and systems into UE3 without adequate modification to ensure that those functions and systems were compatible with UE3.

(7) Abandonment of systems and functionalities that Epic represented it would implement in UE3 without informing its licensees that it would not implement those systems and functionalities.

(8) Prioritization of development of UE3 to suit Epic's own games, rather than the needs of its licensees.

(9) Unpredictable calls on parent functions due to UE3's implementation of inheritance in its state code.

(10) Failure to include safety checks or helpful error messages indicating why a level or package would no longer open once a change was made to that level or package.

(11) Failure to make modifications and features that it implemented in its own games available to licensees.

(12) Lack of documentation

(13) The release of revisions to UE3 that were inadequately tested

(14) The immaturity of the UE3 code base from 2005-2007 such that it was impractical for a developer to make changes to that codebase because those changes would be rendered incompatible by subsequent versions of UE3.

## 2) Communications with UE3 Licensees

a) Epic's representations about the current performance of UE3 during any given point in the development cycle of UE3 on the PS3 and on the Xbox360.

b) Epic's representations about the current state of development of UE3 during any given point in the development cycle of UE3 relative to the complete development cycle for UE3 on the PS3 and on the Xbox360.

c) Epic's representations about the projected performance of UE3 as the development cycle of UE3 progressed on the PS3 and on the Xbox360.

d) Epic's representations about how to best leverage UE3 in developing games based thereon for the PS3 and on the Xbox360.

**TABET | DIVITO | ROTHSTEIN**

Tabet DiVito & Rothstein LLC
The Rookery Building
209 S. LaSalle St. 7th floor
Chicago, Illinois 60604
312-762-9450 Telephone
312-762-9451 Facsimile
www.tdrlawfirm.com

Writer's direct dial:
  (312) 762-9456

Writer's email:
  dkonieczny@tdrlawfirm.com

July 11, 2008

_By e-mail_

Gerald O. Sweeney, Jr.
Barnes & Thornburg LLP
One North Wacker Drive
Suit 4400
Chicago, IL  60606

    Re:    _Silicon Knights, Inc. v. Epic Games, Inc._, No. 08-cv-00782
             **(subpoena directed to Midway Games Inc. by Silicon Knights, Inc.)**

Dear Gerald:

    As we discussed by telephone today, in furtherance of the Court's directive to meet and confer, enclosed please find a list of "Alleged UE3 Problems."  After you have had an opportunity to review it, please contact us to discuss.

             Very truly yours,

             Daniel I. Konieczny

DIK/maslwg
Enclosure

Cc:    Christopher T. Holland (by e-mail)
       Anjali Kumar Kurani (by e-mail)
       Garth A. Rosengren (by e-mail)

1) **UE3 Licensee Support from Epic**
   a) Lack of any and/or timely documentation necessary to assist licensees in achieving compatibility between UE3 and the licensee's games
   b) Lack of visibility for licensees into Epic's development schedule for UE3
   c) General unresponsiveness and/or out right dismissal of suggestions and requests from licensees
   d) Epic's decisions about what UE3 functionality was to be considered "game-level" versus "engine-level"
   e) Epic's decisions about what UE3 functionality was to be considered an optimization versus a feature of UE3
   f) Epic's development of UE3 at variance with Microsoft's TCR's for games being developed on the Xbox360
   g) Epic's advice that licensees develop UE3 to achieve compatibility with their games in a manner distinct from Epic's use of UE3 with *Gears of War* and/or *Unreal Tournament 3*
   h) Epic's practice of "deprecating" content

2) **UE3 Performance Issues**
   a) Memory allocation and usage
   b) Streaming, including without limitation the occurrence of memory spikes during loading, the absence and/or delay in providing asynchronous streaming, UE3's use of multiple load paths, and the absence and/or delay in providing a seek-free load path, the absence and/or delay in providing pushbuffer support
   c) Script performance, including without limitation, debugging, syntax, organization, header autogeneration
   d) Editor performance, including without limitation, backward compatibility, data import process, resource management
   e) Renderer performance, including without limitation optimization of the renderer to hardware of the PS3 and the Xbox360, achievable frame rates, rendering of indoor and outdoor terrain, and lighting
   f) Dataflow/workflow architecture governing editor usage and the means by which a licensee can get data into a game using UE3, including without limitation the binary file format used for UE3 and the implementation and integration of Kismet and Matinee in UE3
   g) Code churn from a given UE3 code-drop to the next to the next code drop by Epic, including without limitation Epic's addition, deletion, or alteration of files from one version of UE3 to the next such that an licensee is unable to assure that work done on one version of UE3 will be compatible with the next version of UE3 released by Epic
   h) Multithreading (including SPU utilization on the PS3)
   i) General programming practice, including without limitation code structure, coding standards, API, engine-level vs. game-level abstraction, changes in the underlying engine code without regard for the impact of those changes on the licensee's code necessary to achieve compatibility with the game in development.

3) **Communications with UE3 Licensees**
   a) Epic's representations about the current performance of UE3 during any given point in the development cycle of UE3 on the PS3 and on the Xbox360
   b) Epic's representations about the current state of development of UE3 during any given point in the development cycle of UE3 relative to the complete development cycle for UE3 on the PS3 and on the Xbox360
   c) Epic's representations about the projected performance of UE3 as the development cycle of UE3 progressed on the PS3 and on the Xbox360
   d) Epic's representations about how to best leverage UE3 in developing games based thereon for the PS3 and on the Xbox360

4) **Failure to deliver/meet roadmap for development of UE3**
   a) Licensees provided with a very short "look ahead" on Epic's schedule for the development of UE3 on the PS3 and on the Xbox360
   b) Epic's practice of frequently changing the roadmap for development of UE3 on the PS3 and on the Xbox360, including without limitation Epic's tendency to remove features and/or reprioritize features of UE3
   c) Epic's practice of prioritizing "road-mapped" features of UE3 on the PS3 and on the Xbox360 arbitrarily and/or based on the needs of certain titles
   d) Epic's failure to deliver a commercially functional engine on the Xbox360 and PS3 within six months of the release of the final development kit for those respective platforms

# EXHIBIT 12

## Gerald Sweeney - RE: RE: Midway Games - Silicon Knights Record Search

| | |
|---|---|
| **From:** | "Timothy Hudson" <THudson@TDRLAWFIRM.com> |
| **To:** | "Gerald Sweeney" <Gerald.Sweeney@BTLaw.com> |
| **Date:** | 8/8/2008 2:55 PM |
| **Subject:** | RE: RE: Midway Games - Silicon Knights Record Search |
| **CC:** | "Anjali Kurani" <akurani@kksrr.com>, "Chris Holland" <cholland@kksrr.com>, "Garth Rosengren" <grosengren@kksrr.com>, "Daniel I. Konieczny" <DKonieczny@TDRLAWFIRM.com> |

Gerry,

Thank you for your email.

### List of Alleged UE3 Problems

The highlighted yellow sections in the July 11, 2008 letter, and the August 7, 2008 supplement together constitute the final list of Alleged UE3 Problems.  Any discussions between Silicon Knights and Epic are not relevant to Midway's Court-imposed August 22 production deadline.

### Search Terms

Midway, not Silicon Knights, is obligated to determine an appropriate search criteria that it reasonably believes is sufficient to identify responsive information. However, Silicon Knights is willing to work cooperatively with Midway to assist in Midway's determination of appropriate search terms. To that end, we propose that Midway and Silicon Knights exchange lists of suggested search terms at the close of business on Monday or by 12:00 p.m. Tuesday. Please confirm your agreement to exchange suggested search terms.

Please note, however, that Silicon Knights' agreement to provide Midway with *suggested* search terms in no way relieves Midway of its obligation to independently determine whether such suggested search terms are sufficient to identify the universe of responsive documents in Midway's possession, custody or control.  For instance, Midway's employees may use different terminology in connection with the topics set forth in the two lists of Alleged UE3 Problems. By providing suggested search terms, Silicon Knights will not waive or limit in any way Midway's obligation to make an independent assessment of whether these suggested terms are sufficient to identify responsive information.

### UE3 License Agreement

We do not accept Midway's refusal to produce its license agreement with Epic. Per the Court's direction, please produce the license agreement, including any attachments, amendments, or addenda thereto.

### Employee Files

Although your comments below are somewhat confusing, you have confirmed that

Midway will search, without limitation, the files of all of its employees who are reasonably likely to have responsive information. It should be noted, however, that Silicon Knights is not, and has not, taken any position regarding whether Midway should exclude any category of its employees who may or may not be reasonably likely to have responsive information.  Midway alone must make such a determination.

## Email

Without waiving its rights, Silicon Knights is not requesting that Midway search email prior to the implementation of the Exchange 2003 system at this time.

We understand that the current email system is backed-up on a daily basis. Despite our request, your email below does not explain what additional information, if any, is stored on the backup tapes that is not redundant of its current, active email system. Please help us understand whether the backup tapes are redundant of Midway's active system so that we can suggest a sampling protocol if necessary and avoid unnecessary burden and expense.

Resolution of this issue, however, should not impede Midway from beginning its collection process on the current active system, as well as the other databases and files discussed above and in our previous correspondence.

Tim

Timothy Hudson
Attorney

Tabet DiVito & Rothstein LLC
The Rookery Building
209 South LaSalle St., 7th Floor
Chicago, Illinois  60604
(312) 762-9476 Telephone
(312) 762-9451 Facsimile
thudson@tdrlawfirm.com

This message is for the sole use of the intended recipient and may contain information that is privileged and/or confidential.  If you are not the intended recipient of this message, please delete the message immediately and contact the sender.  Thank you.

---

**From:** Gerald Sweeney [mailto:Gerald.Sweeney@BTLaw.com]
**Sent:** Thursday, August 07, 2008 6:01 PM
**To:** Timothy Hudson
**Cc:** Anjali Kurani; Chris Holland; Garth Rosengren; Daniel I. Konieczny
**Subject:** RE: RE: Midway Games - Silicon Knights Record Search

August 7, 2008

Tim, Chris, Dan, Anjali, Garth, et al.

In response to Tim's email, there is a preliminary question of what constitutes the <u>final</u> list of "UE3 Problems".  To search electronic databases without a final list will result in duplicating the search at SK's cost.

1. **List of UE3 Problems** - I received your supplemental list today. However, I checked with the NC proceedings and understand that the list has not been finalized and it may not be finalized until August 13th by which time Epic is to have responded to SK's supplemental list. **Am I correct that this is not the final list and the time frame for the final list extends to August 13th?**

Assuming that the supplemental list is the one to which Epic and SK ultimately agree on or before August 13th, please confirm that the highlighted yellow sections in the July 11, 2008 letter (attached) and the supplement (attached) received today, August 7, 2008, are collectively the final list "UE3 Problems".

2. **Search Terms** - Based on SK's list of alleged "UE3 Problems" provided, please submit the search terms SK wants Midway to use in searching its electronic databases. This will eliminate any uncertainty up front. Otherwise, it requires Midway to abstract the list and submit it back to SK. SK is in the best position to do that rather than for Midway to spend its time guessing at what SK wants and submitting it for SK's review and approval. Simply put, provide the terms you want searched and that's what will be used.

3. **UE3 License Agreement** - Epic produced Midway's UE3 licences agreement to SK pursuant to the court's order in NC. Accordingly, Midway will not duplicate the production of the license agreement.

4. **Twicki and List Server** - with your advice of August 7th, we will search those databases after we receive from SK the search terms based on the final list of "UE3 Problems".

5. **Employee Files -** based on your search terms derived from the final list "UE3 Problems" and advice in your email of August 7th, Midway will search the electronic files of game designers, programmers, design and program managers, software engineers, senior executives, and anyone else who can be reasonably determined to have either: (1) interacted with Epic; (2) had either internal or external (liaison) responsibility for developing *Unreal Tournament*; and/or (3) had responsibility for dealing with UE3 problems and complaints as described in the search terms submitted by SK based on the final list of "UE3 Problems".

We are in agreement with your statement that, as we further discussed, categories of Midway's employees may not be reasonably likely to have responsive information, such as accounting and financial personnel, secretaries, marketing personnel, and receptionists. We are also in agreement with your statement that since Silicon Knights cannot make such a determination on Midway's behalf, Midway is left to make such a determination. Midway offered to search all employees files for responsive information; however that offer was rejected by SK. Given the potential costs and SK's clearly stated objection to costs and its contention to argue about whether Midway has been prudent, we will eliminate those categories of employees that "may not be reasonably likely to have responsive information."

6. **Email** - Based on your representations, SK has not requested Midway to search email prior to the implementation of the Exchange 2003 system.

With regard to searching the "current" system, it is backed up daily and removed from the premises. To the extent that searching email can be done without accessing tapes, it will be done if practical and more expeditious than searching tapes. (Please note that Mr. Weilbacker's job function is Chief Technology Officer not Information Technology.) Finally, If you want a sample search of archived data, you need to provide the criteria now.

Regards,

Gerald O. Sweeney, Jr.
BARNES & THORNBURG LLP
Suite 4400
One North Wacker Drive
Chicago, IL 60606-2809

(312) 214-4858 Direct
(630) 363-4565 Cell
(312) 357-1313 Main
(312) 759-5646 Fax

gsweeney@btlaw.com
www.btlaw.com

>>> "Timothy Hudson" <THudson@TDRLAWFIRM.com> 8/7/2008 1:33 PM >>>
Gerry,

Thank you for your email below regarding our telephone conference last night, certain aspects of which require clarification.

As a preliminary matter, attached please find a supplemental list of Alleged UE3 Problems that Silicon Knights provided to Epic. The attached list is a supplement to (but does not replace) the list of Alleged UE3 Problems that Silicon Knights previously provided to Midway. Both lists should be used in connection with Midway's preparation of its search protocols.

**Twiki and List Server Databases**

Please search these databases. In addition, please provide us with Midway's search protocols for conducting its search of these databases. This will enable us to provide comment and guidance to the extent necessary to assist Midway is avoiding any unnecessary expense and/or burden. We would appreciate being apprised of Midway's progress in searching these databases.

**Employee Files Retained in Electronic Format**

Your summary of our conversation below is incomplete. As we discussed last night, it remains Silicon Knights' position that Midway (and Midway alone) is obligated to determine who among its 800 employees is reasonably likely to have information responsive to the subpoena. Silicon Knights does not (and cannot) know how Midway, among other things, structures its operations and communication hierarchy, defines its employees' job descriptions, and allocates responsibilities among its employees. During our telephone conversation , you indicated that Midway still has not determined which of its employees is reasonably likely to have responsive information concerning Alleged UE3 Problems, and that Midway is reluctant to make any such determination because of the theoretical possibility that every employee could (theoretically) have such information. As I explained last night, Midway's position is unacceptable. Silicon Knights cannot make this determination on Midway's behalf.

Nevertheless, and without altering in any way Midway's obligation to determine who among its 800 employees is reasonably likely to have information responsive to the subpoena, I stated that Silicon Knights could suggest certain likely categories of Midway's employees that may have responsive information. Although Midway is the only party in a position to determine who among its employees is reasonably likely to have responsive information, such obvious categories may include (but may not be limited to) game designers, programmers, design and program managers, software engineers, senior executives, and anyone else who either: (1) interacted with Epic; (2) had either internal or external (liaison) responsibility for developing *Unreal Tournament*; and/or (3) had responsibility for dealing with UE3 problems and complaints that Midway had (including identifying, fixing, creating supplemental and/or additional source code and/or interfacing with Epic regarding those problems and complaints). As we further discussed, we could speculate that certain categories of Midway's employees may not be reasonably likely to have responsive information, such as (potentially) accounting and financial personnel, secretaries, marketing personnel, and receptionists. Of course, without knowing Midway's personnel and their respective job descriptions, Silicon Knights can only speculate as to which Midway employees may or may not be reasonably likely to have responsive information. Silicon Knights cannot make

such a determination on Midway's behalf. Midway alone must ultimately make such a determination, and has an obligation to do so.

Please search the files retained by Midway in electronic format for those employees that Midway believes are reasonably likely to have responsive information. In addition, please provide us with the search protocols that Midway intends utilize for such a search so that we can provide comment and guidance to the extent necessary to assist Midway in avoiding unnecessary expense and/or burden. We believe that Midway's proposal to search the files of all of its employees without first determining who among them are reasonably likely to have responsive information is facially unreasonable and unnecessarily expensive and burdensome.

## Email Search

Thank you for your clarification below regarding Midway's Exchange 2000 environment that Midway utilized through the first half of 2005. Without waiving our rights to later obtain relevant email information from the first half of 2005 by recreating the Exchange 2000 environment, Silicon Knights requests that Midway **not** recreate the Exchange 2000 environment and search for email information from the first half of 2005 at this time.

With respect to Midway's search for responsive emails from the second half of 2005 to the present, Silicon Knights proposes the following protocol to avoid unnecessary burden and expense.

1.    Search Midway's current active system for responsive emails.

2.    As for a potential search of each of Midway's email backup tapes that it creates on a daily basis, Silicon Knights may be amenable to Midway instituting a sampling protocol whereby Midway search the backup tapes created on a given day of each month from the date of Midway's implementation of its Exchange 2003 system in the second half of 2005 to the present. Such a sampling protocol will substantially reduce the amount of time and expense you previously estimated for the email search. However, before embarking on any such protocol-driven search, we need to understand why any backup tape searching is required. Specifically, based on the representations that Midway's Chief Technology Officer made at the recent hearing, the current, active e-mail system goes back to mid 2005. Please explain what additional information, if any, is stored on the backup tape drives that is not redundant (*i.e.*, the purpose of such storage systems) over the current, active e-mail system. Once we have that information, we can make a determination on whether any such tape drive searching is necessary.

I look forward to receiving your response.

Tim

Timothy Hudson
Attorney

Tabet DiVito & Rothstein LLC
The Rookery Building
209 South LaSalle St., 7th Floor
Chicago, Illinois 60604
(312) 762-9476 Telephone
(312) 762-9451 Facsimile
thudson@tdrlawfirm.com

This message is for the sole use of the intended recipient and may contain information that is privileged and/or confidential. If you are not the intended recipient of this message, please delete the message immediately and contact the sender. Thank you.

**From:** Gerald Sweeney [mailto:Gerald.Sweeney@BTLaw.com]
**Sent:** Wednesday, August 06, 2008 6:44 PM
**To:** Timothy Hudson
**Cc:** Anjali Kurani; Chris Holland; Garth Rosengren; Daniel I. Konieczny
**Subject:** RE: RE: Midway Games - Silicon Knights Record Search

Tim,

I called to confer on the discovery matters set forth in your letter received on August 6th and attached hereto.

The following is the summary of our discovery telephone conference this evening, August 6th:

1. SK will advise Midway by the end of the day on Thursday, August 7th whether, based on its experience in the video game business and with UE3, it will provide a description of the categories of employees for which SK wants Midway to perform a search of electronically stored employee data and Midway will suggest categories of employees for which it believes the search of electronically stored data is not likely to be productive;

2. The estimated cost of $75,000 provided by Midway in IV of the email of July 29th (below) is the estimated cost for recreating the Exchange 2000 environment at five (5) locations for the review of the tapes from the first half of 2005 - not for the Exchange 2003 system that was implemented in the second half of 2005 and is still in use today.

3. Midway does not have the capacity to review the tapes that predate the Exchange 2003 system without recreating the environment and SK will advise whether it chooses to forgo a review of the first half of 2005;

4. Midway is to search the Twiki and List Server.

5. SK will advise Midway whether it wants Midway to limit its search of electronic data to a "sample" search of electronic data for particular dates.


Regards,

Gerald O. Sweeney, Jr.
BARNES & THORNBURG LLP
Suite 4400
One North Wacker Drive
Chicago, IL 60606-2809

(312) 214-4858 Direct
(630) 363-4565 Cell
(312) 357-1313 Main
(312) 759-5646 Fax

gsweeney@btlaw.com
www.btlaw.com


>>> "Timothy Hudson" <THudson@TDRLAWFIRM.com> 8/6/2008 5:01 PM >>>
Gerald,

Please see the attached letter.

Tim

Timothy Hudson
Attorney

Tabet DiVito & Rothstein LLC
The Rookery Building
209 South LaSalle St., 7th Floor
Chicago, Illinois 60604
(312) 762-9476 Telephone
(312) 762-9451 Facsimile
thudson@tdrlawfirm.com

This message is for the sole use of the intended recipient and may contain information that is privileged and/or confidential. If you are not the
intended recipient of this message, please delete the message immediately and contact the sender. Thank you.

---

**From:** Gerald Sweeney [mailto:Gerald.Sweeney@BTLaw.com]
**Sent:** Tuesday, August 05, 2008 9:10 PM
**To:** cholland@kksrr.com; Daniel I. Konieczny; Timothy Hudson
**Cc:** Tracy Bulow
**Subject:** Fwd: RE: Midway Games - Silicon Knights Record Search

Mr. Hudson,

With respect to first full paragraph on page 2 of your letter of August 1, 2008 (attached), please confirm
that SK's position is that it will not pay Midway any of the costs incurred for the record production SK
has subpoenaed pertaining to Twiki and the List Server databases without a further order of Court.

If so, we need to schedule a hearing on this issue since Midway has timely complied with the Court's
request for an estimate of costs. We have provided a reasonable estimate and now two explanations based
on experience. **SK will be charged only for the costs of the search based on the hourly costs
and expenses stated.** FRCP 45 and the order expressly address costs.

With regard to the other issues you restate, the quantitative basis for the estimates are fully explained.
The databases to be searched have been identified. The estimates are based on expressly stated hourly
rates (contract vendors and Midway employees) multiplied by the estimated average time it will take to
review the archived tapes and the number of tapes that will need to be reviewed to cover the time frame for
which SK seeks records. As stated, Midway cannot search the first half of archived records for 2005 without
recreating the environment and there are obvious costs associated with doing so.

Further to your objections, there are approximately 800 employees whose electronic data will be reviewed
because that is the approximate number of employees who are employed by Midway, all of whom fall within
SK's request. As stated, it takes an estimated two hours on average at an expressly stated hourly rate to
set up, access and search the electronic files of each individual employee. If you want to limit the search to
a particular group of employees, such as designers and/or programers, etc., indicate that and Midway will
search in any manner you request. SK knows best, based on its own experience, how it can catagorize by
type(s) the employees it considers to be relevant to the issues it has with UE3. As previously stated, UE3
is the engine in Midway's games since 2005 and; therefore, the breadth of SK's search request is very
large.

Based on the foregoing - as well as the last two explanations - you have received Midway's best estimate of
what your request entails. There is no basis to make Midway's employees available for oral examinations.
Midway is represented by counsel and if you have further specific questions, please provide them in writing
and I will respond to each of them.

Regards,

Gerald O. Sweeney, Jr.
BARNES & THORNBURG LLP
Suite 4400

One North Wacker Drive
Chicago, IL 60606-2809

(312) 214-4858 Direct
(630) 363-4565 Cell
(312) 357-1313 Main
(312) 759-5646 Fax

gsweeney@btlaw.com
www.btlaw.com

>>> Gerald Sweeney 7/30/2008 11:57 AM >>>
Wednesday, July 30, 2008

Dan & Chris,

The explanation given to Silicon Knights on Friday July 25 was based on the best available information
and estimates made by the responsible IT personnel at Midway upon recent experience. I appreciate that
this is an extensive and surprisingly costly undertaking as Silicon Knights has made a request covering a 3.5
year period that implicates most, if not all of Midway's products during that time.

(1) $62 is the cost on an averaged hourly basis for employee time of the persons considered sufficiently
qualified by Midway to locate and identify the technical-based material defined in your letter.  For example,
secretarial level employees would not have sufficient knowledge to perform this search. Midway needs to
pay someone $62 an our because that is Midway's averaged cost to perform the search. When
Midway indicates that certain information is immediately searchable, that means that those databases were
available to be searched without locating tapes from off-site storage - not that the information is instantly
available without any time required to search.  The amount of time to search is based on recent experience
locating documents under similar circumstances.

(2) Employees in different capacities may be relevant and we are not in a position to guess who may have
made some comment pertaining to the subject matter of your request.  If you want to limit the scope of the
search to design personnel, please advise and we will limit the search to that category. Again, the estimate
of two hours to set up and search on a per employee basis is an estimate based upon experience.

(3) It is necessary to recreate the 2005 environment because Midway no longer has the capacity to search
the email for the first half of 2005 for the reasons stated.  If you are aware of a vendor that has the assets
described that it will make available to recreate the 2005 environment in five (5) locations for the limited
purpose of this search, please advise.  Midway is not currently aware of such a resource and would
consider your suggestions.

(4) With respect to email, the system is backed up daily and the tapes are removed daily to off site storage.
The $50/hr cost is an estimated vendor cost on an hourly basis. The time for reviewing each tape is based
on experience reviewing such tapes.  This is not material that is otherwise searchable without first retrieving
it from an off site location.

(5) Given the extent of the document request, the estimate is based on what it might take for legal
review. If it's actually less, than the charges will be less. Silicon Knights will only be charged in each instance
what the actual equivalent cost is to Midway for searching and reviewing and producing in accordance with
Silicon Knights requests.

Regards,

Gerald O. Sweeney, Jr.
BARNES & THORNBURG LLP
Suite 4400
One North Wacker Drive
Chicago, IL 60606-2809

(312) 214-4858 Direct
(630) 363-4565 Cell
(312) 357-1313 Main
(312) 759-5646 Fax

gsweeney@btlaw.com
www.btlaw.com

>>> "Daniel I. Konieczny" <DKonieczny@TDRLAWFIRM.com> 7/30/2008 10:32 AM >>>
Gerald:

Please see the attached correspondence.

Dan

**From:** Gerald Sweeney [mailto:Gerald.Sweeney@BTLaw.com]
**Sent:** Tuesday, July 29, 2008 3:40 PM
**To:** cholland@kksrr.com
**Cc:** Tracy Bulow; Daniel I. Konieczny
**Subject:** Midway Games - Silicon Knights Record Search

Chris,

Please advise whether SK wants Midway to start the search on VI described below **"Twiki and List Server Search"** - which are the databases available on-site and immediately searchable.  I will be out of the office Friday returning on Tuesday, August 4th.

*******************

Pursuant to the Court's order of July 23, 2008, Midway hereby informs counsel for Silicon Knights as to how far its active database goes back, how many tapes it has for the term of the license agreement with Epic Games and the time and expense it will involve to search the active and archival databases for responsive information.

This is a significant undertaking and will require an immediate response and an outside contractor if there is any possibility of meeting the Court's production date of August 22, 2008. As a preliminary matter, the email system is backed up daily and removed to off site storage on a daily basis.

## I. Search Terms:

Search terms to be derived from the yellow highlighted sections of the PDF attachment provided by Silicon Knights counsel on July 23, 2008 relating to Midway's experience with UE3.

## II. Time Frame of Search:

The inception date of the Midway UE3 Agreement - January 14, 2005 to present.

**III. Document Sources to be Searched:***

1. Email (archived daily)
2. Twiki (immediately searchable)
3. List Server (immediately searchable)
4. Employee Files Retained in Electronic Format

* Chat Tool Instant Messenger (not retained), Unreal Development Site (not retained)

**IV. Relevant Email Background Information:**

In the second half of 2005, Midway's email system migrated from Exchange 2000 to current Exchange 2003 system.

To search the data on Exchange, Midway will have to recreate the Exchange 2000 environment at five (5) locations: L.A., Austin, San Diego, Chicago, & Seattle.

This requires purchasing hardware and software and set up at each location consisting of a Server, Tape Drive, Microsoft Exchange Program, Exchange Search Utility Software & Tape Drive Software at an estimated cost of $15,000 per location for a total cost of approximately **$75,000**.

It is estimated that there are 5000 email tapes in total that will be reviewed by an outside contractor at an estimated cost of approximating $50/hr. X 8 hours X 500 man days (averaging review of 10 tapes per person per day) at a cost of approximately **$200,000**. (attorney fees not included)

**V. Search of Employee Files Retained in Electronic Format:**

800 employee files estimated at 2/hrs. each X Midway averaged hourly rate of $62 = **$99,200.** (attorney fees not included)

**VI. Twiki and List Server Search**

$62/hr X 200 hrs = **$12,400.** (attorney fees not included)

**VII. Attorney fees/cost for search set up, document review and redaction of subset for production**

Estimated on an average rate of $325/hr. X 160 hours = **$52,000.**

---

**CONFIDENTIALITY NOTICE: This email and any attachments are for the exclusive and confidential use of the intended recipient. If you are not the intended recipient, please do not read, distribute or take action in reliance upon this message. If you have received this in error, please notify us immediately by return email and promptly delete this message and its attachments from your computer system. We do not waive attorney-client or work product privilege by the transmission of this message. TAX ADVICE NOTICE: Tax advice, if any, contained in this e-mail does not constitute a "reliance opinion" as defined in IRS Circular 230 and may not be used to establish reasonable reliance on the opinion of counsel for the purpose of avoiding the penalty imposed by Section 6662A of the Internal Revenue Code. The firm provides reliance opinions only in formal opinion letters containing the signature of a partner.**

---

**CONFIDENTIALITY NOTICE: This email and any attachments are for the exclusive and confidential use of the intended recipient. If you are not the intended recipient, please do not read, distribute or take action in reliance upon this message. If you have received this in error,**

please notify us immediately by return email and promptly delete this message and its attachments from your computer system. We do not waive attorney-client or work product privilege by the transmission of this message. TAX ADVICE NOTICE: Tax advice, if any, contained in this e-mail does not constitute a "reliance opinion" as defined in IRS Circular 230 and may not be used to establish reasonable reliance on the opinion of counsel for the purpose of avoiding the penalty imposed by Section 6662A of the Internal Revenue Code. The firm provides reliance opinions only in formal opinion letters containing the signature of a partner.

CONFIDENTIALITY NOTICE: This email and any attachments are for the exclusive and confidential use of the intended recipient. If you are not the intended recipient, please do not read, distribute or take action in reliance upon this message. If you have received this in error, please notify us immediately by return email and promptly delete this message and its attachments from your computer system. We do not waive attorney-client or work product privilege by the transmission of this message. TAX ADVICE NOTICE: Tax advice, if any, contained in this e-mail does not constitute a "reliance opinion" as defined in IRS Circular 230 and may not be used to establish reasonable reliance on the opinion of counsel for the purpose of avoiding the penalty imposed by Section 6662A of the Internal Revenue Code. The firm provides reliance opinions only in formal opinion letters containing the signature of a partner.

CONFIDENTIALITY NOTICE: This email and any attachments are for the exclusive and confidential use of the intended recipient. If you are not the intended recipient, please do not read, distribute or take action in reliance upon this message. If you have received this in error, please notify us immediately by return email and promptly delete this message and its attachments from your computer system. We do not waive attorney-client or work product privilege by the transmission of this message. TAX ADVICE NOTICE: Tax advice, if any, contained in this e-mail does not constitute a "reliance opinion" as defined in IRS Circular 230 and may not be used to establish reasonable reliance on the opinion of counsel for the purpose of avoiding the penalty imposed by Section 6662A of the Internal Revenue Code. The firm provides reliance opinions only in formal opinion letters containing the signature of a partner.

# EXHIBIT 13

## Tracy Bulow - RE: RE: Midway Games - Silicon Knights Record Search

**From:** Gerald Sweeney
**To:** Hudson, Timothy
**Date:** 8/8/2008 3:58:47 PM
**Subject:** RE: RE: Midway Games - Silicon Knights Record Search
**CC:** Holland, Chris;  Konieczny, Daniel I.;  Kurani, Anjali;  Rosengren, Garth

August 8, 2008

Tim, Chris, Dan, Anjali, Garth, et al.

Please note that pursuant to FRCP 45, Midway will seek recovery for all employee and legal costs expended to respond to SK's demands.

### List of Alleged UE3 Problems

The definition derived from the list of "Alleged UE3 Problems" as agreed to by the parties in the underlying litigation is in fact relevant based on what was tendered to me by your co-counsel, Dan Konieczny, at the hearing on Midway's Motion to Quash as the basis for the search.  That highlighted list was a narrowed version of a more comprehensive list which I believe was narrowed as the result of a consensus between Epic and SK and represented as such to the Court in NC.  I assume that by August 13th, you will have the final list.

### Search Terms

Midway has no code or special designation for UE3 or matters related to UE3. Therefore, Midway's employees do not use different terminology in connection with the topics set forth in the two lists of Alleged UE3 Problems.  Accordingly, (again) please have SK provide the search terms it wants searched. It is unreasonable to demand that Midway abstract the list and then submit it to you for your client's approval - or wait until the search as been completed and have SK disagree.  Any search terms Midway will use will come directly from your list.

Your choice is to either provide us with the search terms SK wants Midway to use by Monday, August 11, 2008 or accept the abstraction of the terminology taken directly from the list that Midway will use in the search.

### UE3 License Agreement

I understand that Epic produced the Midway UE3 license agreement.

### Employee Files

Midway will eliminate classes of employees considered less likely or unlikely to have relevant information. It will be done at Midway's discretion and done in that manner at your insistence.

### Email

To the extent that searching email can be done without accessing tapes, it will be done if practical and more expeditious than searching tapes.  As a matter of fact, tapes will have to be searched and you must provide some criteria if you want a sample search of archived data.

way Midway's obligation to make an independent assessment of whether these suggested terms are sufficient to identify responsive information.

## UE3 License Agreement

We do not accept Midway's refusal to produce its license agreement with Epic. Per the Court's direction, please produce the license agreement, including any attachments, amendments, or addenda thereto.

## Employee Files

Although your comments below are somewhat confusing, you have confirmed that Midway will search, without limitation, the files of all of its employees who are reasonably likely to have responsive information. It should be noted, however, that Silicon Knights is not, and has not, taken any position regarding whether Midway should exclude any category of its employees who may or may not be reasonably likely to have responsive information.  Midway alone must make such a determination.

## Email

Without waiving its rights, Silicon Knights is not requesting that Midway search email prior to the implementation of the Exchange 2003 system at this time.

We understand that the current email system is backed-up on a daily basis. Despite our request, your email below does not explain what additional information, if any, is stored on the backup tapes that is not redundant of its current, active email system. Please help us understand whether the backup tapes are redundant of Midway's active system so that we can suggest a sampling protocol if necessary and avoid unnecessary burden and expense.

Resolution of this issue, however, should not impede Midway from beginning its collection process on the current active system, as well as the other databases and files discussed above and in our previous correspondence.

Tim

Timothy Hudson
Attorney

Tabet DiVito & Rothstein LLC
The Rookery Building
209 South LaSalle St., 7th Floor
Chicago, Illinois  60604
(312) 762-9476 Telephone
(312) 762-9451 Facsimile
thudson@tdrlawfirm.com

This message is for the sole use of the intended recipient and may contain information that is privileged and/or confidential.  If you are not the intended recipient of this message, please delete the message immediately and contact the sender.  Thank you.

**From:** Gerald Sweeney [mailto:Gerald.Sweeney@BTLaw.com]
**Sent:** Thursday, August 07, 2008 6:01 PM
**To:** Timothy Hudson
**Cc:** Anjali Kurani; Chris Holland; Garth Rosengren; Daniel I. Konieczny
**Subject:** RE: RE: Midway Games - Silicon Knights Record Search

August 7, 2008

Tim, Chris, Dan, Anjali, Garth, et al.

In response to Tim's email, there is a preliminary question of what constitutes the final list of "UE3 Problems". To search electronic databases without a final list will result in duplicating the search at SK's cost.

1. **List of UE3 Problems** - I received your supplemental list today. However, I checked with the NC proceedings and understand that the list has not been finalized and it may not be finalized until August 13th by which time Epic is to have responded to SK's supplemental list. **Am I correct that this is not the final list and the time frame for the final list extends to August 13th?**

Assuming that the supplemental list is the one to which Epic and SK ultimately agree on or before August 13th, please confirm that the highlighted yellow sections in the July 11, 2008 letter (attached) and the supplement (attached) received today, August 7, 2008, are collectively the final list "UE3 Problems".

2. **Search Terms** - Based on SK's list of alleged "UE3 Problems" provided, please submit the search terms SK wants Midway to use in searching its electronic databases.  This will eliminate any uncertainty up front.  Otherwise, it requires Midway to abstract the list and submit it back to SK.  SK is in the best position to do that rather than for Midway to spend its time guessing at what SK wants and submitting it for SK's review and approval. Simply put, provide the terms you want searched and that's what will be used.

3. **UE3 License Agreement** - Epic produced Midway's UE3 licences agreement to SK pursuant to the court's order in NC.  Accordingly, Midway will not duplicate the production of the license agreement.

4. **Twicki and List Server** - with your advice of August 7th, we will search those databases after we receive from SK the search terms based on the final list of "UE3 Problems".

5. **Employee Files -** based on your search terms derived from the final list "UE3 Problems" and advice in your email of August 7th, Midway will search the electronic files of game designers, programmers, design and program managers, software engineers, senior executives, and anyone else who can be reasonably determined to have either: (1) interacted with Epic; (2) had either internal or external (liaison) responsibility for developing *Unreal Tournament*; and/or (3) had responsibility for dealing with UE3 problems and complaints as described in the search terms submitted by SK based on the final list of "UE3 Problems".

We are in agreement with your statement that, as we further discussed, categories of Midway's employees may not be reasonably likely to have responsive information, such as accounting and financial personnel, secretaries, marketing personnel, and receptionists.  We are also in agreement with your statement that since Silicon Knights cannot make such a determination on Midway's behalf, Midway is left to make such a determination. Midway offered to search all employees files for responsive information; however that offer was rejected by SK. Given the potential costs and SK's clearly stated objection to costs and its contention to argue about whether Midway has been prudent, we will eliminate those categories of employees that "may not be reasonably likely to have responsive information."

6. **Email** - Based on your representations, SK has not requested Midway to search email prior to the implementation of the Exchange 2003 system.

With regard to searching the "current" system, it is backed up daily and removed from the premises. To the extent that searching email can be done without accessing tapes, it will be done if practical and more expeditious than searching tapes. (Please note that Mr. Weilbacker's job function is Chief Technology

Midway is reluctant to make any such determination because of the theoretical possibility that every employee could (theoretically) have such information. As I explained last night, Midway's position is unacceptable. Silicon Knights cannot make this determination on Midway's behalf.

Nevertheless, and without altering in any way Midway's obligation to determine who among its 800 employees is reasonably likely to have information responsive to the subpoena, I stated that Silicon Knights could suggest certain likely categories of Midway's employees that may have responsive information. Although Midway is the only party in a position to determine who among its employees is reasonably likely to have responsive information, such obvious categories may include (but may not be limited to) game designers, programmers, design and program managers, software engineers, senior executives, and anyone else who either: (1) interacted with Epic; (2) had either internal or external (liaison) responsibility for developing *Unreal Tournament*; and/or (3) had responsibility for dealing with UE3 problems and complaints that Midway had (including identifying, fixing, creating supplemental and/or additional source code and/or interfacing with Epic regarding those problems and complaints). As we further discussed, we could speculate that certain categories of Midway's employees may not be reasonably likely to have responsive information, such as (potentially) accounting and financial personnel, secretaries, marketing personnel, and receptionists. Of course, without knowing Midway's personnel and their respective job descriptions, Silicon Knights can only speculate as to which Midway employees may or may not be reasonably likely to have responsive information. Silicon Knights cannot make such a determination on Midway's behalf. Midway alone must ultimately make such a determination, and has an obligation to do so.

Please search the files retained by Midway in electronic format for those employees that Midway believes are reasonably likely to have responsive information. In addition, please provide us with the search protocols that Midway intends utilize for such a search so that we can provide comment and guidance to the extent necessary to assist Midway in avoiding unnecessary expense and/or burden. We believe that Midway's proposal to search the files of all of its employees without first determining who among them are reasonably likely to have responsive information is facially unreasonable and unnecessarily expensive and burdensome.

## Email Search

Thank you for your clarification below regarding Midway's Exchange 2000 environment that Midway utilized through the first half of 2005. Without waiving our rights to later obtain relevant email information from the first half of 2005 by recreating the Exchange 2000 environment, Silicon Knights requests that Midway **not** recreate the Exchange 2000 environment and search for email information from the first half of 2005 at this time.

With respect to Midway's search for responsive emails from the second half of 2005 to the present, Silicon Knights proposes the following protocol to avoid unnecessary burden and expense.

1.    Search Midway's current active system for responsive emails.

2.    As for a potential search of each of Midway's email backup tapes that it creates on a daily basis, Silicon Knights may be amenable to Midway instituting a sampling protocol whereby Midway search the backup tapes created on a given day of each month from the

date of Midway's implementation of its Exchange 2003 system in the second half of 2005 to the present. Such a sampling protocol will substantially reduce the amount of time and expense you previously estimated for the email search. However, before embarking on any such protocol-driven search, we need to understand why any backup tape searching is required. Specifically, based on the representations that Midway's Chief Technology Officer made at the recent hearing, the current, active e-mail system goes back to mid 2005. Please explain what additional information, if any, is stored on the backup tape drives that is not redundant (*i.e.*, the purpose of such storage systems) over the current, active e-mail system. Once we have that information, we can make a determination on whether any such tape drive searching is necessary.

I look forward to receiving your response.

Tim

Timothy Hudson
Attorney

Tabet DiVito & Rothstein LLC
The Rookery Building
209 South LaSalle St., 7th Floor
Chicago, Illinois 60604
(312) 762-9476 Telephone
(312) 762-9451 Facsimile
thudson@tdrlawfirm.com

This message is for the sole use of the intended recipient and may contain information that is privileged and/or confidential. If you are not the intended recipient of this message, please delete the message immediately and contact the sender. Thank you.

---

**From:** Gerald Sweeney [mailto:Gerald.Sweeney@BTLaw.com]
**Sent:** Wednesday, August 06, 2008 6:44 PM
**To:** Timothy Hudson
**Cc:** Anjali Kurani; Chris Holland; Garth Rosengren; Daniel I. Konieczny
**Subject:** RE: RE: Midway Games - Silicon Knights Record Search

Tim,

I called to confer on the discovery matters set forth in your letter received on August 6th and attached hereto.

The following is the summary of our discovery telephone conference this evening, August 6th:

1. SK will advise Midway by the end of the day on Thursday, August 7th whether, based on its experience in the video game business and with UE3, it will provide a description of the categories of employees for which SK wants Midway to perform a search of electronically stored employee data and Midway will suggest categories of employees for which it believes the search of electronically stored data is not likely to be productive;

2. The estimated cost of $75,000 provided by Midway in IV of the email of July 29th (below) is the estimated cost for recreating the Exchange 2000 environment at five (5) locations for the review of the tapes from the first half of 2005 - not for the Exchange 2003 system that was implemented in the second half of 2005 and is still in use today.

3. Midway does not have the capacity to review the tapes that predate the Exchange 2003 system without recreating the environment and SK will advise whether it chooses to forgo a review of the first half of 2005;

4. Midway is to search the Twiki and List Server.

5. SK will advise Midway whether it wants Midway to limit its search of electronic data to a "sample" search of electronic data for particular dates.


Regards,

Gerald O. Sweeney, Jr.
BARNES & THORNBURG LLP
Suite 4400
One North Wacker Drive
Chicago, IL 60606-2809

(312) 214-4858 Direct
(630) 363-4565 Cell
(312) 357-1313 Main
(312) 759-5646 Fax

gsweeney@btlaw.com
www.btlaw.com




>>> "Timothy Hudson" <THudson@TDRLAWFIRM.com> 8/6/2008 5:01 PM >>>
Gerald,

Please see the attached letter.

Tim

Timothy Hudson
Attorney

Tabet DiVito & Rothstein LLC
The Rookery Building
209 South LaSalle St., 7th Floor
Chicago, Illinois 60604
(312) 762-9476 Telephone
(312) 762-9451 Facsimile
thudson@tdrlawfirm.com

This message is for the sole use of the intended recipient and may contain information that is privileged and/or confidential.  If you are not the intended recipient of this message, please delete the message immediately and contact the sender.  Thank you.


---

**From:** Gerald Sweeney [mailto:Gerald.Sweeney@BTLaw.com]
**Sent:** Tuesday, August 05, 2008 9:10 PM
**To:** cholland@kksrr.com; Daniel I. Konieczny; Timothy Hudson
**Cc:** Tracy Bulow
**Subject:** Fwd: RE: Midway Games - Silicon Knights Record Search

Mr. Hudson,

With respect to first full paragraph on page 2 of your letter of August 1, 2008 (attached), please confirm that SK's position is that it will not pay Midway any of the costs incurred for the record production SK has subpoenaed pertaining to Twiki and the List Server databases without a further order of Court.

If so, we need to schedule a hearing on this issue since Midway has timely complied with the Court's request for an estimate of costs. We have provided a reasonable estimate and now two explanations based on experience. **SK will be charged only for the costs of the search based on the hourly costs and expenses stated.** FRCP 45 and the order expressly address costs.

With regard to the other issues you restate, the quantitative basis for the estimates are fully explained. The databases to be searched have been identified. The estimates are based on expressly stated hourly rates (contract vendors and Midway employees) multiplied by the estimated average time it will take to review the archived tapes and the number of tapes that will need to be reviewed to cover the time frame for which SK seeks records. As stated, Midway cannot search the first half of archived records for 2005 without recreating the environment and there are obvious costs associated with doing so.

Further to your objections, there are approximately 800 employees whose electronic data will be reviewed because that is the approximate number of employees who are employed by Midway, all of whom fall within SK's request. As stated, it takes an estimated two hours on average at an expressly stated hourly rate to set up, access and search the electronic files of each individual employee. If you want to limit the search to a particular group of employees, such as designers and/or programers, etc., indicate that and Midway will search in any manner you request. SK knows best, based on its own experience, how it can catagorize by type (s) the employees it considers to be relevant to the issues it has with UE3. As previously stated, UE3 is the engine in Midway's games since 2005 and; therefore, the breadth of SK's search request is very large.

Based on the foregoing - as well as the last two explanations - you have received Midway's best estimate of what your request entails. There is no basis to make Midway's employees available for oral examinations. Midway is represented by counsel and if you have further specific questions, please provide them in writing and I will respond to each of them.


Regards,

Gerald O. Sweeney, Jr.
BARNES & THORNBURG LLP
Suite 4400
One North Wacker Drive
Chicago, IL 60606-2809

(312) 214-4858 Direct
(630) 363-4565 Cell
(312) 357-1313 Main
(312) 759-5646 Fax

gsweeney@btlaw.com
www.btlaw.com




>>> Gerald Sweeney 7/30/2008 11:57 AM >>>
Wednesday, July 30, 2008

Dan & Chris,

The explanation given to Silicon Knights on Friday July 25 was based on the best available information and estimates made by the responsible IT personnel at Midway upon recent experience. I appreciate that this is an extensive and surprisingly costly undertaking as Silicon Knights has made a request covering a 3.5 year

period that implicates most, if not all of Midway's products during that time.

(1) $62 is the cost on an averaged hourly basis for employee time of the persons considered sufficiently qualified by Midway to locate and identify the technical-based material defined in your letter. For example, secretarial level employees would not have sufficient knowledge to perform this search. Midway needs to pay someone $62 an our because that is Midway's averaged cost to perform the search. When Midway indicates that certain information is immediately searchable, that means that those databases were available to be searched without locating tapes from off-site storage - not that the information is instantly available without any time required to search. The amount of time to search is based on recent experience locating documents under similar circumstances.

(2) Employees in different capacities may be relevant and we are not in a position to guess who may have made some comment pertaining to the subject matter of your request. If you want to limit the scope of the search to design personnel, please advise and we will limit the search to that category. Again, the estimate of two hours to set up and search on a per employee basis is an estimate based upon experience.

(3) It is necessary to recreate the 2005 environment because Midway no longer has the capacity to search the email for the first half of 2005 for the reasons stated. If you are aware of a vendor that has the assets described that it will make available to recreate the 2005 environment in five (5) locations for the limited purpose of this search, please advise. Midway is not currently aware of such a resource and would consider your suggestions.

(4) With respect to email, the system is backed up daily and the tapes are removed daily to off site storage. The $50/hr cost is an estimated vendor cost on an hourly basis. The time for reviewing each tape is based on experience reviewing such tapes. This is not material that is otherwise searchable without first retrieving it from an off site location.

(5) Given the extent of the document request, the estimate is based on what it might take for legal review. If it's actually less, than the charges will be less. Silicon Knights will only be charged in each instance what the actual equivalent cost is to Midway for searching and reviewing and producing in accordance with Silicon Knights requests.

Regards,

Gerald O. Sweeney, Jr.
BARNES & THORNBURG LLP
Suite 4400
One North Wacker Drive
Chicago, IL 60606-2809

(312) 214-4858 Direct
(630) 363-4565 Cell
(312) 357-1313 Main
(312) 759-5646 Fax

gsweeney@btlaw.com
www.btlaw.com

>>> "Daniel I. Konieczny" <DKonieczny@TDRLAWFIRM.com> 7/30/2008 10:32 AM >>>
Gerald:

Please see the attached correspondence.

Dan

---

**From:** Gerald Sweeney [mailto:Gerald.Sweeney@BTLaw.com]
**Sent:** Tuesday, July 29, 2008 3:40 PM
**To:** cholland@kksrr.com
**Cc:** Tracy Bulow; Daniel I. Konieczny
**Subject:** Midway Games - Silicon Knights Record Search

Chris,

Please advise whether SK wants Midway to start the search on VI described below **"Twiki and List Server Search"** - which are the databases available on-site and immediately searchable.  I will be out of the office Friday returning on Tuesday, August 4th.

*******************

Pursuant to the Court's order of July 23, 2008, Midway hereby informs counsel for Silicon Knights as to how far its active database goes back, how many tapes it has for the term of the license agreement with Epic Games and the time and expense it will involve to search the active and archival databases for responsive information.

This is a significant undertaking and will require an immediate response and an outside contractor if there is any possibility of meeting the Court's production date of August 22, 2008. As a preliminary matter, the email system is backed up daily and removed to off site storage on a daily basis.

**I. Search Terms:**

Search terms to be derived from the yellow highlighted sections of the PDF attachment provided by Silicon Knights counsel on July 23, 2008 relating to Midway's experience with UE3.

**II. Time Frame of Search:**

The inception date of the Midway UE3 Agreement - January 14, 2005 to present.

**III. Document Sources to be Searched:***

1. Email (archived daily)
2. Twiki (immediately searchable)
3. List Server (immediately searchable)
4. Employee Files Retained in Electronic Format

* Chat Tool Instant Messenger (not retained), Unreal Development Site (not retained)

**IV. Relevant Email Background Information:**

In the second half of 2005, Midway's email system migrated from Exchange 2000 to current Exchange 2003 system.

To search the data on Exchange, Midway will have to recreate the Exchange 2000 environment at five (5) locations: L.A., Austin, San Diego, Chicago, & Seattle.

This requires purchasing hardware and software and set up at each location consisting of a Server, Tape Drive, Microsoft Exchange Program, Exchange Search Utility Software & Tape Drive Software at an estimated cost of $15,000 per location for a total cost of approximately **$75,000.**

It is estimated that there are 5000 email tapes in total that will be reviewed by an outside contractor at an estimated cost of approximating $50/hr. X 8 hours X 500 man days (averaging review of 10 tapes per person per day) at a cost of approximately **$200,000.** (attorney fees not included)

## V. Search of Employee Files Retained in Electronic Format:

800 employee files estimated at 2/hrs. each X Midway averaged hourly rate of $62 = **$99,200.** (attorney fees not included)

## VI. Twiki and List Server Search

$62/hr X 200 hrs = **$12,400.** (attorney fees not included)

## VII. Attorney fees/cost for search set up, document review and redaction of subset for production

Estimated on an average rate of $325/hr. X 160 hours = **$52,000.**

---

**CONFIDENTIALITY NOTICE: This email and any attachments are for the exclusive and confidential use of the intended recipient. If you are not the intended recipient, please do not read, distribute or take action in reliance upon this message. If you have received this in error, please notify us immediately by return email and promptly delete this message and its attachments from your computer system. We do not waive attorney-client or work product privilege by the transmission of this message. TAX ADVICE NOTICE: Tax advice, if any, contained in this e-mail does not constitute a "reliance opinion" as defined in IRS Circular 230 and may not be used to establish reasonable reliance on the opinion of counsel for the purpose of avoiding the penalty imposed by Section 6662A of the Internal Revenue Code. The firm provides reliance opinions only in formal opinion letters containing the signature of a partner.**

---

**CONFIDENTIALITY NOTICE: This email and any attachments are for the exclusive and confidential use of the intended recipient. If you are not the intended recipient, please do not read, distribute or take action in reliance upon this message. If you have received this in error, please notify us immediately by return email and promptly delete this message and its attachments from your computer system. We do not waive attorney-client or work product privilege by the transmission of this message. TAX ADVICE NOTICE: Tax advice, if any, contained in this e-mail does not constitute a "reliance opinion" as defined in IRS Circular 230 and may not be used to establish reasonable reliance on the opinion of counsel for the purpose of avoiding the penalty imposed by Section 6662A of the Internal Revenue Code. The firm provides reliance opinions only in formal opinion letters containing the signature of a partner.**

---

**CONFIDENTIALITY NOTICE: This email and any attachments are for the exclusive and confidential use of the intended recipient. If you are not the intended recipient, please do not read, distribute or take action in reliance upon this message. If you have received this in error, please notify us immediately by return email and promptly delete this message and its attachments from your**

computer system. We do not waive attorney-client or work product privilege by the transmission of this message. TAX ADVICE NOTICE: Tax advice, if any, contained in this e-mail does not constitute a "reliance opinion" as defined in IRS Circular 230 and may not be used to establish reasonable reliance on the opinion of counsel for the purpose of avoiding the penalty imposed by Section 6662A of the Internal Revenue Code. The firm provides reliance opinions only in formal opinion letters containing the signature of a partner.

CONFIDENTIALITY NOTICE: This email and any attachments are for the exclusive and confidential use of the intended recipient. If you are not the intended recipient, please do not read, distribute or take action in reliance upon this message. If you have received this in error, please notify us immediately by return email and promptly delete this message and its attachments from your computer system. We do not waive attorney-client or work product privilege by the transmission of this message. TAX ADVICE NOTICE: Tax advice, if any, contained in this e-mail does not constitute a "reliance opinion" as defined in IRS Circular 230 and may not be used to establish reasonable reliance on the opinion of counsel for the purpose of avoiding the penalty imposed by Section 6662A of the Internal Revenue Code. The firm provides reliance opinions only in formal opinion letters containing the signature of a partner.

# EXHIBIT 14

## Tracy Bulow - RE: Silicon Knights

**From:**     "Braswell, Sean M." <sbraswell@hunton.com>
**To:**       "Gerald Sweeney" <Gerald.Sweeney@BTLaw.com>
**Date:**     8/18/2008 3:30 PM
**Subject:**  RE: Silicon Knights
**CC:**       "Tracy Bulow" <TRACY.BULOW@BTLaw.com>, "Kenyon, Douglas W. (US)"
             <dkenyon@hunton.com>

Gerry,
The discussion with SK on the Alleged UE3 Problems was finally concluded on Friday.  Copies of the attached letters were supposed to have been sent to you on Friday.  I apologize that they did not reach you.

As you'll see in the attached correspondence and letters, Epic has accepted SK's supplemental list subject to some objections.  So, the final list is the original, plus the supplementation that you previously received from SK's counsel.  Epic has not requested any changes.

Please let us know if you have any questions.
Sean

**From:** Gerald Sweeney [mailto:Gerald.Sweeney@BTLaw.com]
**Sent:** Monday, August 18, 2008 4:02 PM
**To:** Kenyon, Douglas W. (US); Braswell, Sean M.
**Cc:** Tracy Bulow
**Subject:** Silicon Knights

Doug,

What is the status of the final list of "UE3 Problems". I understood that you were sending a letter last week to SK, but I did not receive a copy.

I need to know of what the "final list" consists - or the current status of that issue as of today.

Regards,

Gerald O. Sweeney, Jr.
BARNES & THORNBURG LLP
Suite 4400
One North Wacker Drive
Chicago, IL 60606-2809

(312) 214-4858 Direct
(630) 363-4565 Cell
(312) 357-1313 Main
(312) 759-5646 Fax

gsweeney@btlaw.com
www.btlaw.com

**CONFIDENTIALITY NOTICE:** This email and any attachments are for the exclusive and confidential use of the intended recipient. If you are not the intended recipient, please do not read, distribute or take action in reliance upon this message. If you have received this in error, please notify us immediately by return email and promptly delete this message and its attachments from your computer system. We do not waive attorney-client or work product privilege by the transmission of this message. **TAX ADVICE NOTICE:** Tax advice, if any, contained in this e-mail does not constitute a "reliance opinion" as defined in IRS Circular 230 and may not be used to establish reasonable reliance on the opinion of counsel for the purpose of avoiding the penalty imposed by Section 6662A of the Internal Revenue Code. The firm provides reliance opinions only in formal opinion letters containing the signature of a partner.



**HUNTON&
WILLIAMS**

HUNTON & WILLIAMS LLP
POST OFFICE BOX 109
RALEIGH, NORTH CAROLINA 27602

TEL     919 • 899 • 3000
FAX    919 • 833 • 6352

ROBERT C. VAN ARNAM
DIRECT DIAL: 919-899-3146
EMAIL:  rvanarnam@hunton.com

FILE NO: 49765.2548 [25416336/3]

August 15, 2008

**VIA ELECTRONIC MAIL**

Garth Rosengren, Esq.
KRIEG, KELLER, SLOAN, REILLEY & ROMAN LLP
114 Sansome Street, 4th Floor
San Francisco, CA 94104

>          Re:    *Silicon Knights v. Epic: SK's Supplemental List of Alleged UE3*
>                 *Problems*

Dear Garth:

I'm writing in response to your email received yesterday evening. With regard to the Alleged UE3 Problems List, our position is set forth in my August 13 letter. As stated therein, Epic objects to SK's List in various respects, including that certain listed problems remain vague and ambiguous. Notwithstanding those objections, Epic has agreed to search for and produce any non-privileged documents responsive to the items on the List in a good faith effort to move the case along. You are correct that we will not be sending a revised List.

However, Epic's longstanding position on this subject remains the same. Namely that: these items do not represent valid problems SK or other licensees faced; neither Epic nor UE3 are the cause of any alleged problems SK had with developing its games; and that any third party complaints or expressions of dissatisfaction about UE3 regarding these Alleged UE3 Problems are irrelevant to, and inadmissible in this case.

It appears from your email that SK intends to provide the List to Midway and likely to other subpoenaed licensees. Epic is concerned how the List will be presented to third party licensees and what SK will represent about it. Accordingly, Epic requests that SK refrain from circulating the List or communicating with any third party licensees or subpoena recipients about the List until we can confer and agree on an appropriate protocol for doing so. One solution may be that SK draft a cover letter that Epic reviews and approves that would be sent with the List accompanied by this letter and our August 13, 2008 letter.

# HUNTON&
# WILLIAMS

August 15, 2008
Page 2

       We hope we can reach a reasonable accommodation on this issue. If SK objects to this request, we ask that you refrain from circulating the List or communicating with third party licensees/subpoena recipients about it until this issue is raised with Judge Gates at Tuesday's Status Conference.

Sincerely,

Robert C. Van Arnam

RCV/klm

cc:    Doug Kenyon
       Chris Holland
       Jay Silver
       Betsy Cooke

**Tracy Bulow - FW: SK/Epic Alleged UE3 Problems**

| | |
|---|---|
| **From:** | "Van Arnam, Robert" <rvanarnam@hunton.com> |
| **To:** | "Braswell, Sean M." <sbraswell@hunton.com>, "Kenyon, Douglas W. (US)" <dkenyon@hunton.com> |
| **Date:** | 8/18/2008 3:18 PM |
| **Subject:** | FW: SK/Epic Alleged UE3 Problems |

**From:** Van Arnam, Robert
**Sent:** Friday, August 15, 2008 5:27 PM
**To:** Garth Rosengren
**Cc:** SK-Epic Team; Silver, Jay; Cooke, Betsy; Braswell, Sean M.; Kenyon, Douglas W. (US)
**Subject:** RE: SK/Epic Alleged UE3 Problems

Garth - thanks for the chance to explain the concern. Your email correctly memorializes our talk and agreement. The only addition I have is that we also discussed Epic's potential need for an extension to meet the September deadline based on certain items in the July 30 List. While we hope to avoid that and our making all efforts to do so, we would want to briefly raise that issue with Judge Gates. Other than that I agree that 5(a) and (b) appear to resolved. thanks Rob

**From:** Garth Rosengren [mailto:grosengren@kksrr.com]
**Sent:** Friday, August 15, 2008 3:44 PM
**To:** Van Arnam, Robert
**Cc:** SK-Epic Team; Silver, Jay; Cooke, Betsy; Braswell, Sean M.; Kenyon, Douglas W. (US)
**Subject:** FW: SK/Epic Alleged UE3 Problems

Rob,

Thanks for taking the time to talk just now. I am confirming that -- while Epic is reserving those objections stated in its previous correspondence -- the list of Alleged UE3 Problems is final for the purposes of its use in Epic's search for documents. I am also confirming for Epic that SK will not send that list to any third-party, other than Midway, prior to the hearing on August 19 and that SK will consider using that language that Epic believes accurately characterizes the list in the event that SK communicates it to third-parties other than Midway. As I said on the phone, I think the most accurate representation by either party would be that the list of "Alleged UE3 Problems" is a list of problems with UE3 and Epic's support thereof allegedly suffered by SK.

As a practical matter and for purposes of drilling down to what is to be discussed at Tuesday's hearing, it appears that -- based on the above and Epic's representation that it is searching for documents responsive to the items on the list -- the parties have managed to resolve items listed at 5(a) and (b) of the Status Conference Agenda. If I am incorrect in any of the foregoing, please let me know.

Thanks,

Garth

**Garth A. Rosengren**

Krieg, Keller, Sloan, Reilley & Roman LLP
114 Sansome Street, 4th Floor
San Francisco, CA 94104-3898
415.249.8330
415.318.3590 Direct
415.249.8333 Fax
grosengren@kksrr.com

---

**From:** Garth Rosengren
**Sent:** Thursday, August 14, 2008 5:56 PM
**To:** Van Arnam, Robert
**Cc:** Kenyon, Douglas W. (US); SK-Epic Team; Silver, Jay; Cooke, Betsy; 'Braswell, Sean M.'
**Subject:** SK/Epic Alleged UE3 Problems

Sean,

I am writing with regard to your letter of yesterday regarding the list of Alleged UE3 Problems provided to Epic by SK. While SK believes that Epic's objections are not well founded and disagrees with Epic's characterization of the task put to SK in formulating a more detailed list, as I understand your letter Epic is preserving those objections but nonetheless has agreed to search for and produce documents responsive to all items on that list. Thus, I simply want to confirm that Epic will not be providing SK with any proposed changes to the list of topics SK produced. As you may know, Midway's counsel had asked us to provide him with a copy of the list we sent to Epic, and we would like to be able to to inform him that Epic will not be making any changes to it.

Thanks,

Garth

KRIEG Garth A. Rosengren
KELLER 114 Sansome St., 4th Floor
SLOAN San Francisco, CA 94104
REILLEY 415-318-3590 Direct
& ROMAN 415-249-8333 Fax
LLP · ATTORNEYS grosengren@kksrr.com
www.kksrr.com

* * * * * Confidential Notice * * * * *
This e-mail message is for the sole use of the intended recipient(s) and may contain confidential and/or privileged information. Any unauthorized review, use, disclosure, or distribution is prohibited. If you are not the intended recipient(s), please contact the sender by reply e-mail and destroy all copies of the original message. Thank you.

**Tracy Bulow - Silicon Knights**

| | |
|---|---|
| **From:** | Gerald Sweeney |
| **To:** | Braswell, Sean M.;  Kenyon, Douglas W. (US) |
| **Date:** | 8/18/2008 3:02 PM |
| **Subject:** | Silicon Knights |
| **CC:** | Bulow, Tracy |

Doug,

What is the status of the final list of "UE3 Problems". I understood that you were sending a letter last week to SK, but I did not receive a copy.

I need to know of what the "final list" consists - or the current status of that issue as of today.

Regards,

Gerald O. Sweeney, Jr.
BARNES & THORNBURG LLP
Suite 4400
One North Wacker Drive
Chicago, IL 60606-2809

(312) 214-4858 Direct
(630) 363-4565 Cell
(312) 357-1313 Main
(312) 759-5646 Fax

gsweeney@btlaw.com
www.btlaw.com